MOTION FOR DISCOVERY OF ALL VIDEO-EVIDENCES-WITNESSES
AFFIDAVIT — MOTION TO COMPEL ALL EVIDENCES AND PEOPLES

MEMORANDUM OF LAW- RULES- STATUTES - U.S. CONSTITUTION
COMPLAINT

By RONNIE ALLEN BELLAMY JR.
L.C.F. PO BOX 2 CORE CIVIL
LANSING, KANSAS 66043

PER K.A.R. 44-15-101(e) SUPPORTING MATERIALS-COPIES

ER K.A.R. 44-15-101.(3)(c)

EXHIBIT-1

ER K.A.R. 44-15-101a.(d)(i)(A)(B)

ER K.A.R. 44-15-104 REPRISALS PROHIBITED - INVOKED AUTOMATICLY

PER K.A.R.44-15-101.(b) IF AN EMERGENCY EXISTS AND A RESOLUTION COULD NOT BE

OBTAINED BY GOING TO THE UNIT TEAM THE INMATE MAY GO DIRECTLY INTO THE GRIEVANCE
PROCESS. INVOKING U.S. CONSTITUTIONAL AMENDMENTS THAT APPLY-APPLICABLY-4TH-5TH-8TH-14TH,
BILL OF RIGHTS

ALL GOVERNING STATUTES TO INCLUDE K.S.A. 75-5210 - K.S.A. 75-5251

K.S.A. § 75-5246(a) — (b), K.S.A. 77-423(B)(3) — (B)(4), CONST. RIGHTS OF
PRISONERS § 1-2.1.1.

§2.1.1 - CONTROL OF DISCRETIONARY POWER — SAFEGUARDS, CAN NOT BE

ERRONEOUS OR IGNORED ALL APPLICATIONS MUST BE ADHERED TO AND HONORED OR
UPHELD BY COEXISTING LAWS - LEGISLATIVE ACTS. THERE CAN BE NO PERSONAL BIASES
PREJUDICES OR DISREGARD UNDER ANY MOTIVE OR UMBRELLA. TO INCLUDE K.S.A. §
77-415(B)(7) — 77-415-77-438(b)(i) NO LEGAL STANDING BY LAW TO
REFUSE TO HELP ME NOT AUTHORIZED BY U.S. CONSTITUTION OR KANSAS STATE CONSTITUTION
OR LEGISLATION, VIOLATING DUE PROCESS RIGHTS, EIGHTH AMENDMENT RIGHTS AND
PROCEDURAL RIGHTS BY DEFAULT.

STATE RULES AND REGULATIONS BOARD UNDER PROVISIONS OF K.S.A. 77-423(B)(3)(B)(4)
K.S.A. §21-5416(a)(6) STATUTORY — ACCOUNTABILITY - MISTREATMENT OF A
CONFINED PERSON, CLASS A PERSON MISDEMEANOR

INCLUDING CONTRACTUAL AGREEMENTS KNOWN AS IMPP's — IMPP 02-118D

EMPLOYEE AND VOLUNTEER RULES OF CONDUCT AND UNDUE FAMILIARITY S.I.,
ATTACHMENT A CODE OF ETHICS CONTRACT, ATTACHMENT B RULES OF ACKNOWLEDGEMENT
CONTRACT, IMPP 20-104A F. EMERGENCY SITUATIONS, G. HOLDOVERS— PER WARDEN
CHEEKS I WILL REMAIN IN A-1 SINGLE CELL UNTIL TRANSFERRED OR RETURNED TO
TRU-UNIT AS I WAS AN EMERGENCY MOVE OVER HERE FROM A-4 I HAVE IN

RIGHT THUMB PRINT R.B.

EXHIBIT-1

MURDER, LIST OF DEFENDANTS - **VIOLATORS** INCLUDED SOME ARE STAFF
MEMBERS **AND** OFFICERS SEE VIDEO 9-29-2022-4:28 P.M. AND ALL TIMES-
DATES LISTED FOR EACH OFFENSE, ATTACK, ATTEMPTED MURDER, **SEE ALL VIDEO**
FOR DEFENDANTS - CONSPIRATORS - GUILTY - WITNESSES - D.R.'s - NARRATIVES - INCIDENT
REPORTS - COMMENTARY - INTERVIEWS - HOSPITALIZATIONS - CHARTS - ASESSMENTS
DIAGNOSIS - DOCTOR REPORTS - INFIRMARY STAYS - VISITS - STITCHES - STAPLES - AND
ALL EVIDENCE(S) FROM ALL ATTACKS WHICH BY LAW HAS TO BE HELD FOR SEVEN
YEARS PER FIRST RESPONDER DAVID M. KASPER #140 KDOC K0000223729 AND
WUT TEAM SUPERVISOR BRIAN M. BUCHOLZ E.D.CF. AND THERES NO SHORTAGE OF
EVIDENCE AND I WANT A COPY OF THIS AND ALL AVAILABLE EVIDENCE(S) TO
INCLUDE ALL VIDEO TO BECOME PART OF MY STATEMENT AND ALL MEDICAL
REPORTS - ASESSMENTS AS WELL AS ALL LISTED FOR PROSECUTORIAL PURPOSES AGAINST
ALL INVOLVED AND I WILL TAKE THE STAND AND TESTIFY IN COURT
AND BEFORE THE JOINT COMMITTE - AND I AM REQUESTING LEGAL
REPRESENTATION AS AN INDIGENT MENTAL HEALTH PATIENT DUE TO ALL THE
INITIAL ATTACKS AND THE FOLLOWING 4-ATTACKS - LEGAL SERVICES FOR PRISONERS
HAS REFUSED TO HELP ME THUS FAR IN ALL FACILITIES PLEASE HELP ME!

## -WELLNESS-
## RESOLUTION -RESTORATION- WHOLENESS

(1) CONTACT LEAVENWORTH COUNTY PROSECUTOR - WARDEN CHEEKS - EAI - KBI - SOC
IN CHAIN OF COMMAND AND ARREST-FIRE-FILE CHARGES ON ALL INVOLVED IN ATTACKS
AT ALL PLACES REQUESTING CONSPIRACY TO COMMITT MURDER X5 PLUS UNDISCOVERED
CONSPIRATORS AND AT LEAST SIX OR SEVEN STAFF MEMBERS - OFFICERS AND MEDICAL
PERSONELL - CONTRACTORS

(2.) BRING ME ALL OF MY PROPERTY - T.V. - CABLES X3 - TYPEWRITER - COFFEE X7 RIBBONS X3-2 OPEN-NEW
P.D. COOKIES OPEN - 2-BOXES BLODY BARS 1-OPEN 1-AS MISSING
OPEN FOOD THATS BEEN THERE OVER 3-MONTHS - TENNIS SHOES - SHOWER SHOES - SWEATS -
THE REST OF MY PROPERTY - PAPER LAUNDRY SOAP AND MISSING PROPERTY TAKEN IN

INMATE REQUEST TO STAFF MEMBER

*EXHIBIT - 1*

To: *Mr. MEREDITH - Mr. STIFFIN - E-FILE* (*Co. PROSECUTOR TODD THOMPSON*)    Date: *2-15-2023*

(Name and Title of Officer or Department)

_____

Unit Team, Detail, or Cellhouse Officer's Signature                    **To be retained by inmate**

*CONFIDENTIAL - LEGAL E-FILE*

**Form 9**
For Cellhouse Transfer
Work Assignment _____ *CRIMINAL ACTIVITY*
Interview Requests

*BELLAMY*

**Last Name Only**

**KANSAS DEPARTMENT OF CORRECTIONS**

*53454*

**Number**

**INMATE REQUEST TO STAFF MEMBER**

To: *Mr. UTS MEREDITH - Mr. STIFFIN - LAW-LIBRARY E-FILE - TODD SEAN NAWY*    Date: *2-15-2023*

(Name and Title of Officer or Department)

State completely but briefly the problem on which you desire assistance. (Be specific.)

*ENVELOPE # 1 - 98 PAGES CIVIL RIGHTS COMPLAINT*
*ENVELOPE # 2 - EVIDENCES - EXHIBIT-1  84 PAGES*
*ENVELOPE # 3 - EVIDENCES - EXHIBITS 3-3  53 PAGES*
*ENVELOPE # 4 - EVIDENCES - EXHIBIT-C  44 PAGES MEDICAL CONTRACT - CENTURION-DA 146-a*
*ENVELOPE # 5 - EVIDENCES - EXHIBITS-4  100 PAGES PLUS NA APPLICABLE NOT HERE KDOC*
*GIVEN TO _____ ON 2-15-2023 TO BE E-FILED AND RETURNED IMMEDIATELY*
*PER LAW FEDERAL COURT MANDATE - AND FOR LEAVENWORTH COUNTY PROSECUTOR TODD THOMPSON*

Work Assignment: *DSR RESTRICTED HOUSING ILLEGLY*    Living Unit Assignment: *A-1-238*

Comment: _____    Detail or C.H. Officer: _____

═══════════════════════════════════════════

Disposition: *GIVEN TO*
*- UTS ?*

_____

To: _____    Date: _____

(Name & Number)

Disposition: *APPX 3:15 PM - 3:55 PM*
*ON 2-16-2023 THIS WAS COLLECTED BY UTS MRS. HALL - PLAINTIFF*
*BELLAMY, DUE TO DEFENDANTS, MR. MEREDITH, REFUSEING TO TAKE TO LAW LIBRARY*
*TO BE E-FILED BY MR. STIFFIN PUBLIC SERVICE ADMINISTRATOR ON 2-15-2023*
*WITNESSED BY A-1 CAMERAS, UTS HALL, CSI ANDRING COTT ELLIS, CSI JAWORSKI*
*UTM K. DPLIGER, VIOLATING COURTS MANDATE, LAW, PLAINTIFFS RIGHTS - ACCESS*
*ISI Ron Bell*

Employee's Signature                    **To be returned to inmate.**

P-0009

**Form 9**
For Cellhouse Transfer
Work Assignment _____
Interview Requests

A1-238

BELLAMY
Last Name Only

EXHIBIT - 1

53454
Number

## KANSAS DEPARTMENT OF CORRECTIONS

## INMATE REQUEST TO STAFF MEMBER

To: CSI KINCAID                    Date: 12-16-2022
(Name and Title of Officer or Department)
State completely but briefly the problem on which you desire assistance. (Be specific.)

PER OUR CONVERSATION AND BEING PLACED ON MRA FOR REFUSEING A CELL MATE DUE TO LT. BARNETT AND COII SHACKELFORD WHO WROTE ME A D.R. AND THE TWO OF THEM TOOK MY PROPERTY-SHOES ETC. AND ITS MISSING SAYING I HAVE TO TAKE A CELL MATE I DONT HAVE A CHOICE. EVEN THOUGH I EXPLAINED WHY I AM ALWAYS SINGLE CELL ONLY DUE TO THE ATTEMPTED MURDER ON ME IN MY SLEEP AND MY BHP-THRU TOPEKA-KCI, SEE FARMER V. BRENNAN, 511 U.S. 825, 836 114 S.Ct. 1970 (1994) (addressing risk of inmate - inmate assault).

Work Assignment: TRU-UNIT MH SINGLE CELL ALWAYS   Living Unit Assignment: A-1-238

Comment: _____   Detail or C.H. Officer: COI BLLS

I APOLOGISE I CAN NOT REMEMBER THE DATES. AND THE LT IN OFFICER JUST

Disposition: GAVE SEVERAL Inmates ON P.C. Canteen items Food-Hygiene-etc-personal property for a positive behavior Report. I had some of it I gave Lt. Barnett-COII Shackelford took it From me wrongfully took at VIDEO NIGHT OF MRA - Threat OF Consp. to Comitt murder by way of double Celling

To: _____   Date: 12/21/22
(Name & Number)

Disposition: Per Our Conversation, you will need to Request a Seg Review to Make a formal Request to the Warden for a modification to your Allowable Property. As for the MRA I need to know the Date to Find camera footage, I can't spend days looking for when you went MRA.

CSI Kincaid
Employee's Signature                    To be returned to inmate.

P-0009

EXHIBIT - 1
DOV BWE SEDEO

| Contact Date | Contact Type | Notes | Facility | Entered By | DOC# | Name | Date Created |
|---|---|---|---|---|---|---|---|
| 09/17/2020 | DISCPBH,HOUS,INPERS,PGMVA,RC | Offender is upset claiming that I lied about what was said during MSDT. Offender is requesting a single cell status. Offender was told that during a MDST that his request would not be met to be single cell. While he was in C-1 he would be single cell, but once move to C-2 or regular GP then he could not keep the single cell status. He claims that I stated that he would not transition because he wants single cell. He claims that I threatening to send him to HCF seg. Which is not what I wrote on his Form-3. I simply stated that C-1 and HCF Seg will are the only areas that are completely single celled. He then told me to get the fuck away from him and called me a piece of shit. | EDCF-C | Brian Buchholz | 0053454 | BELLAMY,RONNIE,A,JR | 10/01/2020 |
| 07/09/2020 | DISCPBH,INPERS,MAIL | Met with offender at door to answer questions, offender Bellamy writes from its making up rules he thinks are set in law. He asked Unit Team to provide him with copies within a six hour time frame saying that if it was not done UT would be arrested for not complying. He continues to sign his form 9s with a colored pencil thumb print, but no longer is not since I have requested he choose another color. Most of his form9s are several paragraphs long and are nonsensical. He has refused to speak with BHP MacPherson on anything as he does not consider himself to have any mental health concerns. Through this he has remained calm and polite though he is getting more frustrated with UT not understanding what he is asking for. -CCI S.Holland | EDCF-C | Stephanie Holland | 0053454 | BELLAMY,RONNIE,A,JR | 07/10/2020 |
| 04/13/2020 | INPERS,RC,SEG | Due to the recent virus pandemic, offender was issued 2 protective face shields. Along with an information sheet, on how to properly wear and clean and maintain said face shields. | EDCF-C | Jeremy Hoepner | 0053454 | BELLAMY,RONNIE,A,JR | 04/14/2020 |
| 04/09/2020 | FIN,INPERS,SEG | Delivered offender's indigent pack for the month of April,to offender on this date. Included in offender's indigent pack were:toothpaste,toothbrush,2 golf pencils,4 envelopes,writing paper, 2 bars of soap, and a hair comb. | EDCF-C | Jeremy Hoepner | 0053454 | BELLAMY,RONNIE,A,JR | 04/09/2020 |
| 03/20/2020 | DISCPBH,INPERS,MAIL | Met with offender at door after recieving a form 9 with a red thumbprint, I told the offender this was unacceptable as we could not determine if it was blood and to not turn in form 9s like that again. Offender responded that it wasn't blood that it was colored pencil and he would do it anyway because the form 9 was not for me. Previous form 9s have included requests to be housed with Pochantas and denial of release date intiting that I, CCI Holland have gone on to the computer to change it. Will consult with mental health to make sure they are still checking in with him. -CCI S. Holland | EDCF-C | Stephanie Holland | 0053454 | BELLAMY,RONNIE,A,JR | 03/20/2020 |
| 03/16/2020 | ADM | Selective Service registration: 12/27/1990 | EDCF-C | James Wilkey | 0053454 | BELLAMY,RONNIE,A,JR | 03/16/2020 |
| 02/06/2020 | INPERS,MAIL,SEG | Offender Bellamy #53454 received legal mail from Kansas Department of Administration Offender came to his cell door. The correspondence was opened for a quick search for contraband. He received the communication. No issues. | EDCF-C | Shelia Mercer | 0053454 | BELLAMY,RONNIE,A,JR | 02/06/2020 |
| 10/28/2019 | FAM | Family information received from EAI on 10/28/19: I received a phone call from this offender's ex-wife, Karen Pyles. She has asked me to remove her number from Bellamy's PAH list, due to him making threatening phone calls to her. She has also asked that she be removed from any document that lists her as next of kin. | EDCF-C | Phillip Patterson | 0053454 | BELLAMY,RONNIE,A,JR | 10/28/2019 |
| 10/28/2019 | DISCPBH,INPERS | Offender has exhibited abnormal behavior stating that he believes he will be releasing from prison on various dates. Offender presents as serene, smiling, and quiet. Mental health has increased their monitoring of this offender and are current assessing him for increased needs. Possiblity of trauma is being considered due to his recent altercation with offender Kidd 54023 in which Bellamy was attacked with a weapon that incurred serious injury requiring off site treatment on 7/16/19. | EDCF-C | Phillip Patterson | 0053454 | BELLAMY,RONNIE,A,JR | 10/28/2019 |
| 09/03/2019 | HOUS,INPERS | Offender Kidd attacked Bellamy #53454 with a homemade slashing/stabbing device while the other offender was in bed. Offender Bellamy sustained serious injury to his face and arm. The wounds required off site medical treatment and permanent injures to Bellamy's arm. A central monitor has been requested between the two offenders. | EDCF-C | Andrew Fuoss | 0053454 | BELLAMY,RONNIE,A,JR | 09/04/2019 |
| 07/09/2019 | ADM,INPERS | Received the offender from LCF following the offender's involvement in a disturbance. The offender's orientation was completed and he was given basic hygiene items due to his property not being sent to EDCF-C. | EDCF-C | Andrew Fuoss | 0053454 | BELLAMY,RONNIE,A,JR | 07/12/2019 |

SERIOUS INJURY
PERMANENT INJURY
BY KDOC OWN ADMITTANCE
"NOT JUST REQUIRING STITCHES"

REFUSEING TO
PROSECUTE CRIME
BREAKING LAW
ALSO

021

Name: Bellamy
Number: 53454
Date: 11/12/2020

*EXHIBIT - 1*

*SINGLE STORED*

Rank Priority of Concerns

1) **Seeking redress in court for follow up from his attack in his cell.**
   - **$400 going out to court (Not requested yet)**
2) **Canteen missing (Someone else signed for them end of 2019 start of 2020)**

   **-Ms. Holland has copies of it. Double check where the property claims are at.**

3) Typewriter? Assistance for writing with injury.

THEY ARE REFUSEING TO GIVE
ME MY TYPEWRITER AND 7 RIBBONS
MY FOREARM WAS CUT IN HALF AND
THE MUSCLE NEVER REATTACHED

SEE VIDEO FROM WESLEY MEDICAL CENTER
AND SGT O'BRIENS - TRANSPORTS - KDOC - HAND
HELD CELLPHONE THE WHOLE TIME

AND WESLEY MEDICAL CENTER
NURSES MULTIPLE CELL PHONES
NAME UNKNOWN

EXHIBIT-1
EDCF ✓

# KANSAS DEPARTMENT OF CORRECTIONS

## EL DORADO CORRECTIONAL FACILITY

REPORT OF INVESTIGATION                                    PAGE 1 OF 1

| 1. Case: Property Lost/Personal Injury Claim | 2. Date of Personal Injury/Property Damage/Loss: 9-3-2019 | 3. Amount of Claim: $4,000,000.00 |
|---|---|---|

| 4. Facility Log Number Assigned: CA0706716 | 5. Date Received: 11/23/2020 |
|---|---|

| Name & DOC # Bellamy,Ronnie #53454 |
|---|

**ALLEGATIONS:** See Grievance Self titled Complaint #4040 and 1983 Civil Criminal Lawsuit case number: 5:20-CV-03229-SAV.

**FINDING OF FACTS:** After reviewing this claim I find the following: Resident did not attach any documentation supporting this claim. Per IMPP 01-118D II B Claims for personal injury shall be submitted within 10 calendar days of the claimed personal injury. Resident claims injury occurred on 9/3/2019 and he did not file the claim until 11/8/2020.

**RECOMMENDATION:** This property claim be denied.

| Signature: | Date: 1-23-20 | 11. Distribution: ___ Major ___ Warden ___ Central Office ___ Offender ___ Other |
|---|---|---|

RECEIVED

DEC 15 2020

DOC Facility Management Area

THIS REPORT IS THE PROPERTY OF THE KANSAS DEPARTMENT OF CORRECTIONS,
NEITHER IT NOR ITS CONTENTS MAY BE DISSEMINATED OUTSIDE THE AGENCY TO WHICH LOANED.

*EXHIBIT-1*
*DOUBLE SIDED*

# EL DORADO CORRECTIONAL FACILITY
# NARRATIVE REPORT

TO: **EDCF-Captains office**       DAY/DATE: **Tuesday/ 09/03/2019**
                                                                          (Day/MM/DD/YY)

SUBJECT: <mark>Fight BCH/ B-1 #210</mark>       FROM: **Barrows, Heather J.**
                                                                                 (Print: Last, First, MI Box #)

Who was involved: (Provide(s) of Victim(s), Perpetrator(s), Witness(s) and specify V, P, or W. Also indicate whether the individual(s) named are Employees or Inmates by specifying E or I. BE SURE TO USE FULL NAMES FOR ALL ENTRIES.)

| Last, First Mi. | KDOC # or I/M # | Living Unit | Cell or Bunk | Last, First Mi. | KDOC# or I/M# | Living Unit | Cell or Bunk |
|---|---|---|---|---|---|---|---|
| Barrows, Heather J. | K0000237605 | N/A | N/A | Bellamy, Ronnie A. JR | 53454 | BCH/B-1 | 210 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check appropriate box (s) below:

☐ Information - <u>No response request</u>      ☒ Supplement to Incident Report IR# _____ - _____ - _____

☐ Information - <u>Response requested</u>      ☐ Supplement to Use of Force Report UOF# _____ - _____

☐ Supplement to Disciplinary Report DR# _____ - _____

> On Tuesday September 3, 2019 at approximately 0114 a signal was called for a fight in BCH/ B-1 #210 with blood present. I assisted escorting Offender Bellamy #53454 down the stairs and helped place him on the gurney for transport to the trauma room. During the escort to the trauma room, I applied pressure to the offenders open wound on his right forearm and had the offender squeeze my hand approximately every 20 to 30 seconds during the transport.   EOR

(Attach additional pages as needed)
Distribution to be made by the ranking shift supervisor in accordance with narrative distribution, supporting documentation and distribution check list.

☐ Warden ☐ DWO Suite ☐ DWP ☐ DWSS ☐ Class. Admin. ☐ I&I ☐ Food Serv. ☐ Maint. ☐ Other: _____

UTM ☐ A ☐ B ☐ C ☐ D ☐ E ☐ U-Dorm    ☐ East A ☐ East F    ☐ North Unit    ☐ East Unit

                                                       Barrows, Heather K0000237605
      Signature                                            Print Full Name & KDOC#

Supervisory Action Taken:

                                           Supervisor's Signature

001

*EXHIBIT 1*
*DOUBLE SIDED*

# EL DORADO CORRECTIONAL FACILITY
## NARRATIVE REPORT

TO:   **Captains Office**

DAY/DATE:   **09/03/2019**
(Day/MM/DD/YY)

SUBJECT:   B1-210 stabbing

FROM:   **Owens, Sean, T**
(Print: Last, First, MI Box #)

Who was involved: (Provide(s) of Victim(s), Perpetrator(s), Witness(s) and specify V, P, or W. Also indicate whether the individual(s) named are Employees or Inmates by specifying E or I. BE SURE TO USE FULL NAMES FOR ALL ENTRIES.)

| Last, First Mi. | KDOC # or I/M # | Living Unit | Cell or Bunk | Last, First Mi. | KDOC# or I/M# | Living Unit | Cell or Bunk |
|---|---|---|---|---|---|---|---|
| Darter, Dylan | K0000230822 | | | Kasper, David | K0000223729 | | |
| Owens, Sean | K0000238704 | | | McCollough, Alex | K0000230944 | | |
| Kidd, AJ | 54023 | B1 | 128 | | | | |
| Bellamy, Ronnie | 53454 | B1 | 210 | | | | |

Check appropriate box (s) below:

☐ Information - No response request   ☒ Supplement to Incident Report IR# _____ - _____ - _____

☒ Information - Response requested   ☐ Supplement to Use of Force Report UOF# _____ - _____

☒ Supplement to Disciplinary Report DR# _____ - _____

**Facts:**
On the above date at approx.0112 , I, COI Owens, along with CSI Darter while conducting count stopped at B1-210 because I/M Kidd, AJ #54023 stated "You better get him out of here before I kill him. We looked up at the top bunk and saw I/M Bellamy, Ronnie #53454 covered in blood. CSI Darter called for an officer needs assistance for a physical altercation. CSI Darter instructed I/M Kidd to turn around to be restrained, and he stated he wouldn't until I/M Bellamy was restrained. He instructed him again to turn around and be restrained, and opened the food pass, and I/M Kidd placed a 7-8" homemade stabbing device on the food pass. CSI Darter picked up the homemade stabbing device and gave it to me and restrained I/M Kidd and held the restraints until further response could arrive. CSI McCollough arrived and CSI Darter restrained I/M Bellamy and instructed BCH Control to open the door. CSI Kasper and COI Barrows arrived for response and took I/M Bellamy to the BCH Medical Room. CSI Darter and I took I/M Kidd to the B1 strip out room. CSI Darter conducted the strip out. I/M Kidd was later placed in cell B1-128. EOR

(Attach additional pages as needed)
Distribution to be made by the ranking shift supervisor in accordance with narrative distribution, supporting documentation and distribution check list.

☐ Warden ☐ DWO Suite ☐ DWP ☐ DWSS ☐ Class. Admin. ☐ I&I ☐ Food Serv. ☐ Maint. ☐ Other: _____

UTM ☐ A ☐ B ☐ C ☐ D ☐ E ☐ U-Dorm   ☐ East A ☐ East F   ☐ North Unit   ☐ East Unit

_Sean Owen_
Signature

Sean Owens K0000238704
Print Full Name & KDOC#

Supervisory Action Taken: _____

Supervisor's Signature

003

*EXHIBIT-1*
*DOUBLE SIDED*

# EL DORADO CORRECTIONAL FACILITY
## NARRATIVE REPORT

**TO:**   Captains Office

**DAY/DATE:**   09/3/2019
(Day/MM/DD/YY)

**SUBJECT:**   Officer need assistance B1-210

**FROM:**   Kasper,David M. #140
(Print:Last, First, MI Box #)

Who was involved: (Provide(s) of Victim(s), Perpetrator(s), Witness(s) and specify  V, P, or W.  Also indicate whether the individual(s) named are Employees or Inmates by specifying E or I.  BE SURE TO USE FULL NAMES FOR ALL ENTRIES.)

| Last, First Mi. | KDOC # or I/M # | Living Unit | Cell or Bunk | Last, First Mi. | KDOC# or I/M# | Living Unit | Cell or Bunk |
|---|---|---|---|---|---|---|---|
| Kasper David | K0000223729 | | | McCollough Alex | K0000230994 | NA | NA |
| Bellamy Ronnie | 53454 | B1 | 210 | | | | |
| Kidd AJ | 54023 | B1 | 210 | | | | |
| Darter Dylan | K0000230822 | NA | NA | | | | |

Check appropriate box (s) below:

☐ Information - No response request

☑ Supplement to Incident Report IR# _____ - _____ - _____

☐ Information - Response requested

☐ Supplement to Use of Force Report UOF# _____ - _____

☐ Supplement to Disciplinary Report DR# _____ - _____

**Facts:**
On 8/20/18 at approximately 0113 hours I CSI Kasper responded to an officer needs assistance in B1-210 Called by CSI Darter I arrived Both offender were already restrained  I escorted offender Bellamy down the stairs to the sick call room  CSI McCollough took incident command and cleared the signal with  medical still needed  at 0116 I then assisted him helping him on to the  gurney . I helped escort the offender to the trauma room where he was examined by medical I assisted medical  in searching  for other possible wounds. EMS arrived and I escorted them to the trauma room where I was relived

(Attach additional pages as needed)
Distribution to be made by the ranking shift supervisor in accordance with narrative distribution, supporting documentation and distribution check list.

☐Warden ☐DWO Suite ☐DWP ☐DWSS ☐Class. Admin. ☐I&I ☐Food Serv. ☐ Maint. ☐Other: _____

UTM ☐ A ☐ B ☐ C ☐ D ☐ E ☐ U-Dorm   ☐ East A ☐ East F   ☐ North Unit   ☐ East Unit

_____
Signature
**Supervisory Action Taken:**

Kasper David
K000023729
Print Full Name & KDOC#

_____
Supervisor's Signature

006

**From:** Jaime Travnicek [KDOC] <Jaime.Travnicek@ks.gov>
**Sent:** Thursday, July 30, 2020 9:57 AM
**To:** KDOC_EDCF_EAI_DL
**Subject:** I can't find anything in the case log about this stabbing.

*EXHIBIT — 1*
*DOUBLE SIDED*

Inmate Name : RONNIE BELLAMY

Inmate ID : 53454

Housing : 0C1256

Date : 07/29/2020 1:07PM EST

Customer : ~~████████~~

Customer ID : ~~████████~~

Word(s) Found : murder
kill

~~████████~~

mace
Nurse

Attachment(s) :

| |
|---|
| Approve |
| Send To Censored |
| Mail History |
| Relocate Letter |
| Print Letter |
| Add Customer To Forbidden List |
| Translate Email |

Hello April,The guys name was A.J.Kidd, And unit team Randolph-Fuoss,Called me into Randolphs office,and asked me who i wanted to live with.And i told them Aaron woods a friend of mine who was on P.C.A nd Unit team Randolph just ignored he request and moved A.j. Kidd in the room with me knowing that ~~████████████████████████~~ Had already been heard telling him to kill me.And he would give ~~████████~~ The authorities were aware that this was an ongoing problem for years now.And i had no idea that this was gonna happen like i said.I was asleep when Officers---Chastain and Morgan---intercepted a kite that told the police ,that kidd,was suppose to kill me while the police watched.They have the kite in evidence,they prosecuted kidd for this attempted murder.They didn't need me to press charges it was their responsibility,as they witnessed it happening and never even woke me up to defend myself or helped me.They never intervened-hey did not call a code-signal -they did not spray mace or any chemical agents to stp this.They watched as tis man stabbed me.They never called for a nurse or medical help-they had a gurney waiting on me.With no medical help in sight-they didnt expect me to live.You can find everything you need on KISS-MY-ASS-DADDY.COM------THE LOVELY LUCINDA BELLAMY-THE BOMBASTICAL-MAGICAL-WITCH-MY 12-year old Daughter i never knew i had till now.Tha website will walk you through everything that took place.And i will continue to update you nd answer questons for you for the attorney -they never helped me or followed protocol-even at wesley medical center.They left me in the emergency room trauma -triage unit for over 10-hours-----8-ours before they gave me any medical attention and help-and no help in the ambulance ride they were hoping that i would die and they could cover up what happened.There is so much evidence theres no way for them to lie about any of it and that continuously puts lmy life in danger in here.I wrote CHIEF JUSTICE-DAVID RICKIE-BUTLER COUNTY JUDICIAL CENTER.HE IS THE TOP JUDGE

**From:** Jaime Travnicek [KDOC] <Jaime.Travnicek@ks.gov>
**Sent:** Tuesday, August 4, 2020 11:47 AM
**To:** John Cannon2 [KDOC]
**Subject:** I did not know this of you John!

*EXHIBIT — 1*
*DOUBLE SIDED*

**Inmate Name :** RONNIE BELLAMY

**Inmate ID :** 53454

**Housing :** OC1256

**Date :** 08/03/2020 7:00PM EST

**Customer :** ~~Ronnie Bellamy~~

**Customer ID :** ~~xxxxxxxxx~~

**Word(s) Found :** kill
Cannon

**Attachment(s) :**

| |
|---|
| Approve |
| Send To Censored |
| Mail History |
| Relocate Letter |
| Print Letter |
| Add Customer To Forbidden List |
| Translate Email |

Hello,Just wanted to say hi!And tell yo that I LOVE YOU!I JUST SAW THAT YOUR NAME WAS ON MY E-MAIL LIST.THANK YOU FOR THAT,I THINK IT'S AUTOMATIC WHEN YOU SEND MONEY TO ME THE NAME SHOWS UP ON MY E-MAIL LIST WELL EITHER WAY I HOPE THAT YOU DONT MIND ME WRITING YOU?I WOULD LOVE TO SEE YOU SOMETIME.IF YOYU ARE MAD AT ME YOU WILL JUST HAVE TO FORGIVE ME THINGS HAVE BEEN NREALLY BAD FOR QUITE A WHILE NOW.AND I AM DOING THE BEST THAT I CAN TO COPE WITH EVERYTHING.LIKE I SAID IT TOOK OVER 6-MOTHS FOR MY MEMORY AND MY FACULTIES TO RETURN TO ME SO I COULD START WRITING AND FUNCTONING COHERENTLY AFTER THE COWARD STABBED ME IN MY SLEP AND TRIED TO KILL ME FOR THE POLICE,THEY WATCHED IT HAPEN AND DIDN'T EVEN WAKE ME UP AND THEN ONE OF THEM TRIED TO TELL KOM THAT I DIDN'T WANT TO PRESS CHARGES.I NEVER SAID ANYTHING LIKE THAT,AND IT DOESN'T WORK LIKE THAT ANYWAY THE STATE WILL ALWAYS PRESS CHARGES IN TOSE SITUATIONS NO MATTER WHAT CAUSE THE OFFICERS AND THE VIDEO IS TEH EVIDENCE,ALONG WITH THE AMBULANCE RIDE I TOOK TO WESLEY MEDICAL CENTER AT AROUND MIDNIGHT IN OCTOBER OF 2019.SO THERE IS NO WAY FOR THEM TO LIE ABOUT ANY OF IT EVEN THOUGH THEY KEP TRYING TO.IT'S THE CORRUPT EAI JOHN CANNON AND HIS FOLLOWERS AND FLUNKIES DOINT IT.HE IS THE HEAD OF EAI HERE AND DIDN'T EVEN SPEND A FULL TWO MINUTES AT MY DOOR IN THE CLINIC WHEN I GOT BACK FROM WESLEY MEDICAL CENTER,AND THEY HAD ME IN THE CLINIC.MY LWSUIT WILL BE FILED SOON AND IT WILL ALL COME OUT THEY CAN'T HIDE THEVIDEO EVIDENCE OR THE AMBULANCE RIDE AND HOSPITAL TRIP ANDALMOST TWO WEEK STAY IN THE CLINIC AFTERWARDS.THEY DIDN'T DO ANY SURGERY ON ME THEY JUST SENT ME BACK SO MESSED UP WITH NO HELP,OR CARE WHATSOEVER.IT WAS SICKENING.WELL ANYWAY SORRY TO GO ON ABUT THAT I LOVE AND MISS YA!HOPE THAT YOU ARE DOING WELL YOUR DAUGHTER IS BEAUTIFUL SHE REMINDS ME OF YOU WHEN YOU WERE YOUNGER.LOVE,RONNIE

029

*EXHIBIT-1*
*DOUBLE SIDED*

5.   I have also been advised that Bellamy alleges his issues with Kidd stemmed from Kidd's alleged White Supremacist affiliations. Kidd does not have an "AB Patch," nor is he documented or being managed as a White Supremacist by the KDOC.

6.   I was not personally involved in Bellamy's placement into a cell with Kidd. EAI does not get involved in those decisions.

7.   After the September 3, 2019 incident between Bellamy and Kidd, I attempted to conduct an interview with Bellamy so criminal charges could be pursued against Kidd, but Bellamy refused to speak with me. Attached hereto as Exhibit 1 is a true and correct copy of the email documenting my attempt to interview Bellamy.

8.   Other than the attempt to interview Bellamy on September 3, 2019 I had no involvement with Bellamy's cell placement or the September 3, 2019 incident.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August ___11___, 2021.

John Cannon, Special Agent Supervisor
Kansas Department of Corrections



# KANSAS DEPARTMENT OF CORRECTIONS

| **I**NTERNAL **M**ANAGEMENT **P**OLICY AND **P**ROCEDURE | SECTION NUMBER 12-116D | PAGE NUMBER 1 of 2 |
|---|---|---|
| | SUBJECT: SECURITY AND CONTROL:  Polygraph Examinations of Offenders | |

| Approved By: *Ray Roberts* Secretary of Corrections | Original Date Issued: | 11-03-15 |
|---|---|---|
| | Replaces Version Issued: | N/A |
| | **CURRENT VERSION EFFECTIVE:** | **11-03-15** |

| APPLICABILITY: | _ ADULT Operations Only | _ JUVENILE Operations Only | X DEPARTMENT-WIDE |
|---|---|---|---|

## POLICY STATEMENT

Procedures shall be developed for the administration of polygraph examinations to offenders as may be required to complete an investigation.  Polygraph examinations shall be administered only with the offender's written consent.  Absolutely no polygraph examinations shall be administered to alleged victims of sexual assault/abuse in connection with the alleged offenses involved.

Polygraph examination results shall not be considered conclusive evidence or utilized as substitutes for facility disciplinary hearings or post incarceration supervision revocation actions.  Except when the polygraph is required as a condition of participation in a treatment program, the refusal of an offender to submit to a polygraph examination shall not be the basis for disciplinary or post incarceration supervision revocation actions, or, reported to the offender's file.

Polygraph examinations requested by outside agencies or individuals may be allowed.  The agency or individual requesting such an examination shall be responsible for any cost associated with the administration of the examination.

## DEFINITIONS

None.

## PROCEDURES

**I.     Offender Consent**

    A.     The offender's consent shall be obtained using the Offender's Consent to Polygraph Examination form (Attachment A), prior to the administration of any polygraph examination.

**II.    Authorization for and Purpose of Polygraph Examinations**

    A.     No offender shall be requested to submit to a polygraph examination as a part of an internal investigation or on the request of outside agencies or individuals without the prior approval of the warden/superintendent.  In making this decision, the following shall be taken into consideration:

        1.     The matter under investigation;

        2.     The need to determine if the offender has been truthful during other phases of an investigation; and,

*EXHIBIT - 1*

      3.      The investigative efforts which have been expended or remain to be utilized.

## III.   Scheduling of Polygraph Examinations

     A.      Schedules for approved polygraph examinations to be administered on departmental premises shall be limited to times and locations within the facility or office which provide for a minimum of disruption to the daily administration of the facility or parole office.

**NOTE:** The policy and procedures set forth herein are intended to establish directives and guidelines for staff and offenders and those entities that are contractually bound to adhere to them.  They are not intended to establish State created liberty interests for employees or offenders, or an independent duty owed by the Department of Corrections to employees, offenders, or third parties.  Similarly, those references to the standards of various accrediting entities as may be contained within this document are included solely to manifest the commonality of purpose and direction as shared by the content of the document and the content of the referenced standards.  Any such references within this document neither imply accredited status by a Departmental facility or organizational unit, nor indicate compliance with the standards so cited. The policy and procedures contained within this document are intended to be compliant with all applicable statutes and/or regulatory requirements of the Federal Government and the state of Kansas. This policy and procedure is not intended to establish or create new constitutional rights or to enlarge or expand upon existing constitutional rights or duties.

## REPORTS REQUIRED

None.

## REFERENCES

None.

## ATTACHMENTS

| Attachment | Title of Attachment | Page Total |
|---|---|---|
| A | Offender's Consent to Polygraph Examination | 1 page |

EXHIBIT - 1    Attachment A, IMPP 12-116D
Effective 11-03-15

**KANSAS DEPARTMENT OF CORRECTIONS**

**OFFENDER'S CONSENT TO POLYGRAPH EXAMINATION**

A.    Name of Correctional Facility or Parole Office  _LANSING CORRECTIONAL FACILITY_

B.    Name of Examiner  _____

C.    Employer of Examiner  _____

D.    Name of Offender  _RONNIE ALLEN BELLAMY JUNIOR_____

DOC Number  _0053454_____

I hereby consent to a polygraph examination by the above-named examiner.  I understand that this is a voluntary examination.  I further understand that the results of this polygraph examination shall not be considered as conclusive and that disciplinary action or post incarceration supervision revocation action shall not be taken based on the results of this examination.

_Ronnie Allen Bellamy Junior_          _1-9-2023_
Signature of Offender                          Date

_Col Perkins_                                         _2-15-23_
Witness                                                   Date

_____          _____
Witness                                                   Date

THIS WILL TAKE CARE OF AND IS FOR EVERYTHING THAT I HAVE CLAIMED — ALLEGED BEHIND THE WALLS L.C.F. H.C.F. EDCF. AND HERE AT NEW FACILITY CORE CIVIC COMPOUND to INCLUDE CASE No. 5:20-CV-03229-SAC, 20-CV-3229-ODC-ADM, APPEAL 22-3106 20-CV-3229-TC-ADM AND MY ILLEGAL UNLAWFUL CONVICTION-SENTENCE— PLEA AGREEMENT AND SENTENCE VACATED SNT VAC ON JOURNAL ENTRIES 91CR00032 —1991 WY CO KS NEVER RELEASED 91CR 0493B -1991 WY CO KS NEVER RELEASED 96 08 CR 624 — LV CO KA             ALSO ILLEGAL 96 07CR 481 — LV CO KS.          DUE TO SEPTING ALREADY ILLEGAL IMPRISONMENT NEVER RELEASED



*EXHIBIT-1*



LEAVENWORTH COUNTY ATTORNEY'S OFFICE

## TODD G. THOMPSON
COUNTY ATTORNEY

**SHAWN M. BOYD**
DEPUTY COUNTY ATTORNEY

**JOSE V. GUERRA**
ASSISTANT COUNTY ATTORNEY

**CHRISTOPHER LYON**
ASSISTANT COUNTY ATTORNEY

**KATHRYN DEVLIN**
ASSISTANT COUNTY ATTORNEY

**ASHLEY HUTTON**
ASSISTANT COUNTY ATTORNEY

**DAVID D. MELTON**
ASSISTANT COUNTY ATTORNEY

Leavenworth Justice Center · 601 S. Third Street, Suite 3069 · Leavenworth, KS 66048-2868
Phone: (913) 684-0480 · Fax: (913) 684-1050

---

February 9, 2023

Ronnie Allen Bellamy Jr #53454
Lansing Correctional Facility
PO Box 2
Lansing Kansas 66043

Re: Letter received February 8, 2023

Dear Ronnie Allen Bellamy,

Our office is in receipt of your letter, which was undated but received February 8, 2023.  Please be advised that our office has no investigative capabilities. All cases filed by and through this office are based upon investigative reports received from a law enforcement agency. We have nothing in our system to indicate that any law enforcement agency has made contact with you and forwarded their investigative findings to our office for review. Therefore, the information that you provided to our office will be sent to the Office of Enforcement, Apprehensions & Investigations.  If you have any question you may contact:

**Office of Enforcement, Apprehensions & Investigations**
**Kansas Department of Corrections**
**714 SW Jackson, Ste 300**
**Topeka Kansas 66603**

Regards,

Todd G Thompson
Leavenworth County Attorney





EXHIBIT - 1
FAITH BASED
ORGINIZATION

January 31, 2023


Ronnie Bellamy Jr 53454
PO Box 2
Core Civic L C # F
Lansing, KS  66043


Dear Ronnie,

Greetings in the name of our Lord and Savior Jesus Christ!  We welcome this opportunity to reach out to you in God's love, to share with you, and encourage your heart today.

Thank you for sharing your testimony! We know that the Lord's marvelous work has brought joy to your heart. Whenever you think about this blessing, it will remind you to thank the Heavenly Father for His kindness. One of the Psalms tells us, "Praise the Lord! Give thanks to the Lord, for he is good! His faithful love endures forever" (Psalm 106:1, NLT). God has certainly shown His divine goodness and love through this answer to prayer.

God benefits us in so many ways, from widespread blessings like life-giving sunshine and refreshing rain to more individual blessings like salvation, miraculous healing, financial breakthrough, reconciliation with loved ones, or the gentle mending of a broken heart. These heavenly gifts provide us with opportunities to tell people about the wonderful goodness of our Heavenly Father and the Lord Jesus Christ. When we share accounts of God's magnificent deeds, it can help kindle belief in the hearts of non-Christians and build up the faith of believers. King David sang, "I will praise you, Lord, with all my heart; I will tell of all the marvelous things you have done" (Psalm 9:1, NLT). Ask the Lord to guide you in regard to telling others about His power and kindness.

We appreciate your thoughtfulness in sharing the material you recently sent to the CBN ministry and the time you took to send it.  We hope you will understand, however, that because we receive a great number of items from our partners, we are unable to return things that are sent to us.  The mission of CBN is to see the knowledge of the Lord cover the earth as the waters cover the sea.  In achieving this mission, we continually strive to glorify God the Father and Jesus Christ the Son.


orphan'spromise


CBN ISRAEL


CBN ANIMATION


CBN NEWS CHANNEL



OPERATION BLESSING

977 CENTERVILLE TURNPIKE, VIRGINIA BEACH, VA 23463  |  CBN'S 24-HOUR PRAYER CENTER: 800-700-7000  |  CBN.com
OPERATION BLESSING  |  800-730-2537  |  operationblessing.org
CLUB 700 HOY CENTRO DE ORACIÓN: 800-700-2582  |  club700hoy.com  |  @club700hoy

09277 / 10/2022

# Legal Services for Prisoners, Inc.

(785) 746-7437 | P.O. Box 12438 Overland Park, KS 66282

About Us    El Dorado    Lansing    Topeka    Contact



# Legal Services For Prisoners, Inc.

Legal Services for Prisoners, Inc., (L.S.P.) is a private, not for profit Corporation established to identify and assist those Prison Inmates with real legal problems. We are equipped to assist inmates with the unique legal problems which arise out of their incarceration; and to augment the normal Facility Counseling Services. We do not represent inmates for money damages or most other civil matters, but can provide information on who to contact to seek counsel and in some instances how to proceed pro se in such cases. Not all cases accepted, each will be reviewed on an individual basis.

PAGE 2 OF 5

EXHIBIT-1

# Legal Services for Prisoners, Inc.

*(785) 746-7437 | P.O. Box 12438 Overland Park, KS 66282*

About Us    El Dorado    Lansing    Topeka    Contact



# We Do <u>Not</u> Handle

- Money Damages
- Domestic Relationships
- Divorce or Annulment
- Child Support/Custody Issues
- Bankruptcy
- Taxes

# Select A Facility For Customized Services

**El Dorado Correctional Facility**





**Lansing Correctional Facility**

*PAGE 3 OF 5*

# Legal Services for Prisoners, Inc. *EXHIBIT-1*

(785) 746-7437 | P.O. Box 12438 Overland Park, KS 66282

About Us     El Dorado     Lansing     Topeka     **Contact**



## About Us

Legal Services for Prisoners, is a non-profit group that provides legal services to indigent inmates in Kansas correctional facilities. The program's goal is to ensure that prisoners' rights to the courts are met to pursue non-frivolous claims. Funding for Legal Services for Prisoners is administered by the State Board of Indigents' Defense Services although the entity is not a state agency. The program currently operates offices in the Topeka Correctional Facility, Lansing Correctional Facility, and El Dorado Correctional Facility. However, an inmate may apply for services at any correctional facility.

## Get In Touch

Full Name *

Email *

Phone

Briefly describe the situation you are contacting us about.

*IF THE GOAL OF THIS SERVICE AS A MANDATORY REPORTER - ITS CIVIL SERVICE - SERVANT IS MEANINGFUL ACCESS TO COURTS AND PROTECTING RIGHTS BY LAW HOW DO YOU JUSTIFY ALLOWING CRIMES TO BE CARRIED OUT AND NOT REPORTED SEE K.S.A. § 21-5416 (a) (b) K.A.R. § 77-415 (a) (b) DISABILITY... SEE CIVIL RIGHTS ASSURANCES AND NO RETALIATION*

Send

*EXHIBIT - 1*

# Kansas
### Department of Corrections

714 S.W. Jackson St., Suite 300
Topeka, KS 66603

Phone: (785) 296-3317
Fax: (785) 296-0014
kdocpub@ks.gov
www.doc.ks.gov

Jeff Zmuda, Acting Secretary

Laura Kelly, Governor

## CIVIL RIGHTS ASSURANCES & NO RETALIATION
### The following replaces similar notices found in IMPP 01-128
### Effective -December 2<sup>..</sup>, 2019

**Notice of Prohibited Discrimination:** The founding principle of Title VI of the Civil Rights Act of 1964 was that "no person in the United States shall, on the basis of race, color, or national origin, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Later civil rights laws, regulations and executive orders provided similar protections to additional groups when Federal funds are involved.

It is the policy of the Kansas Department of Corrections (KDOC) that all individuals have the right to participate in employment, programs, and activities operated by the KDOC regardless of race, color, national origin, sex, religion, disability, and age. As a condition of state and/or federal grant funding, the KDOC agrees to operate in compliance with the following statutes and regulations and all other regulations implementing the same, regarding all aspects of Agency programs and services:

- Title VI of the Civil Rights Act of 1964, prohibits discrimination on the basis of race, color or national origin in the delivery of services and also entails taking reasonable steps to ensure that persons with Limited English Proficiency (LEP) have meaningful access to Agency programs or activities. An LEP person is one whose first language is not English and who has a limited ability to read, write, speak, or understand English. (42 U.S.C. § 2000d), and the Department of Justice (DOJ) implementing regulations at 28 C.F.R. Part 42, Subpart C;

- The Omnibus Crime Control and Safe Streets Act (SSA) of 1968, prohibits discrimination on the basis of race, color, national origin, religion, or sex in the delivery of services and employment practices (42 U.S.C. § 3789d(c)(1)), and the DOJ implementing regulations at 28 C.F.R. Part 42, Subpart D;

- Section 504 of the Rehabilitation Act of 1973, prohibits discrimination on the basis of disability in the delivery of services and employment (29 U.S.C. § 794), and DOJ implementing regulations at 28 C.F.R. Part 42, Subpart G; and Title II of the Americans with Disabilities Act (ADA) of 1990, each as amended by the ADA Amendments Act (ADAAA) of 2008, prohibit discrimination on the basis of disability in the delivery of services and employment practices (42 U.S.C. § 12132), and the DOJ implementing regulations at 28 C.F.R. Part 35 (section 504 applies when an organization of 50 or more persons receives $25,000.00 or more in federal financial assistance).

- Title IX of the Education Amendments of 1972, prohibits discrimination on the basis of sex, in educational programs (20 U.S.C. § 1681), and the DOJ implementing regulations at 28 C.F.R. Part 54;

- The Age Discrimination Act of 1975, applies to people of any age and prohibits discrimination on the basis of age, in the delivery of services (42 U.S.C. § 6102), and the DOJ implementing regulations at 28 C.F.R. Part 42, Subpart I;

- Executive Order 13559, amending Executive Order 13279, and the DOJ implementing regulation calls for Partnerships with Faith-Based and Other Neighborhood Organizations. 28 C.F.R. pt. 38 (they prohibit discrimination in federally assisted social service programs based on religion in the delivery of services or benefits);

Civil Rights Assurances                     *EXHIBIT-1*                     December 20, 2019

• Section 1407 of the Victims of Crime Act (VOCA) of 1984, prohibits discrimination on the basis of race, color, national origin, religion, sex, or disability (42 U.S.C. § 10604 *et seq.*);

• The Juvenile Justice and Delinquency Prevention Act (JJDPA) of 2002 (42 U.S.C. § 5672b); and Violence Against Women Act (VAWA) of 1994, as amended, 42 U.S.C. § 13925(b)(13), prohibit discrimination in programs either funded under the statute or administered by the Office on Violence Against Women, both in employment and in the delivery of services or benefits, based on actual or perceived race, color, national origin, sex, religion, disability (they refer to the SSA for enforcement).

• KDOC receives funds under the Violence Against Women Act of 1994, as amended, and covered protections include those individuals regardless of their sexual orientation or gender identity.

Each of the laws listed above prohibit a recipient or subrecipient from retaliating against any individual for making a claim or participating in action to secure rights protected by the laws.

DESIGNATION OF CIVIL RIGHTS PROGRAM'S COORDINATOR: In compliance with the Americans with Disabilities Act of 1990 (ADA); Section 504 of the Rehabilitation Act of 1973; Title IX of the Education Amendments Act of 1972; and, the Juvenile Justice and Delinquency Prevention Act (JJDPA); any complaints and questions regarding discrimination in any of the Kansas Department of Correction's civil rights programs, activities and employment, or similar complaints related to those of the KDOC's vendors, contractors, volunteers and subrecipients, may be directed to the Agency Coordinator/Liaison designated below:

Mike Smith, Civil Rights Programs Manager
Kansas Department of Corrections
714 SW Jackson St, 3rd Floor
Topeka, KS 66612
Toll Free Telephone: 1-844-522-1956
Fax: 785-368-6565
Hearing Impaired: 711
e-mail: mike.smith@ks.gov

People wishing to file a complaint may also at any time report concerns to:

Office of Justice Programs          and/or          Kansas Governor's Grants Program
Office of Civil Rights                                900 SW Jackson St.
810 7th Street NW                                    Landon State Office Building, Room 304 North
Washington, DC 20531                                 Topeka, KS 66612
Telephone: 202-307-0690                              Telephone: 785-291-3205
Fax: 202-616-9865                                    Fax: 785-291-3204
TTY: 202-307-2027                                    e-mail: erica.haas@ks.gov

Sincerely,

Jeff Zmuda, Acting Secretary
Kansas Department of Corrections





**Kansas**
Department for Children
and Families

Legal Services
555 S. Kansas Ave., 6th Floor
Topeka, KS 66603

Phone: (785) 296-3967
Fax: (785) 296-4960
www.dcf.ks.gov

Laura Howard, Acting Secretary

Laura Kelly, Governor

## Americans with Disabilities Act

### NOTICE TO THE PUBLIC

It is the policy of the State of Kansas to comply with provisions of the Americans with Disabilities Act, 42 U.S.C.A. Section 12101, et seq. ("ADA"). The ADA prohibits discrimination against qualified individuals with disabilities on the basis of their disability. The ADA provides, in part, that qualified individuals with disabilities shall not be excluded from participating in or be denied the benefits of any program, service or activity offered by the State.

The ADA requires that all programs services and activities, when viewed in their entirety, are readily accessible to and usable by qualified individuals with disabilities. State agencies must communicate effectively with individuals with speech, visual and hearing impairments and provide auxiliary communication aids to qualified individuals with disabilities participating in or benefiting from the State's programs, services or activities to afford equal opportunity.

Should you wish to review the ADA or its interpretive regulations, ask questions about your rights and remedies under the ADA, request a reasonable modification to the State's policies, practices or procedures, or file a written grievance alleging noncompliance with the ADA, please contact the State ADA Coordinator as listed below.

|  |  |
|---|---|
| **NAME:** | Anthony A. Fadale |
| **ADDRESS:** | Kansas Department for Children and Families<br>DCF Administration Bldg.<br>555 S. Kansas Avenue, 1st Fl<br>Topeka, KS 66603 |
| **TELEPHONE:** | Voice (785) 296-1389<br>Fax: (785) 296-4960<br>TTY: 711 |
| **E-MAIL ADDRESS:** | Anthony.Fadale@ks.gov |

PAGE 4 OF 5

EXHIBIT-1

# Legal Services for Prisoners, Inc.

*(785) 746-7437 | P.O. Box 12438 Overland Park, KS 66282*

About Us      El Dorado      Lansing      Topeka      **Contact**

PAGE 5 OF 5

EXHIBIT-1



# LEGAL AID

## Legal Services for Prisoners

telephone number:  (785) 296-8887
Director: Charles Cavenee
Address: PO Box 12438
Overland Park, KS 66282-2438

**About Us**
**Legal Services for Prisoners, is a non-profit group that provides legal services to indigent inmates in Kansas correctional facilities. The program's goal is to ensure that prisoners' rights to the courts are met to pursue non-frivolous claims. Funding for Legal Services for Prisoners is administered by the State Board of Indigents' Defense Services although the entity is not a state agency. The program currently operates offices in the Topeka Correctional Facility, Lansing Correctional Facility, and El Dorado Correctional Facility. However, an** inmate may apply for services at any correctional facility.

## Submit a form-9 to Legal Services or write or phone to the above contact info.

**Form 9**
For Cellhouse Transfer
Work Assignment _____
Interview Requests

*BELLAMY JR*
_____
Last Name Only

*MR. STIFFIN*          **KANSAS DEPARTMENT OF CORRECTIONS**          *53454*
*Public Service Administrator*                                        Number

          **INMATE REQUEST TO STAFF MEMBER**

To: *LAW LIBRARY*                              Date: *10-28-2022*   *6:32 p.m.*
(Name and Title of Officer or Department)
State completely but briefly the problem on which you desire assistance. (Be specific.)

*I NEED A LEGAL PACKET, AND THE FORMS TO FILE A
1983 CIVIL LAWSUIT, AND THE FEDERAL RULES OF
CIVIL PROCEDURE AS QUICKLY AS POSSIBLE PLEASE
AND FORM FOR JOINT COMMITTEE SPECIAL CLAIMS
AGAINST THE STATE. THANK YOU - GOD BLESS*
*RONNIE ALLEN BELLAMY JR. #53454*          *Belly #53454*

Work Assignment: *TRU-UNIT M #*          Living Unit Assignment: *A4-Claims 509*

Comment: _____   Detail or C.H. Officer: *US Steinle 10/24/22*

Disposition:

---

October 26, 2022

     Per your request, I am enclosing a 1983 form downloaded from the US District Of Kansas
website and a Joint Claims Committee claim form.

     The Federal Rules of Civil Procedure are too many pages for me to print off for you. According to
the LCF Library they are available to you through the tablets, I suggest you try that.
     You should make copies of these forms before writing on them because due to our limited
resources, we will not be able to send you another.


Charles J. Cavenee, Director
Legal Services For Prisoners

P-0009

6-25 Ronne BELLAMY

53454

KANSAS DEPARTMENT OF CORRECTIONS

INMATE REQUEST TO STAFF MEMBER

LEGAL SERVICES FOR PRISONERS        6-16-2021

IN ACCORDANCE WITH POLICY MEMORANDUM IMPP 01-107D
ACCESS TO LEGAL COUNSEL AND LITIGATION MANAGEMENT I
AM REQUESTING HELP.

Work Assignment: _____    Living Unit Assignment: A-1-217 TIER

Comment: _____    Detail or C.H. Officer: _____

Disposition:

June 28, 2021

If you are an **_employee_** of the Kansas Department of Corrections, IMPP 1-107D entitles you to some legal services through the KDOC Legal Staff. IMPP 1-107 D is limited to **_employees_** of the KDOC only. Legal Services For Prisoners is not a part of the KDOC Legal Staff, therefore if you are seeking legal services pursuant to IMPP 1-107D, you have contacted the wrong office and will need to submit your request to the Facility Legal counsel, MS Sherri Price, as set out in the IMPP you seem to rely on...

Charles J. Cavenee, Director
Legal Services for Prisoners

A1

INMATE REQUEST TO STAFF MEMBER

To: MR STIFFEN          EXHIBIT-1          Date: 2-1-2013

(Name and Title of Officer or Department)

_____
Unit Team, Detail, or Cellhouse Officer's Signature

**To be retained by inmate**

**Form 9**
For Cellhouse Transfer
Work Assignment _____
Interview Requests

BELLAMY
_____
**Last Name Only**

### KANSAS DEPARTMENT OF CORRECTIONS

53454
**Number**

## INMATE REQUEST TO STAFF MEMBER

To: MR STIFFEN LAW LIBRARY          Date: 2-1-2023
(Name and Title of Officer or Department)
State completely but briefly the problem on which you desire assistance. (Be specific.)

PLEASE SEND ME A LEGAL PACKET AND I NEED THE NAMES
AND ADDRESS OF THE PROSECUTING ATTORNEY'S OFFICE IN
LEAVENWORTH COUNTY THE UNIT TEAMS ARE REFUSING TO CONTACT
THEM AND HELP ME SO I CAN FILE CHARGES ON THE OFFICERS
WHO OPENED MY DOOR SO INMATE FELLERS COULD STAB ME AND
ON THE OTHER INMATES WHO ATTACKED ME WHILE OFFICERS WATCHED.

Work Assignment: TRU-UNIT MH SINGLE CELL ONLY   Living Unit Assignment: A-1-238

Comment: _____   Detail or C.H. Officer: J Bretwell

Disposition: _____
_____
_____
_____

To: _____          Date: 2-3-23
(Name & Number)

Disposition: _____
_____
_____
_____

_____
Employee's Signature

**To be returned to inmate.**

P-0009

*EXHIBIT - 1*

# Contact Us

We are located on the third floor of the Leavenworth Justice Center

Leavenworth County Attorney
601 South 3rd Street, Suite #3069
Leavenworth, KS 66048

Phone: (913) 684-0899

INMATE REQUEST TO STAFF MEMBER

To: *UT'S MEREDITH - HALL - BRETT PETERSON*                    Date: *2-1-2023*
(Name and Title of Officer or Department)

_____
Unit Team, Detail, or Cellhouse Officer's Signature                    **To be retained by inmate**

*EXHIBIT - 1*

**Form 9**
**For Cellhouse Transfer**                                          *BELLAMY*
**Work Assignment** _____              **Last Name Only**
**Interview Requests**

**KANSAS DEPARTMENT OF CORRECTIONS**                    *53454*
                                                        **Number**

*Mr. MEREDITH*
To: *UT'S MRS HALL - BRETT PETERSON*   **INMATE REQUEST TO STAFF MEMBER**
                                       Date: *2-1-2023*
(Name and Title of Officer or Department)
State completely but briefly the problem on which you desire assistance. (Be specific.)

*I NEED THE ADDRESS AND PHONE # TO CONTACT THE LEAVENWORTH
COUNTY PROSECUTORS OFFICE - AND NAME PLEASE IMMEDIATELY
TO FILE CHARGES ON THE OFFICERS AND INMATES INVOLVED
IN THE ATTACKS ON ME. ALL STAFF ARE MANDATORY
REPORTERS AND CAN NOT REFUSE TO FOLLOW THE LAW
AND RULES AND CONTACT AUTHORITIES*

Work Assignment: *TU UNIT MH SINGLE CELL ONLY* Living Unit Assignment: *A-1-238*

Comment:                        Detail or C.H. Officer: _____
*THIS IS MY 4TH ATTEMPT FOR HELP!*

Disposition:
*Leavenworth County Attorney's Office
Todd Thompson, Co. Attorney
Justice Center
601 S. 3rd St.
Leavenworth, Ks. 66048*
To: _____ Date: _____
(Name & Number)
*913-684.0899*

Disposition: _____
_____
_____
_____

*Brett Peterson, Warden's Office*
Employee's Signature                    **To be returned to inmate.**

P-0009

# MEMO



**Kansas**
Department of Corrections
*Lansing Correctional Facility*

*EXHIBIT—1*
*DOUBLE SIDED*

**DATE:** 11/27/2022

**TO:** Bellamy, Ronnie # 53464

**FROM:** Chandler Cheeks Warden

**SUBJECT:** Grievance # AA2023067

---

**Finding of the Facts:** Your grievance was received and an investigation into your allegations has been completed.

**Conclusions Made:** After a thorough review of all applicable documentation, it was determined that the response provided by UTM Latzke, and Opliger was appropriate.

You are not allowed to grieve the Classification decision making process per **KAR 44-15-101.**

**KAR 44-15-101 (a)(d)(2) states "the grievance procedure shall not be used in any way as a substitute for, or as part of, the inmate disciplinary procedure, the classification decision making process, the property loss or personal injury claims procedure, or the procedure for censorship of publications specified in the secretary's internal management policy and procedure."**

Therefore, the statute prohibits the use of the grievance procedure to address this concern.

**Actions Taken:** No further action needed

IMPP 11-106A III. 3: within 72 hours after receiving a custody classification, the offender may appeal the decision to the warden by submitting the appeal though the unit team counselor on a form 9.

    a. If the warden did not participate in the custody classification decision, the Warden must review the decision and the offenders written appeal and return a written response to the offender within 15 days of receipt.

    b. If the warden was a participant in the custody classification decision, the offender's appeal must be forwarded to the Deputy of facility management or designee for review who must return a response to the offender within 15 days of receipt.

    c. The decision of the warden or deputy secretary or designee is final.

INMATE REQUEST TO STAFF MEMBER

*EXHIBIT-1*

To: _____
(Name and Title of Officer or Department)

Date: *DOUBLE SIDED*

A1238

_____
Unit Team, Detail, or Cellhouse Officer's Signature

**To be retained by inmate**

**Form 9**
For Cellhouse Transfer
Work Assignment _____
Interview Requests

**Received**

**JAN 0 5 2023**

**Warden's Office**

*BELLAMY*
**Last Name Only**

KANSAS DEPARTMENT OF CORRECTIONS

*53454*
**Number**

INMATE REQUEST TO STAFF MEMBER

To: MR KINCAID WILLARD SCOTT     Date: 1-3-2023
(Name and Title of Officer or Department)
State completely but briefly the problem on which you desire assistance. (Be specific.)

SHIELD # _____     DATE: ____     TIME: 8

PER OUR CONVERSATION AND YOUR REPLY ON MY OTHER
FORM-9 THAT YOU DONT HAVE TIME TO SPEND DAYS LOOKING
AT VIDEO YOU NEED EXACT DATE OF MY MRA - ILLEGALY
BY Lt. BARNETT I REQUESTED THAT CSI WAGNER VM PARKS - FEILERS - FREY-
MOORE - CASTILO ALL BE CHARGED WITH CONSPIRACY TO COMMITT MURDER - THEY ARE
REFUSING TO CALL LEAVENWORTH COUNTY PROSECUTOR VIOLATING MY RIGHTS

Work Assignment: THIS-WUNT NOT SINGLE CELL ONLY     Living Unit Assignment: 4-1-238

Comment: _____     Detail or C.H. Officer: _____

Due to Illegal Double housing attempt against State Law

Disposition: See Reverse   AND I STILL NEED MY SHOES - SHOWER SHOES
TV. & PROPERTY please

_____
_____
_____

To: *Bellamy # 53454*     Date: 1/05/22
(Name & Number)

Disposition: Per our Conversation, This would have to bee looked into.
Concusions made were The Lt's are not Previe to the Knowlege of
your Status. You where treated the Same as any other offender who
Refuses a Roommate. There is now Warings that you Cannot have a Roommate
additionally any Request for property
has to be made through the Seg Review

_____
Employee's Signature

**To be returned to inmate.**

Byrd. have you Requested to See them Per our

**P-0009**



*IMPP O2 118D    EXHIBIT-1*
*13pgs DOUBLE SIDED*

**714 SW Jackson St., Suite 300**
**Topeka, KS 66603**
**(785) 296-3317**
**Fax: (785) 296-0014**
**www.doc.ks.gov**

# Policy Memorandum[1]

---

This Policy Memorandum Issuance #18-03-001

Effective Date:  __Upon Issuance__          Expiration Date __Upon Reissuance of IMPP__[2] (required)

_____          Addresses subject matter for which an IMPP will be forthcoming and assigned to Chapter(s) _____ of the IMPP manual.

__X__          Amends or modifies existing IMPP(s) **#02-118D HUMAN RESOURCES:  Employee and Volunteer Rules of Conduct and Undue Familiarity**

_____          Elaborates on the contents of IMPP(s) #_____

_____ Is for Staff Only          __X__ Is for Both Staff and Offenders

---

This policy memorandum is being issued to revise the disciplinary action for possession of personal cell phones and possession of tobacco products.

Revisions are being made to Section IV.W.3.a.(1) through (4) and adding a new (5) as follows:

**IV.     Rules of Conduct**

W.     Possession of Personal Cell Phones.

3.     Violation of this policy shall be subject to the following disciplinary actions except as provided by the provisions in Section IV.W.5.

a.     Any employee found to be in possession of personal cell phones, cell phone chargers, cell phone batteries, and/or any blue tooth devices within any area of a correctional facility outside the confines of the employee's locked vehicle, while attempting to enter a correctional facility, or while on duty and in direct contact with an offender or offenders away from facility grounds as provided herein shall be subject to disciplinary action as follows:

(1)     ~~One (1) day suspension without pay~~ A Letter of Counseling for the first offense;

(2)     ~~Three (3) day suspension without pay~~ A Letter of Reprimand for the second offense;

---

[1]     Note: To keep your IMPP Manual current, please place this Policy Memorandum in your manual at the appropriate location.  If the memorandum addresses subject matter for which an IMPP will be forthcoming, place this issuance before the first IMPP in the Chapter indicated.  If the memorandum addresses an existing IMPP, the issuance should be placed in front of the existing policy.  If this memorandum is for both staff and offenders, it shall be immediately posted.

[2]     Unless another Policy Memorandum or IMPP on this subject is issued, the requirements contained herein have no force and effect after the indicated expiration date.

*EXHIBIT—1*

# KANSAS DEPARTMENT OF CORRECTIONS

| | | SECTION NUMBER<br><br>02-118D | PAGE NUMBER<br><br>1 of 17 |
|---|---|---|---|
| **K**ansas<br>Department of Corrections | **I**NTERNAL<br>**M**ANAGEMENT<br>**P**OLICY AND<br>**P**ROCEDURE | SUBJECT:<br><br>HUMAN RESOURCES:  Employee and Volunteer Rules of Conduct and Undue Familiarity | |

| Approved By: | | |
|---|---|---|
| | Original Date Issued: | **07-01-15** |
| | Replaces Version Issued: | **N/A** |
| **Secretary of Corrections** | **CURRENT VERSION EFFECTIVE:** | **07-01-15** |

| APPLICABILITY: | _ ADULT Operations Only | _ JUVENILE Operations Only | X DEPARTMENT-WIDE |
|---|---|---|---|

## POLICY STATEMENT

Every contact with offenders should be viewed as an opportunity to set a positive example and to emphasize positive behavior and individual accountability.  All employees of the Kansas Department of Corrections shall adhere to the Department's Code of Ethics, as well as all other applicable statutes, regulations, performance, conduct, and/or physical and mental fitness expectations as established herein. (ACI 3-4067; 3-APPFS-3C-02) The Department is committed to providing a productive and efficient work environment free of behaviors that are violent, threatening, disruptive, harassing, dishonest, unethical, or that violate any of the provisions of this document. (3-APPFS-3C-02)  Violation of any statute, regulation, rule of conduct, or condition of employment may subject the employee to criminal charges or disciplinary action, up to and including dismissal. (ACO 2-1C-04)

The Kansas Department of Corrections absolutely forbids acts of undue familiarity with offenders.  The Department shall fully investigate, and take all necessary corrective and disciplinary action, per provisions in IMPP 02-120D, concerning any person who engages in undue familiarity.

## DEFINITIONS

Appointing Authority:  The person designated pursuant to IMPP 02-109D for each respective division or facility of the department.

Contraband:  Any item that has not been approved for introduction into a correctional facility by law, regulation, policy, or otherwise specifically authorized by the warden, per K.A.R. 44-2-103 or the superintendent, per K.A.R. 123-2-111.

Employee:  Any person employed full time, part time, or on a temporary appointment to the Kansas Department of Corrections. For purposes of this IMPP, this definition shall include any person employed by a public or private entity under contract to provide services to the Kansas Department of Corrections; including supervision services for persons on parole, conditional release, and post-release supervision.

Facility:  Includes KDOC adult and juvenile correctional facilities, parole offices, Central Office, and Correctional Industries offices or work sites.

Gross Negligence:   Conduct indicating a reckless disregard and complete indifference for the possible consequences of the person's action.

Horseplay:  Any rough, boisterous, or rowdy play; or light hearted recreational activity pursued for the purpose of diversion or amusement.

## II.     Employee Responsibility

A.     It is the responsibility of all employees to familiarize themselves with and to comply with requirements and conditions stated in the documents identified in Sections I. A. and B.

1.     Each employee shall be given time on duty or in training to familiarize themselves with the documents.

2.     During orientation, all new employees will be provided an overview of and shall sign a statement acknowledging access to and awareness of personnel policies and regulations.

3.     All new employees, contract personnel, volunteers, and all promoted and/or transferred employees shall be required to acknowledge the Department's Code of Ethics in writing on Attachment A, Employee Acknowledgements in writing on Attachment B, and State of Kansas Social Media Understanding & Acceptance of Policy in writing on Attachment C. (ACI 3-3067; 3-APPFS-3C-02)

B.     Violation of any rule of conduct may be grounds for disciplinary action up to and including dismissal. (ACO 2-1C-04)

C.     Employees and volunteers are required to report known or suspected violations of this policy to a supervisor or manager in a timely manner.

## III.    Use of Deadly Force by an Employee

A.     The ability and willingness to utilize deadly force in situations where the application of this degree of force is authorized and appropriate is a condition of employment for all corrections officers and corrections specialists.

B.     All corrections officers, corrections specialists, and special agents who are trained and qualified in the use of weapons and the application of deadly force pursuant to IMPP 03-106D and IMPP 12-111 are subject to assignment to any post or duty where the application of deadly force may be authorized or necessary.

1.     Any employee who refuses such an assignment or refuses or fails to apply deadly force under circumstances warranting the use of this degree of force shall be subject to disciplinary action up to and including dismissal. (ACO 2-1C-04)

2.     Any employee who applies deadly force under circumstances not warranting the use of this degree of force shall be subject to disciplinary action up to and including dismissal.

## IV.    Rules of Conduct (ACO 2-1C-04)

A.     Following Orders

1.     Employees shall promptly obey lawful orders given them by proper authority.

2.     In the event of conflicting orders, the last order shall be obeyed.

B.     Conduct and Demeanor

1.     While on duty, employees and volunteers shall at all times maintain a courteous, respectful and professional demeanor in their dealings with, and in the presence of, offenders, employees, visitors, and the public.

2.     Employees or volunteers shall not use indecent, abusive or profane language while on duty, including racial or ethnic slurs or jokes, or sexually suggestive comments or jokes.

7.   No employee or volunteer shall, under any circumstances, engage in trading, trafficking, or any business transaction with offenders or the families or visitors of offenders.

   a.   Employees or volunteers shall not, directly or indirectly, give to or accept from any offender, or any offender's family member, anything in the nature of a gift or the promise of a gift.

8.   No employee or volunteer shall knowingly sell to, buy from, receive from, or deliver to any offender an article or commodity of any description, except through duly authorized channels.

   a.   No employee or volunteer shall, without proper authorization, introduce into or upon the grounds of any Department of Corrections facility any item intended to be received by offenders.

   b.   No employee shall, without proper authorization, take out of the facility any correspondence or other written or taped material, personal property, or other item(s) from an offender of a facility.

   c.   No volunteer shall take out of the facility any correspondence or other written or taped material, personal property, or other item(s) from an offender of a facility.

   d.   Questions involving possible contraband items shall be answered through a review of IMPP 12-121 or by the appointing authority.

   e.   Any employee or volunteer violating this rule shall be subject to disciplinary action and criminal prosecution pursuant to K.S.A. 2014 Supp. 21-5914.

9.   No employees or volunteers shall take or send either to or from any offender any message (verbal or written) or any literature or reading matter except such as is necessary in transacting the business of the facility or work area.

10.   Each employee and volunteer within a correctional facility, in a field office within Parole Services, or in Kansas Correctional Industries shall receive training regarding undue familiarity during his or her initial basic training.   Persons employed by DOC Central Office shall receive such training during the initial one-week orientation period.

   a.   Refresher training relative to undue familiarity shall be provided during annual training or more often if the appointing authority determines that a need for such training exists.

11.   Employees and volunteers may receive approval, on a case by case basis, for contacts with offenders in other jurisdictions where there is a low probability of the offender being either incarcerated within KDOC facilities or supervised by KDOC personnel subsequent to release.

   a.   In such cases where an employee or volunteer is of the opinion that contact with an offender in another jurisdiction should be approved, the employee shall, in writing, notify his or her appointing authority of the offender's identity, location, correctional status, and any other facts pertinent to the request.

   b.   The appointing authority, or designee, shall verify the particulars of the request, and shall advise the employee/volunteer in writing as to whether or not the request is approved.

   c.   The decisions of appointing authorities in these matters are final, and not grievable under the provisions of IMPP 02-115D.

6.    To the extent solicitations for funds or activities are lawful or appropriate, employees shall not make expressed or implied offers of special favors or threats of penalty.

7.    Employees shall not bring upon state property or transport in or display on state vehicles any campaign literature or other paraphernalia.

U.    Governmental Standards and Conduct

1.    State employees are prohibited from accepting discounts and gifts provided to them by a state agency (including their own) because of the employee's official position.  Therefore, state employees may not accept gifts, discounts or access to entertainment and sporting events from anyone, including state agencies, unless one of the exceptions applies:

a.    A gift having an aggregate value of less than $40 given at a ceremony or function;

b.    Gifts from relatives or gifts from personal friends when it is obvious to the person that the gift is not being given because of the person's official capacity;

c.    Anything of value received by the person on behalf of the state that inures to the benefit of the state;

d.    Contributions solicited on behalf of a nonprofit organization which is exempt from taxation;

e.    Discounts available to employees under the STAR Discount Program; or

f.    Prizes given in truly random drawings.

V.    Possession of Firearms While on Duty

1.    Possession of unauthorized firearms, firearm magazines, and/or ammunition by KDOC employees while on duty, including while in state vehicles, is strictly prohibited.

2.    Department of Corrections employees may carry a concealed firearm while on duty subject to the following:

a.    Any possession of a concealed firearm is for personal safety and self-defense purposes and is not based on the status as a KDOC employee.

(1)    Any possession of a concealed firearm shall not be allowed within the restricted access areas of any KDOC correctional facility.

b.    For Parole Officers, the possession of a firearm is not related to the statutory designation as a law enforcement officer and does not imply an authority to arrest or detain offenders beyond what KDOC policy allows.

3.    Security and Storage

a.    Firearms shall remain secure and concealed at all times.

(1)    Firearms shall be carried/worn and concealed by clothing or stored in a closed pouch on a waist belt or fanny pack.

(2)    If not secured on the carrier, the firearm shall be stored in a secure personal vehicle or a gun safe.

(a)    No other type of firearm may be stored within personal vehicles.

7. Violation of this section shall be the basis for disciplinary action up to and including termination.

W. Possession of Personal Cell Phones

1. Employees or volunteers shall not possess personal cell phones, cell phone chargers, cell phone batteries, Subscriber Identity Module (SIM) cards, portable storage devices, and/or any blue tooth devices within any area of a correctional facility.

2. An employee whose duty assignment places that employee in direct contact with an offender while away from facility grounds, including during the supervision of work details, while providing transportation, and during hospital supervision, shall not be in possession of personal cell phones, cell phone chargers, cell phone batteries, and/or any blue tooth devices.

3. Violation of this policy shall be subject to the following disciplinary actions except as provided by the provisions in Section IV.W.5.

   a. Any employee found to be in possession of personal cell phones, cell phone chargers, cell phone batteries, and/or any blue tooth devices within any area of a correctional facility outside the confines of the employee's locked vehicle, while attempting to enter a correctional facility, or while on duty and in direct contact with an offender or offenders away from facility grounds as provided herein shall be subject to disciplinary action as follows:

      (1) One (1) day suspension without pay for the first offense;

      (2) Three (3) day suspension without pay for the second offense,

      (3) Five (5) day suspension without pay for the third offense; and

      (4) Termination for the fourth offense.

   b. In the event that one (1) or more years have passed since the most recent disciplinary action for possession of a cell phone, a next violation shall be considered as the first violation.

4. The Warden or Superintendent shall establish a location outside of the secure perimeter of the facility where employees may store their personal cell phones, cell phone chargers, cell phone batteries, and/or any blue tooth devices during work hours. This storage area shall be clearly marked and it shall be outside of the area where employees begin the security check to enter the facility.

5. Employees may register personal cell phones, cell phone chargers, and/or any blue tooth devices by presenting them for entry by description of the device, including its make, model and serial numbers, into a log maintained by the Warden's or Superintendent's designee.

   a. Central office employees may likewise so register such devices in a log maintained by the Division of Human Resources. Thereafter, employees may possess and carry a device duly registered for their possession including any battery or batteries contained within a device, up to, but not past a point designated as the security perimeter by the Warden or Superintendent, and, whether on the employee's own initiative or after being duly warned or challenged by any employee assigned to the security perimeter entry point, shall be permitted, subsequent to verification of the item's valid registration, to return the device to the confines of the employee's locked vehicle, or a storage area established pursuant to Section IV.W.4., and shall not be subject to formal disciplinary action.

3.      Any employee who fails to report "frequent flyer miles" received may be subject to disciplinary actions.

**NOTE:** The policy and procedures set forth herein are intended to establish directives and guidelines for staff and offenders and those entities that are contractually bound to adhere to them. They are not intended to establish State created liberty interests for employees or offenders, or an independent duty owed by the Department of Corrections to employees, offenders, or third parties. Similarly, those references to the standards of various accrediting entities as may be contained within this document are included solely to manifest the commonality of purpose and direction as shared by the content of the document and the content of the referenced standards. Any such references within this document neither imply accredited status by a Departmental facility or organizational unit, nor indicate compliance with the standards so cited. The policy and procedures contained within this document are intended to be compliant with all applicable statutes and/or regulatory requirements of the Federal Government and the state of Kansas. This policy and procedure is not intended to establish or create new constitutional rights or to enlarge or expand upon existing constitutional rights or duties.

**REPORTS REQUIRED**

None.

**REFERENCES**

K.S.A. 8-1401, *et seq.*; 8-1501, *et seq.*; K.S.A. 46-237a, 75-7c01, 75-2953; K.S.A. 2014 Supp. 21-5914
K.A.R. 1-6-32, 1-6-33, 1-9-5, 1-9-25, 1-49-10, 44-2-103, 123-2-111
IMPP 01-113, 02-101, 02-109D, 02-110D, 02-114D, 02-115D, 02-119D, 02-124, 02-127, 03-106A, 05-101, 05-107, 09-107, 10-103D, 10-110, 12-111, 12-121, 12-123, 14-149
ACO 2-1C-04
ACI 3-4067
3-APPFS-3C-02
3-JTS-1A-29

**ATTACHMENTS**

| Attachment | Title of Attachment | Page Total |
|:---:|:---|:---:|
| A | Code of Ethics | 1 page |
| B | Acknowledgments | 1 page |
| C | State of Kansas Social Media Policy and Understanding and Acceptance of Policy Form | 3 pages |
| D | Notice of Offender Relationship | 1 page |
| E | Concealed Carry Information | 1 page |

Employee: _____

Initial

## KANSAS DEPARTMENT OF CORRECTIONS
### Acknowledgements

I.     **Rules of Conduct** (Employees, Contract Personnel and Volunteer)

☐     A.     I acknowledge that I have read IMPP 02-118D, Employee Rules of Conduct and Undue Familiarity.  I understand that, with the exceptions noted in the following paragraphs, a violation of any rule of conduct shall be grounds for disciplinary action, up to and including dismissal.  I have had the opportunity to ask questions regarding any portion of the IMPP.

☐     B.     I acknowledge that I have read and understand K.S.A. 2014 Supp. 21-5914 and K.A.R. 44-2-103, Trafficking in Contraband.  I understand that a violation of the Statute and/or Regulation shall be grounds for discipline, up to and including dismissal and may also result in prosecution for a severity level 5 non-person felony for state employees or a level 6 non-person felony for persons providing contracted services to offenders under the supervision of the Secretary of Corrections.

☐     C.     I understand, as an employee of the Department of Corrections as defined in IMPP 02-118D, that violation of the Statute shall be grounds for dismissal and may also result in prosecution for a felony offense.  I understand that violation of the Statute by an employee, contract employee, or volunteer of the Department of Corrections is a severity level 5 felony offense, and violation of the Statute by an employee or contract employee of a juvenile correctional facility is a severity level 4 felony offense.

☐     D.     I acknowledge that I have read and understand IMPP 10-103D, Coordinated Response to Sexual Abuse and Harassment.  I understand that a violation of IMPP 10-103D, including engaging in sexual abuse or sexual harassment of an offender, shall be grounds for disciplinary action, up to and including dismissal. I also understand that termination shall be the presumptive disciplinary sanction for employees who engage in sexual abuse of an offender.  I have had the opportunity to ask questions regarding any portion of the IMPP.

_____          _____
Signature                                                                                Date

_____          _____
Signature of Human Resources Witness                                       Date

II.     **Awarding of Compensatory Time**  (Employees ONLY)

I understand that, in accordance with IMPP 02-113D, the Kansas Department of Corrections, in lieu of payment for overtime, reserves the right to compensate hourly employees by granting compensatory time off at the rate of one and one half hours for each hour worked in excess of the length set for my position by IMPP 02-113D.  I have had the opportunity to discuss this with a Human Resources staff member.

_____          _____
Signature                                                                                Date

_____          _____
Signature of Human Resources Witness                                       Date

III.     **Rights and Responsibilities Under the Family Medical Leave Act** (FMLA) (Employees ONLY)

I, undersigned hereby state that I have been notified of my rights and responsibilities as an employee of the Kansas Department of Corrections under the Family and Medical Leave Act, by being provided with the following items, which I have read, and by being provided with the opportunity to ask any questions I may have regarding the FMLA.

1.     KDOC Policy Regarding FMLA (IMPP 02-114D)

2.     Employee Rights and Responsibilities Under FMLA (Attachment B of IMPP 02-114D)

_____   _____          _____
Signature                                          Date                           Position (Job Title)

_____   _____
Signature of Witness                            Date

password information for social media accounts must be provided to the agency appointing authority upon the creation and/or modification of said information and passwords used for social media accounts must comply with State Information Technology Executive Council (ITEC) requirements to the extent they are enabled by the social media company in question.

**Use by Employees**

Employees may have personal social media sites, but these may not be represented as official State agency sites, and may not be used during work hours unless approved by the employee's supervisor and agency appointing authority. In all cases, employee use of social media during work hours shall not interfere with work duties.

All employees are personally responsible for the information they communicate online. Employees should ensure that their social media activities do not interfere or conflict with their job or commitments to the State of Kansas, the agency in which they are employed, or the customers of the agency. To the extent permissible by law, employees waive their right of privacy for any information stored or transmitted on State-owned or -leased equipment.

When an employee's non-work related social media activities include any information related to their employment with the State of Kansas or the specific agency in which the employee works, the employee must make it clear that the views expressed are the employee's alone and do not reflect the views of the State of Kansas or the agency in which the employee is employed, by stating, for example, *"The views expressed in this post are my own. They have not been reviewed or approved by (insert agency) or the State of Kansas."*

The application of this rule should not be construed to infringe on any person's rights of expression which are guaranteed by law, each case will be given careful review prior to having any personnel actions taken.

**4. Agency-Specific Policies**

Any State agency may enact an agency-specific social media policy with provisions more stringent than this statewide policy for law enforcement staff or because of specific public safety or security reasons. Any such agency-specific social media policy must be reviewed and approved by the Department of Administration and the Office of Information Technology Services prior to implementation.

Agencies wishing to implement such agency-specific policies should submit a draft of the policy to Kraig Knowlton, Director of the Office of Human Resources, Department of Administration, by email at Kraig.Knowlton@da.ks.gov.

**5. Contact**

For information or guidance regarding this policy please contact Anthony Schlinsog, Chief Information Technology Officer, Office of Information Technology Services, by email at Anthony.Schlinsog@ks.gov or by phone at 785-296-3463.

IMPP 06-101D RESEARCH

IMPP 06-101D RESEARCH

DOUBLE SIDED

# KANSAS DEPARTMENT OF CORRECTIONS

| **Kansas** Department of Corrections | **I**NTERNAL **M**ANAGEMENT **P**OLICY AND **P**ROCEDURE | SECTION NUMBER 06-101D | PAGE NUMBER 1 of 6 |
|---|---|---|---|
| | | EVALUATION AND RESEARCH: Research and Evaluation Activities | |

| Approved By: *[signature]* Secretary of Corrections | Original Date Issued: | 03-30-16 |
|---|---|---|
| | Replaces Version Issued: | N/A |
| | CURRENT VERSION EFFECTIVE: | 03-30-16 |

| APPLICABILITY: | ADULT Operations Only | JUVENILE Operations Only | X DEPARTMENT-WIDE |
|---|---|---|---|

## POLICY STATEMENT

Research and evaluation activities by individuals and/or organizations outside the Department are permitted and encouraged, if they are relevant to the Department and its programs. (ACO 2-1F-10, 2-1F-11; ACI 3-4105, 3-4106, APPFS 2-3096) System Management Team members are encouraged and expected to undertake and/or support research and evaluation activities to assess the efficiency and effectiveness of operations, programs and/or services under their management. (ACO 2-1F-10, 2-1F-11, ACI 3-4105, 3-4106, APPFS 2-3096) System Management Team members may independently conduct and/or authorize the conduct of research and evaluation activities, (ACO 2-1F-12, ACI 3-4109) provided the results of such activities will not be submitted for publication or other professional/academic distribution and the authorizing System Management Team member is not cited as one of the researchers. Proposals for research projects which may possibly be submitted for publication or other professional or academic distribution shall be submitted for review by designated Central Office staff in advance to ensure that appropriate methodologies and procedures are used; such proposals may be subject to final approval by the Secretary. Advance review by designated Central Office staff and approval by the Secretary shall be obtained prior to contracting for any research activity, regardless of how such research will be utilized or distributed. Appropriate safeguards and limitations shall be utilized to protect the welfare and privacy of individual staff, adult offenders, and juveniles involved as subjects. (ACO 2-1F-12, 2-1F-15, APPFS 2-3101)

Research and evaluation activities shall be conducted and the results reported, disseminated and utilized in conformity with Department policies and procedures, professional and scientific ethics, and, with State and Federal guidelines for the use and dissemination of research findings. (ACO 2-1F-09, ACI 3-4108 NCCHC P-72) All completed research or evaluation reports shall be submitted for review by the Management Team prior to being submitted for publication or otherwise released for distribution.

Offenders shall not be used for medical, pharmaceutical or cosmetic research, or experiments. This prohibition shall not preclude any individual offender from receiving treatment via a specific medical procedure that is not generally available when such treatment procedure is approved by the appropriate governmental agencies, Departmental Health Authority, and the offender's consent is documented. (ACO 2-1F-14, ACI 3-4105) Participation in biomedical, non-medical, non-pharmaceutical and non-cosmetic research, including sociological and psychological research involving human subjects shall require the written informed, voluntary consent of the staff and offenders involve d. (ACO 2-1F-13, ACI 3-4110, NCCHC P-72)

## DEFINITIONS

**Data:** Factual information organized and used as a basis for analysis that includes both useful and irrelevant or redundant information and must be processed to be meaningful.

**Departmental Health Authority:** The medical director of the agency or organization responsible for the provision of health care for the Kansas Department of Corrections.

**Facility health authority:** The physician or health administrator responsible for the provision of health care services at a facility. The facility health authority works under direction of the Department's health authority.

**In-house research/evaluation:** Activities or projects approved by a System Management Team member or their designee to assess the efficiency or effectiveness of any aspect of their operation.

**Management Team (MT):** A panel of Central Office management staff designated by the Secretary. Currently this panel is comprised of the Secretary; Deputy Secretaries; Special Counsel to the Secretary; Chief Legal Counsel; Legislative Liaison; Communications Director; Prisoner Review Board, Chair; Enforcement, Apprehension and Investigation Director; Human Resources Manager; Information Technology Manager; Reentry Director, Director of Victim Services and the Fiscal Officer.

**Principal Administrator:** The person directly responsible for the overall administration of a KDOC facility, parole region, or Central Office work unit.

**System Management Team (SMT):** A management panel designated by the Secretary which is comprised of the Management Team, wardens, superintendents, parole directors, and Kansas Correctional Industries directors.

**User:** The person, agency or group authorized to engage in research activity within a facility, office or unit of the Department of Corrections.

## PROCEDURES

### I. Encouragement and Facilitation of Research Activities

A. To encourage and facilitate research activities, the Department shall seek funding for research projects relevant to stated goals and objectives.

B. In all cases where research is being proposed by persons not employed by the Department, or those persons employed by the Department in a position where research activity is not a part of the person's job description, an Access Request and Non-Disclosure Agreement (hereinafter referred to as "user's agreement") shall be completed and submitted with the research proposal. See Attachment A, form 06-101-001.

### II. Provision for Treatment and Prohibition of Certain Research Activities

A. When a specific medical procedure not generally available is recommended in the treatment of an individual offender, such treatment shall not begin until after a full explanation of the positive and negative features of the treatment has been given to the offender.

    1. The explanation to the offender shall be documented, in accordance with procedures established in IMPP 10-127D, utilizing the Informed Consent to Health Services form for surgical and non-routine medical treatment.

B. Except as provided above, all research proposals involving offender participation in medical, pharmaceutical, or cosmetic testing for experimental research purposes shall be rejected.

### III. Voluntary Informed Consent Agreement

A. Research involving human subjects, whether employees or offenders, shall require the documented, voluntary informed consent of each participant. Such consent shall utilize appropriate forms, as provided in IMPP 10-127D, and shall be obtained in advance of the subject's participation.

B. At a minimum, an informed consent shall include:

    1. A fair explanation of the procedures to be followed including an identification of that which is experimental;

    2. A description of the potential discomforts and/or risks;

    3. A description of the benefits to be expected;

    4. A description of appropriate alternative procedures;

    5. An offer to answer any inquiries concerning proposed procedures; and,

    6. Instruction that the subject is free to withdraw consent and to discontinue participation in the project at any time.

C. Use of subjects who are legally unable to give the informed consent (e.g., under the age of 18 or mentally incompetent) shall be prohibited. (ACO 2-4E-01; ACI 3-4372, NCCHC P-70)

### IV. Confidentiality of Research Data

A. Provisions shall be made by the user for safeguarding the confidentiality and prohibiting the dissemination of research data that can be traced to or identified with individual subjects. (ACO 2-1F-15)

B. Questionnaires, inventories and other data gathering instruments and/or procedures shall limit identifying and/or personal information recorded to only that essential to the project as specified within the context of the user's agreement.

    1. Research data containing information from which the identity of subjects can be traced shall not be disseminated to anyone except appropriate project or KDOC staff.

C. All data collected by a KDOC employee as part of the duties or activities of the position shall be the property of the facility, parole district, or unit in which the data was collected and maintained in accordance with the records retention schedule established by the State Records Board.

D. Data collected by an outside researcher or by a KDOC employee who, while off duty, conducts research that is not a part of his/her position responsibility shall be considered the property of that researcher or the agency the researcher represents. Such data shall be maintained in accordance with guidelines established by the agency represented by the researcher.

### V. Review and Approval Process for Research and Evaluation Proposals

A. System Management Team members conducting or authorizing in-house research or evaluation projects shall be responsible to ensure the research design and methodologies are in conformance with the provisions of this IMPP. (ACI 3-4109)

B. Except for in-house research and evaluation projects approved by System Management Team members, all proposals for research studies shall be forwarded to the Research and Planning Unit for review prior to the initiation of any research activity. (ACO 2-1F-12)

    1. Research/evaluation proposals shall be submitted to the Research and Planning Unit when one or more of the following conditions exist:

        a. The research or assessment to be conducted is not under the direction of a System Management Team member.

        b. The research or findings will be submitted for publication in a newspaper, newsletter, magazine or professional journal or in a paper submitted in conjunction with a college/university program or presented at a professional conference or meeting.

        c. The System Management Team member of the organizational unit is or will be cited as one of the researchers.

C. Research proposals shall address all of the design and methodology issues and include all information and material listed in the Research Proposal Format, Attachment B.

D. Each member of the Management Team shall be given notice of any research proposals that are received by the Research and Planning Unit for review and each such person shall be given the option of reviewing each proposal, consistent with his/her interests.

    1. The principal administrator at each facility/region/unit involved in the research shall be given a copy of the full proposal to review.

E. The Research and Planning Unit shall determine:

    1. The potential benefits to science, society and the intended subjects;

    2. The potential risks and costs to the intended subjects; and,

    3. A recommended course of action, based upon a professional assessment of the anticipated benefits to offenders, the Department, and the Secretary of Corrections.

F. Only those proposed projects wherein potential benefits clearly outweigh potential risks and costs shall be given any further consideration.

G. Those projects not meeting minimum approval criteria as established under V. E. and not receiving further consideration under V. F. shall be recommended for denial.

H. For those projects meriting further consideration, the Research and Planning Unit shall conduct a review to determine:

    1. The relative merit and appropriateness of the project, i.e., consistency with the KDOC Mission statement and relevance to the Department's programs, services and operations; (ACO 2-1F-10, ACI 3-4105, APPFS 2-3096)

    2. The qualifications of the researcher(s);

    3. The adequacy of:

        a. The research design;

        b. The voluntary informed consent agreement; and,

        c. The procedures designed to maintain the confidentiality, security and privacy of research data. (ACO 2-1F-15)

    4. The disruptive effects, if any, upon the orderly management of the project site; and,



01-1070

**Kansas** Department of Corrections *Central Office*

714 SW Jackson St., Suite 300
Topeka, KS 66603
(785) 296-3317
Fax: (785) 296-0014
www.doc.ks.gov

EXHIBIT-1

DOUBLE SIDED

### GEOGRAPHIC LOCATION OF LEGAL COUNSEL ASSIGNMENTS

**CENTRAL OFFICE**

Chief Legal Counsel
Assistant Chief Legal Counsel
Legal Counsel(s)

Providing Services to:

*Secretary of Corrections
*Central Office Staff
*Topeka Correctional Facility
*Parole Services
*Juvenile Community Supervision Agencies
*Juvenile Intake and Assessment
*Kansas Correctional Industries
*Kansas Juvenile Correctional Complex
*Larned Juvenile Correctional Facility
*Other Facilities as Necessary

| LCF | HCF | ECF | EDCF | WCF |
|---|---|---|---|---|
| Legal Counsel | Legal Counsel | Legal Counsel | Legal Counsel | Legal Counsel |
| Providing Services to: | Providing Services to: | Providing Services to: | Providing Services to: | Providing Services to: |
| * LCF<br>* KCI | * HCF<br>* LCMHF<br>* KCI | * ECF<br>* NCF<br>* KCI | * EDCF<br>* OCF | * WCF<br>* WWRF |

---

### Policy Memorandum[1]

This Policy Memorandum Issuance # __16-01-003__

Effective Date __Upon issuance__    Expiration Date __Upon Reissuance of IMPP__[2] (required)

_____ Addresses subject matter for which an IMPP will be forthcoming and assigned to Chapter(s) _____ of the IMPP manual.

__X__ Amends or modifies existing IMPP(s) # __01-107D__

_____ Elaborates on the contents of IMPP(s) # _____

_____ Is for Staff Only __X__ Is for Both Staff and Offenders

This policy memorandum is being issued to amend Attachment A to IMPP 01-107D, Access to Legal Counsel and Litigation Management, to accurately reflect the current geographic location of legal counsel assignments.

_____
Secretary of Corrections

Date: __01/13/16__

[1] Note: To keep your IMPP Manual current, please place this Policy Memorandum in your manual at the appropriate location. If the memorandum addresses subject matter for which an IMPP will be forthcoming, place this issuance before the first IMPP in the Chapter indicated. If the memorandum addresses an existing IMPP, the issuance should be placed in front of the existing policy. If this memorandum is for both staff and offenders, it shall be immediately posted.

[2] Unless another Policy Memorandum or IMPP on this subject is issued, the requirements contained herein have no force and effect after the indicated expiration date.

---

## KANSAS DEPARTMENT OF CORRECTIONS

**Kansas** Department of Corrections

**I**NTERNAL **M**ANAGEMENT **P**OLICY AND **P**ROCEDURE

| SECTION NUMBER | PAGE NUMBER |
|---|---|
| 01-107D | 1 of 4 |

SUBJECT:

ADMINISTRATION: Access to Legal Counsel and Litigation Management

Approved By:

_____
Secretary of Corrections

| Original Date Issued: | 11-24-15 |
|---|---|
| Replaces Version Issued: | N/A |
| CURRENT VERSION EFFECTIVE: | 11-24-15 |

| APPLICABILITY: | _ ADULT Operations Only | _ JUVENILE Operations Only | X DEPARTMENT-WIDE |
|---|---|---|---|

### POLICY STATEMENT

Employees of the Department shall be provided legal assistance in the resolution of legal issues related to Department operations, within the scope of official duties. This includes but is not necessarily limited to interpretation of case law, formation of departmental policy, advice on individual cases, and representation in Civil litigation including actions under the tort claims act and habeas corpus actions; federal civil rights actions; administrative hearings; offender disciplinary hearings; grievances; and claims against the State. Legal counsel shall not be provided to any Department employee in the defense of a criminal charge resulting from actions of the employee, whether within or beyond the scope of the employee's official duties.

Access to departmental legal counsel by the Secretary of Corrections and System Management Team members shall be unrestricted. Access to departmental legal counsel by other staff in the performance of their duties shall be through the established chain of command and in accordance with established General Orders.

Departmental legal services shall be under the supervision and direction of the Chief Legal Counsel located in the Central Office.

### DEFINITIONS

**Appointing Authority**: As defined in IMPP 02-109, any person or group of persons empowered by the constitution, by statute, or by lawfully delegated authority to make appointments to positions in the State service pursuant to K.A.R. 1-2-9. Anytime this term is used in this IMPP, it can be read as referring to the "appointing authority or designee".

**Facility Legal Counsel**: Legal counsel located at specific facilities and assigned to provide legal counsel and service for facility staff in defined geographic areas.

**Legal Counsel**: Legal counsel located in the Central Office and providing legal counsel and service to the Secretary, specific facilities, other Central Office staff, public and for all other facilities as necessary.

**Management Team**: A panel of Central Office management staff designated by the Secretary. Currently this panel is comprised of the Secretary; deputy secretaries, Chief Legal Counsel, Senior Counsel to Secretary; Director of Victim Services; Special Assistant and Communications Officer; Legislative Liaison; Reentry Director; Human Resources Director; Chief Information Officer; Fiscal Officer and Director of Enforcement, Apprehensions and Investigations.

**System Management Team**: A management panel designated by the Secretary which is comprised of the Management Team, wardens, superintendents, parole directors, and Director of Kansas Correctional Industries.

---

### PROCEDURES

**I.    Administration of Legal Services**

A.    To facilitate the delivery of legal services, legal counsel shall be assigned to provide legal services to various facility locations in the State.

B.    Facility legal counsel shall be assigned to and provide services in accordance with Attachment A.

**II.   Duties of Legal Counsel**

A.    The services of legal counsel shall be made available as required.

B.    Legal counsel shall prepare legal documents, including drafts of proposed administrative regulations and legislation for the Secretary.

C.    Legal counsel shall represent the Secretary through conference and negotiations with departmental officials, outside agencies, private business entities, and individuals to negotiate contracts, leases, and other matters, where necessary for the operation of the Department.

D.    Legal counsel shall also be available to other specified staff for advice and guidance on other legal matters that might arise.

E.    Legal counsel shall provide all necessary assistance to the Attorney General and/or contracted attorney representing the Department or State.

F.    Legal counsel shall review all final drafts and revisions of General Orders for the Topeka Correctional Facility.

**III.  Duties of Facility Legal Counsel**

A.    The services of the facility legal counsel shall be made available in accordance with Attachment A.

B.    Facility legal counsel shall provide guidance on matters related to civil service hearings and other administrative hearings; offender disciplinary hearings; offender grievance processing; claims processing; and shall provide representation at court hearings held in the District Court of the county where a facility for which they are responsible is located.

C.    Facility legal counsel shall prepare drafts of legal documents at the request of the facility warden(s) for review by the Department's Chief Legal Counsel.

D.    Facility legal counsel shall review all final drafts and revisions of General Orders issued by facilities within the geographic area for which they are responsible.

E.    Facility legal counsel shall represent facilities and facility staff in the resolution of legal issues within the scope of the staffs official duties.

F.    Facility legal counsel shall complete other tasks and assignments as directed by the Chief Legal Counsel.

**IV.   Access to Legal Counsel**

A.    Access to legal counsel may be obtained by telephone, in person or by written memorandum, but in all cases requests for access to legal counsel shall be through the employee's chain of command and the appointing authority.

B.    Nothing in this IMPP shall be construed as affecting, addressing, limiting or interfering with the right of any employee of the Department to request a defense in a civil action pursuant to K.S.A. 75-6108; K.S.A. 75-6116; or K.S.A. 75-4360.



*(handwritten:)* 05-102   EXHIBIT-1

*(handwritten, right margin, vertical:)* DOUBLE SIDED

## KANSAS DEPARTMENT OF CORRECTIONS

| | | | |
|---|---|---|---|
| **DOC** | **INTERNAL MANAGEMENT POLICY AND PROCEDURE** | **SECTION NUMBER** 05-102 | **PAGE NUMBER** 1 of 5 |

**SUBJECT:**

INFORMATION TECHNOLOGY AND RECORDS: Expungement of Offender Records; Reversed/Vacated/Dismissed Conviction(s)

| | |
|---|---|
| **Approved By:** *(signature)* Secretary of Corrections | **Original Date Issued:** 08-15-82 |
| | **Current Amendment Effective:** 06-26-06 |
| | **Replaces Amendment Issued:** 05-21-01 |
| **Reissued By:** *(signature)* Policy & Procedure Coordinator | The substantive content of this IMPP has been reissued as per the appropriate provisions of IMPP 01-101. The only modifications within the reissue of this document concern technical revisions of a non substantive nature. |
| | **Date Reissued:** 07-15-11 |

### POLICY

Orders for Expungement, or Reversing, Dismissing or Vacating an offender's conviction, which meet statutory requirements from courts of competent jurisdiction shall result in the collection of all information contained in the Department of Corrections' offender records pertaining to the conviction specified in the court document. Provisions shall be made to ensure that all information regarding expunged, reversed, vacated, or dismissed convictions are secured separately from any other records related to the offender, accessible only to designated staff. Information regarding such case records shall be released only by the Department's Legal Counsel.

### DEFINITIONS

**Expungement:** An action by a court of competent jurisdiction which sets aside, for limited purposes, a criminal conviction and requires the sealing of arrest, conviction, and confinement records by law enforcement, court, and corrections agencies.

**Facility Records Office:** The records storage area for the facility.

**Inactive Offender Records Repository:** A centralized inactive records section for the Department of Corrections, located at the Topeka Correctional Facility - Central (TCF-C).

**Offender:** A person who is in the legal custody of the Secretary of Corrections. This term refers to both inmates and persons under post-incarceration supervision.

**Parole Records Office:** The records storage area for parole services.

**Records:** Information concerning the offender's criminal, personal, and medical history and behavior and activities while in custody, including but not limited to commitment papers, court orders, detainers personal property receipts, visitors lists, photographs, fingerprints, custody level, disciplinary infractions and actions taken, grievance reports, work assignments, program participation and miscellaneous correspondence. This information may be computerized and contained in the Management Information System, Total Offender Activity Documentation System, Electronic Medical Records System, hard copies, or imaged files of documents contained in various files within a facility, parole office and/or Central Office Records.

**Reversed/Vacated/Dismissed Conviction(s):** An action by a court that removes a conviction from the offender's record.

*(handwritten:)* OMIS - OFFENDER MANAGEMENT INFO. SYSTEM
TOADS - TOTAL OFFENDER ACTIVITY DOCUMENTATION SYSTEM



**I.** Expunged records shall be stored at the State Records Center and made available to only the Records Administrator.

**II.** Processing Court Orders Reversing or Vacating a Sentence   *(handwritten:)* Sept 11, 1991

    **A.** When a Court order reversing or vacating an inmate's sentence is received by the Department or a facility:

        **1.** Appropriate legal counsel shall be provided a copy of the order and shall provide guidance regarding the impact of the order; and,

        **2.** The inmate's file shall be reviewed to determine whether there are detainers or other sentences against the inmate.

    **B.** If the Department has no authority to hold the inmate in custody, the prosecuting attorney in the vacated or reversed case shall be notified and advised that the inmate will be released unless a detainer is filed immediately.

    **C.** If a detainer is received and the Department has no other basis to continue to hold the inmate, local law enforcement shall be requested to take custody of the inmate and hold for the requesting agency.

    **D.** The KDOC Victim Notification Coordinator shall be notified of the inmate's release and the reason for the release, per IMPP 01-121, for a determination if victim notification is applicable.

**III.** Processing of Reversed/Vacated/Dismissed Convictions

    **A.** Upon receipt of a court order reversing, vacating or dismissing a conviction(s) or sentence the following actions shall be taken:

        **1.** Notify the CMI or CCII assigned to the Centralized Sentence Computation Unit that an order has been received and forward a copy of the order.

        **2.** Upon receipt of the order, the Sentence Computation staff shall take the following actions;

            **i.** Verify that the order has been certified and is authentic

            **ii.** Review the order with a member of the Legal staff

            **iii.** Make an electronic copy of the order

            **iv.** Indicate in the automated Sentence Record Summary that the conviction(s), case or sentence has been reversed/dismissed or vacated.

            **v.** Review the sentence for any existing active convictions, cases or sentences.

            **vi.** Notify the Chief Records Administrator or designee at the facility in which the inmate is housed that the sentence has been modified

        **3.** If the inmate is eligible for immediate release, the facility record staff shall initiate standard release procedures including, but not limited to conducting a check for warrants or wants in accordance with IMPP 05-108.

        **4.** If the inmate is on release status, the supervising parole officer shall be notified.

---

**State Records Center:** A centralized inactive records repository for the State of Kansas managed by the Kansas Historical Society and located in Topeka, Kansas.

### PROCEDURES

**I.** Processing of Expungement Orders

    **A.** All actions to enforce the expungement of offender records by Department personnel shall be initiated by the Central Office Records Unit.

        **1.** Expungement orders received directly from the court by facility personnel or field service staff shall be forwarded to the Central Office Records Unit.

    **B.** Upon receipt of an order of expungement, the Central Office Records Unit shall inquire of the KDOC legal counsel as to whether the expungement order meets statutory requirements.

    **C.** If the expungement order is determined to be invalid, the KDOC Chief Legal Counsel shall return it to the court of jurisdiction with an explanation as to why the order was not honored.

        **1.** Only a copy of the explanatory letter of transmittal to the court shall be filed in the offender's file.

    **D.** If the order is determined to be valid, the Central Office Records Unit shall direct the collection of all hard copy records relating to the individual's conviction upon which the expungement order applies.

    **E.** The Central Office Records Unit shall forward a copy of the court order to each facility where the subject of the expungement order was confined, and the inactive offender records repository. The Central Office Records Unit shall also request the retrieval of all files for the subject of the expungement order from the State Records Center.

        **1.** Facility records units shall be responsible for collecting all hard copies of any records or documents not transferred to the inactive offender records repository pertaining to the individual's conviction upon which the expungement order applies.

        **2.** All hard copies pertaining to the individual's conviction shall be sent to the Central Office records clerk.

    **F.** All information maintained in electronic data storage shall be printed to hard copy and placed with other hard copy documents.

        **1.** All information regarding the offender's conviction as specified in the expungement order shall be deleted from the computerized information system.

        **2.** All electronic copies of offender documents stored in the Department's Imaging System will be re-indexed to a secure area of the system and made available to only the Records Administrator.

    **G.** All hard copy records pertaining to the conviction for which the expungement action applies shall be placed in an envelope, which shall bear the following instructions:

        **Expunged: Custodian shall deny the existence of this record to the extent expunged, subject to the provisions of KSA 21-4619.**

    **H.** Staff having questions relating to the disclosure of expunged records shall direct those questions to departmental legal staff.

        **i.** Notify the KDOC Public Information Officer (PIO)

        **ii.** Review KASPER the following business day to ensure that the sentence record information is correctly displayed.

    **A.** When an offender's sentence is terminated because the conviction(s) is/was reversed/vacated/dismissed, all actions to remove the offender's records by Department personnel shall be initiated by the Central Office Records Unit.

        **1.** Court orders received directly from the court by facility personnel or field service staff shall be forwarded to the Central Office Records Unit.

    **B.** The Central Office Records Unit shall direct the collection of all hard copy records relating to the individual's conviction(s) upon which the reversed/vacated/dismissed order applies.

    **C.** The Central Office Records Unit shall forward a copy of the court order to each facility where the subject was confined, the inactive offender records repository, and the State Records Center.

        **1.** Facility records officers shall be responsible for collecting all hard copies of any records or documents not transferred to the inactive offender records repository pertaining to the individual's conviction upon which the order applies.

        **2.** All such hard copies shall be sent to the Central Office Records Unit.

    **D.** All information relating to a reversed/vacated/dismissed conviction maintained in electronic data storage shall continue to be preserved, but shall receive a special "Vacated Sentence" designation.

        **1.** This special designation shall prevent access to or inclusion of reversed/vacated/dismissed conviction information in reports recounting "Active Sentence" information.

        **2.** Convictions labeled with the "Vacated Sentence" designation shall be accessed only through the Sentence Record option within the Department's centralized electronic database.

    **E.** All hard copy records pertaining to the conviction(s) for which the action applies shall be placed in an envelope marked "Reversed/Vacated/Dismissed Conviction."

        **1.** Staff having questions relating to the disclosure of these records shall direct those questions to departmental legal staff.

        **2.** Information pertaining to reverse, vacated and/or dismissed convictions shall be stored at the State Records Center and made available to only the Records Administrator.

    **F.** All records pertaining to the conviction(s) for which the action applies that are resident within the electronic imaging system shall be removed.

**NOTE:** The policy and procedures set forth herein are intended to establish directives and guidelines for staff and offenders and those entities that are contractually bound to adhere to them. They are not intended to establish State created liberty interests for employees or offenders, or an independent duty owed by the Department of Corrections to employees, offenders, or third parties. Similarly, those references to the standards of various accrediting entities as may be contained within this document are included solely to manifest the commonality of purpose and direction as shared by the content of the document and the content of the referenced standards. Any such references within this document neither imply accredited status by a Departmental facility or organizational unit, nor indicate compliance with the standards so cited. The policy

01 - 1040

## KANSAS DEPARTMENT OF CORRECTIONS

| Kansas The Chance at Corrections | **I**NTERNAL **M**ANAGEMENT **P**OLICY AND **P**ROCEDURE | SECTION NUMBER 01-104D | PAGE NUMBER 1 of 3 |
|---|---|---|---|
| | | SUBJECT: ADMINISTRATION: Power of Attorney | |
| Approved By: *Ray Roberts* Secretary of Corrections | | Original Date Issued: **11-03-15** | |
| | | Replaces Version Issued: N/A | |
| | | CURRENT VERSION EFFECTIVE: **11-03-15** | |

| APPLICABILITY: | _ ADULT Operations Only | _ JUVENILE Operations Only | X DEPARTMENT-WIDE |
|---|---|---|---|

### POLICY STATEMENT

By Kansas Administrative Regulations 44-12-209 and 123-12-209 no offender shall enter into any contract or incur any financial obligation without permission of the warden/superintendent.  Offenders have access to notary service by way of IMPP 01-111DD. A properly drafted and notarized power of attorney, the purpose and scope of which has been approved by the warden/superintendent, may be utilized by offenders to authorize those outside the custody and control of the warden/superintendent of the correctional facility to conduct appropriate limited defined business on behalf of the offender.  The offender shall define and limit as much as possible the purpose of the grant of authority and the time frame within which the grant of authority is to remain effective.

### DEFINITIONS

Power of Attorney:  A power of attorney is an instrument in writing by which one person, as principal, appoints another as agent and confers upon such agent the authority to act in the place of the principal for the purposes set forth in the instrument.

Health Care:  For the purpose of this policy, the term health care shall include, but not be limited to, dental, medical and behavioral health care and treatment.

### PROCEDURES

**I.**  **Form of Power of Attorney Document**

    A.    The power of attorney document shall be in a form approved by the warden/superintendent.

    B.    The warden/superintendent shall approve the use of a form (Attachment A) provided by the department of corrections for such purpose, provided the purpose, scope and extent of the grant of authority therein is consistent with the safety and security of the facility, is in the best interest of the offender, is sufficiently defined and is otherwise appropriate.

    C.    Where possible, the offender should include in the document an ending date on the grant of the power of attorney to another.

**II.**  **Duties of the Warden/Superintendent and Staff**

    A.    The warden/superintendent shall designate a staff member to review and investigate as appropriate all power of attorney forms referred by staff notaries and unit team members to determine if permitting the offender to sign, notarize and send out the completed power of attorney is consistent with the above policy.

---

EX 4 I B I T - 1

    B.    The warden/superintendent has the discretion to approve the power of attorney as drafted, to provide suggested changes to permit the approval of the power of attorney or to refuse to permit the power of attorney to be notarized if it is in violation of this policy.

    C.    All staff, including notaries public and unit team, shall send to the person designated by the warden/superintendent all power of attorney documents submitted to them for notarization.  That designee shall determine initially whether the offender appears to be using the power of attorney for purposes that are consistent with the safety and security of the facility, is in the best interest of the offender, are sufficiently defined and are otherwise appropriate.

    D.    If the designee reviewing the power of attorney document is uncertain whether the offender appears to be using the power of attorney document for purposes that are consistent with the safety and security of the facility, are in the best interest of the offender, are sufficiently defined and are otherwise appropriate, the document should be returned to the offender with an explanation of what, if anything, can be done to make the instrument compliant with the facility's concerns.

    E.    If the designee reviewing the power of attorney document submitted by the offender has a concern over whether the offender is able to understand what the offender is doing by granting the power of attorney to another or if it appears the offender is being coerced into making such a grant, a narrative report should be prepared and should be forwarded, with the power of attorney document, to the Enforcement, Apprehensions and Investigations section of the facility for further investigation.

    F.    If the designee reviewing the power of attorney document submitted by the offender is satisfied that the offender appears to be using the power of attorney document for purposes that are inconsistent with the safety and security of the facility or are otherwise inappropriate, a narrative report should be prepared and should be forwarded, with the power of attorney document, to the Enforcement, Apprehensions and Investigations section of the facility for further investigation.

**III.**  **Subject Matter of the Power of Attorney**

    A.    Subject to the above qualifications and limitations, the offender may authorize certain powers to make decisions regarding that offender's personal and business affairs to another person who is not incarcerated.

    B.    Nothing in this policy gives the person appointed as agent in the power of attorney form by the offender any unilateral or conclusive authority to act as to matters located within the scope of the business of the Department of Corrections.

        1.    Such matters include, but are not limited to, the offender's health care, trust account, obligations owed to the Department of Corrections by the offender, actions the Department of Corrections is empowered by law to enforce against the offender, the disciplinary process, the grievance process or any process seeking the production of documents and things.

    C.    A warden/superintendent may choose to neither accept such a power of attorney nor to rely upon its terms as to any offender grantor who is mentally competent at the time of the proposed request, action, or decision by the appointed agent.

        1.    If an offender is mentally competent, the warden/superintendent need not deal with the agent appointed by the offender in the power-of-attorney document.

        2.    Even if the offender is mentally incompetent, the warden/superintendent may nonetheless require formal appointment by a court of a guardian of the offender's person and/or conservator of the offender's estate (property), rather than accept the power-of-attorney.

NOTE: The policy and procedures set forth herein are intended to establish directives and guidelines for staff and offenders and those entities that are contractually bound to adhere to them.  They are not intended to establish

---

State created liberty interests for employees or offenders, or an independent duty owed by the Department of Corrections to employees, offenders, or third parties.  Similarly, those references to the standards of various accrediting entities as may be contained within this document are included solely to manifest the commonality of purpose and direction as shared by the content of the document and the content of the referenced standards.  Any such references within this document neither imply accredited status by a Departmental facility or organizational unit, nor indicate compliance with the standards so cited. The policy and procedures contained within this document are intended to be compliant with all applicable statutes and/or regulatory requirements of the Federal Government and the state of Kansas. This policy and procedure is not intended to establish or create new constitutional rights or to enlarge or expand upon existing constitutional rights or duties.

### REPORTS REQUIRED

None.

### REFERENCES

K.A.R. 44-12-209, 123-12-209
IMPP 01-110

### ATTACHMENTS

| Attachment | Title of Attachment | Page Total |
|---|---|---|
| A | Power of Attorney | 1 page |

---

### POWER OF ATTORNEY

**KNOW ALL MEN BY THESE PRESENTS:**

That I, RONNIE A. BELLAMY JR., resident of LEAVENWORTH County, Kansas, do hereby appoint RONNIE A. BELLAMY JR. whose address is P.O. BOX 2 LANSING KANSAS 66043 , as my Attorney-In-Fact, to act for me in my name and stead as hereinafter set forth:

IN ALL MATTERS LEGAL AND DOMESTIC

_____

I hereby declare that this Power of Attorney shall be and remain in full force and effect until ALWAYS . If no such date of termination is specified, then this Power of Attorney shall remain in full force and effect until such time as such powers are later revoked by me in a writing that is delivered to the warden/superintendent of the facility in which I am then assigned, or if I have been released, to my supervising parole/conditional release officer.

On my own behalf as well as that of my estate or heirs-at-law, I do hereby release the State of Kansas, Kansas Department of Corrections, their officers, employees, agents, assigns, and heirs-at-law from any liability for any and all claims attaching to their reliance upon the contents of this form, unless and until I duly revoke it in writing delivered as stated above. OR THEY VIOLATE MY RIGHTS OR LAWS

IN WITNESS WHEREOF, I have hereunto set my hand this 25 day of JANUARY (month), 2023 (year).

_____
SIGNATURE

SUBSCRIBED AND SWORN TO before me this 25 day of JANUARY (month), 2023 (year).

_____
NOTARY PUBLIC

My Commission Expires: _____

DOUBLE SIDED

EXHIBIT-1

AI 238

Page 1 of 2, Attachment A, IMPP 01-118D
Effective 12-21-21

## PROPERTY DAMAGE/LOSS OR PERSONAL INJURY CLAIM FORM

| Section I |
|---|

| Filed **AT** Facility No.: | 01 | Facility Initials: | LCF |
|---|---|---|---|
| Filed **AGAINST** Facility No.: | 01 | Facility Initials: | LCF |

(Refer to PLC coding manual for facility no. & initials)

| Name of Claimant (Last, First, MI): BELLAMY RONNIE A. | KDOC Number 53454 |
|---|---|

| Type of Claim (circle one) | (Lost Property) ? | (Damaged Property) ? | Injury |
|---|---|---|---|

Amount of Claim: $ 1,000.00  Date of Loss Damage, or Injury (MO/DAY/YR): 9-29-2022, 10-7-2022

Where Loss, Damage, or Injury Occurred:

If occurred in cellhouse, enter cellhouse/room number: A-7-239, A-7-239 - PROPERTY ?

Otherwise, circle one of the following:
Mailroom 9-29-2022  R&D 10-7-2022  (Central Property)
Laundry  Gym  Dining Room
(Other Location)

NATURE OF CLAIM (Set forth detailed facts, including date of loss, damage or injury, how it occurred, place of occurrence, how you claim institution or employee was negligent, and amount of the claim.): SEE ATTACHED, AS PROOF I WAS TOLD TO FILE THIS A-1-FAP by CSI KINCAID, WHO REFUSED TO ACCEPT MY DOUBLE CLAIM - PROPERTY - INJURY SUBMISSION. I FILED AS QUICKLY AS I COULD PUT IT TOGETHER DUE TO MULTIPLE HEAD INJURIES - TRAUMA, SUSTAINED IN UNPROVOKED ASSAULTS - ATTACKS. THE OFFICERS IN TRU-UNIT & UT'S HAVE A HABIT OF USING INMATES TO HELP PACK & MOVE OTHER INMATES PROPERTY, VALUABLES. CSI WAGONER ALREADY CONSPIRED TO HELP INMATE FELLERS ATTEMPT TO MURDER ME ON 9-29-2022 SEE VIDEO - P.R. DISPOSITION ETC....

I am aware that presenting a false claim may result in penalties (under K.S.A. 75-7501 et seq., K.A.R. 44-12-101 et seq., etc.), and I declare (or verify, certify or state) that the foregoing is true and correct to the best of my knowledge, understanding, and belief.

Claimant Signature: RONNIE ALLEN BELLAMY Jr.  Date: 11-15-2022

| Received from Resident/Claimant: | Date: 11/15/22 Time: 3PM | |
|---|---|---|
| UT Name (print): UTS R. Hall | UT Signature: UTS R. Hall | Claimant Initials: R.B. |

| Section II |
|---|

Received by Warden/Superintendent on (MO/DAY/YR): NOV 16 2022 Facility Log No. Assigned: AA115653

Inquiry Report:

RECEIVED

DEC 02 2022

DOC Facility Management Area

See attached

| Date (MO/DAY/YR): 11/29/22 | Investigator Name (print): CSI Kincaid | UT Member or Investigator Signature: CSI Kincaid |
|---|---|---|

| Section III |
|---|

A1 238

# MEMO



## Kansas
### Department of Corrections
*Lansing Correctional Facility*

EXHIBIT — 1

**DATE:** 11/09/2022

**TO:** Bellamy, Ronnie # 53454

**FROM:** CSI Kincaid / Grievance officer

**SUBJECT:** Property Claim

I am returning your property claim to you unanswered. Per **KAR 44-16-104 a : Each inmate claim for personal injury shall be submitted to the facility and secretary of corrections with in 10 calendar days of the claimed personal injury.**

Because your injury was claimed on 9/29/2022 as well as 10/07/2022 and not filed on 11/08/2022, which is well past the 10 days to claim an injury your claim is being returned to you.

No further action deemed necessary.

Please resubmit the property loss for the missing property.  I cannot process this as both ASAP .

DOUBLE SIDED
EXHIBIT-1

## PROPERTY DAMAGE/LOSS OR PERSONAL INJURY CLAIM FORM

| Section I |
| --- |

**URGENT**

| Filed **AT** Facility No.: | Facility Initials: |
| --- | --- |
| Filed **AGAINST** Facility No.: | Facility Initials: |

(Refer to PLC coding manual for facility no. & initials)

Name of Claimant (Last, First, MI): **BELLAMY RONNIE A.**     KDOC Number **53454**

Type of Claim (circle one) : (Lost Property)    Damaged Property    (Injury)

Amount of Claim: **$700.00**    Date of Loss Damage, or Injury (MO/DAY/YR): **10-7-2022**

Where Loss, Damage, or Injury Occurred:

If occurred in cellhouse, enter cellhouse/room number: **A-7-239, A-7-234**

Otherwise, circle one of the following:    Mailroom    R&D    (Central Property) ← CELL HOUSE ?

**SELF FILED #5779**    Laundry    (Other Location) — outside Chowhall    Gym    Dining Room
The Unit Med Line

NATURE OF CLAIM (Set forth detailed facts, including date of loss, damage or injury, how it occurred, place of occurrence, how you claim institution or employee was negligent, and amount of the claim.): ON 9-29-2022, AFTER COII WAGNER THE REGULAR 4-day a week officer opened my door, So INMATE FELLERS #6003290 Could STAB me while most of the Cell House STOOD AND WATCHED-Obviously ANTICIPATING THIS EVENT See ALL AVAILABLE VIDEO-AUDEO-PHONE-Complexies-Commentary-D.R:S-Statements-Seg Reports, Reviews, AND THEN ON 10-7-2022 SST members attacked me AND Tackled me while Another Inmate FREY #124913, was BEATING me IN THE HEAD FROM BEHIND WITH A WEAPON, AND WHEN I Found HIM I was THE ONE BLEEDING PROFUSELY- AND THE ONE SST BUSTY TACKLED LEAVING me EVEN MORE DEFENSELESS- TRYING to RECOVER- MY EAR HAD TO BE REATTACHED, I HAS MULTIPLE STAPLES AND SUTURES IN my HEAD, RIGHT, EAR, See VIDEO, ALSO I Am WRITING THE FOLLOWING PROPERTY AS WELL IT HAS TAKEN me

I am aware that presenting a false claim may result in penalties (under K.S.A. 75-7501 et seq., K.A.R. 44-12-101 et seq., etc.), and I declare (or verify, certify or state) that the foregoing is true and correct to the best of my knowledge, understanding, and belief. See ATTACHED ALSO

Claimant Signature: _Ron Bellamy_ RONNIE ALLEN BELLAMY JR. 53454    | Date: **11-8-2022**

| Received from Resident/Claimant: | Date: 11/8/22    Time: 11AM |
| --- | --- |
| UT Name (print): **UTS R. Hall**    UT Signature: **UTS R. Hall** | Claimant Initials: **RB** |

| Section II |
| --- |

Received by Warden/Superintendent on (MO/DAY/YR):    | Facility Log No. Assigned:

Inquiry Report:

Date (MO/DAY/YR):    | Investigator Name (print):    | UT Member or Investigator Signature:

| Section III |
| --- |

PERSONAL INJURY CLAIM - PROPERTY CLAIM CONTINUED

EXHIBIT - 1

THIS LONG TO PUT THIS TOGETHER DUE TO MY MENTAL HEALTH ISSUES - DIAGNOSES, THAT ALL STEM FROM MY INJURIES AND THE REPEATED HEAD TRAUMA SUSTAINED FROM BEING ATTACKED IN MY SLEEP BY A FORCED DOUBLE CELL SITUATION IN WHICH A.J. KIDD, ALMOST KILLED ME IN MY SLEEP SEE VIDEO-AUDIO-PHONE COMPUTERS AS HE WAS PROSPECTING FOR AN A.B. PATCH-SECURITY THREAT GROUP UNBEKNOWNST TO ME AT TIME, STABBING ME IN THE TEMPLE HITTING ME IN THE BRAIN, STABBING ME IN THE THROAT SHOULDER, CUTTING MY FOREARM IN HALF, MY LEG ALL ON MY RIGHT SIDE WHILE SLEEPING, AND THE OFFICERS WATCHED AND DID NOTHING. I RECENTLY HAD A SEVERE CONCUSSION FROM BEING ATTACKED FROM BEHIND LEAVING ME UNABLE TO WALK PROPERLY OR STAND UP - THROWING UP AND WAS THROWN IN A CRISIS STRIP CELL AND LEFT UNATTENDED FOR DAYS SEE VIDEO. AND THEN TWO SEPERATE ATTACKS WITHIN A WEEK SEE VIDEO, AND WHILE THE CONTINUOUS THREAT OF BEING DOUBLE-BUNKED AGAINST MY WILL (EVEN THOUGH MY BHP, SAYS "IT WILL NEVER HAPPEN I MADE SURE OF IT" IT'S IN THE COMPUTER) ALL SPEAR HEADED BY UTM PARKS, WHO DOES NOT LIKE ME, BECAUSE HE LIED TO ME AND I CALLED HIM ON IT. AND SAID GO FUCK YOURSELF YOU LYING PIECE OF SHIT. HE HAS TARGETED ME EVER SINCE THEN ILLEGALY UNLAWFULLY - UNCONSTITUTIONALLY. AND I KEEP THINKING ABOUT THE MAN WHO WOKE UP TO HIS CELLMATE LITERALLY EATING HIS BODY PARTS - PARTS OF HIM. CAN YOU IMAGINE THIS? NOT TO MENTION THE SEXUAL ASSAULT BY CSI GADBERRY !! UPON MY RETURN FROM THE HOSPITAL WITNESSED ON VIDEO - AND BY SGT O'BRIEN - SGT HOLCOMBE, I AM NOT OKAY WITH THE KIOC AS I SHOULD NOT BE HERE SEE JOURNAL ENTRIES - KIOC REFUSES TO ALLOW ME TO HAVE. AND I WANT MY PROPERTY ALL OF IT I AM LEVEL EXEMPT - RESTRICTION EXEMPT BY LAW - NOT RULES PLEASE HELP ME WITH AND ADDRESS NOT THESE ISSUES. IN MY

#53454

MISSING PROPERTY          I HAVE ALL OF MY
BELLAMY #53454            PROPERTY RECEIPTS - Canteen
                                                    EXP-RECEIPTS
SWINTEC TYPEWRITER  NEW GREAT CONDITION

                                                         D
                                                      BEFORE
13' TV GREAT CONDITION          EXHIBIT - 1

HOT POT  GREAT CONDITION  W/ STRAINER

1-pr ADIDDAS  LIKE NEW GREAT CONDITION I WAS WASHING
                THE INSOLES - THEY WERE WET

1-pr Reebok  Sneaker Shoes  LIKE NEW

WATCH - broken band  GOOD working order

3- TV Cables - 2-NEW -w/ Gold Connector From Canteen
                                                Bought Blank

MISSING SOME LEGAL WORK - DOCUMENTS - ATTACHMENTS

1 HEADPHONE EXT W/ TV

1 - REMOTE W/ BATTERIES - NEW

1- MIRROR      NEW    8 - Floss Singles
                      5 - Stamps

1- Open P.G. Cookies / 2-BOXED Buddy BARS / 3-Folgers
1- Toothbrushes              1- Salt Shaker    1- Unopened
3-TOOTHBRUSHES              1- Pepper Shaker   2- Open
1- Jug PUREX Laundry soap   2-pr Tweezers
2-New Cups                  1- 1/3 large bottle elmer glue
1- coffee Cup               2- bottles baby oil
1- Floss PIX                4- Thumbs - top - bottoms
1-bottle Lemon Juice        1- Red Ball Cap  Clothing
38 - NEW RAZORS Single blades  1-

# MEMO

**Kansas**

Department of Corrections

*Lansing Correctional Facility*

AD ASTRA PER ASPERA

*EXHIBIT - 1*

**DATE:**   11/29/2022

**TO:**   Bellamy, Ronnie # 53454

**FROM:**   CSI Kincaid Grievance Officer

**SUBJECT:**   Property Claim # AA0115653

---

**Findings of Facts:**   Bellamy # 53454 is claiming that he is missing the following items from a pack out 10/07/2022:  typewriter, 13 tv, hotpot, adidas tennis shoes, shower shoes, watch, 3 coax cables, headphone extension, remote, mirror, open pb cookies, 3 toothbrushes, Purex laundry soap, 2 cups, 1 coffee cup, 1 floss picks, 1bottle lemon juice, 5 AAA batteries, 1 saltshaker, tweezers, bottle of glue, baby oil.

**Conclusion Made:**  I have investigated this property claim and found the following.

I reviewed applicable cameras and found the officers pulled and packed the property according to policy.  Most of the claimed missing items are stored in property awaiting offender Bellamy's removal from restrictive housing or restrictive review board authorizes him to receive them.  Upon further investigation I found that offender Bellamy has not been in possession of a typewriter in last few pack outs.  Since I found no staff negligence and the offender offered no evidence of staff negligence, I am recommending this claim be denied.

**Recommendation:** Based on the information I received I am recommending that the claim be denied.

A7 239

# MEMO

**Kansas**
Department of Corrections
*Lansing Correctional Facility*

*EXHIBIT – 1*
*DOUBLE SIDED*

**DATE:**   5/26/2022
**TO:**   Bellemy, Ronnie # 53454
**FROM:**   James Skidmore, Deputy Warden of Operations

**SUBJECT:**   Grievance

---

**Finding of the Facts**: Your grievance was received and an investigation into your allegations has been completed.

**Conclusion:** You are not allowed to grieve the Classification decision making process per **KAR 44-15-101.**

**KAR 44-15-101 (a)(d)(2) states "the grievance procedure shall not be used in any way as a substitute for, or as part of, the inmate disciplinary procedure, the classification decision making process, the property loss or personal injury claims procedure, or the procedure for censorship of publications specified in the secretary's internal management policy and procedure."**

Your grievance is being returned to you for failure to follow the grievance procedure as outlined in **KAR 44-15-102**.

You must first seek out "Informal Resolution" with your Unit Team Manager, UTM Wagner. A written form-9 response must be attached to any submitted grievance or the receipt of the Form 9 if you have not received a response within the 10 day timeline.

**44-15-102. Procedure**
**(a)**     **Grievance step one:  preliminary requirement; informal resolution and problem solving at unit team level.**
**(1)**     **Each inmate shall first seek information, advice, or help on any matter from the inmate's unit team, or from a member of the team.  If unable to solve the problem, the unit team shall refer the inmate to the proper office or department.**

The grievance procedure requires you to attach documentation of attempts at informal resolution prior to filing a formal grievance (i.e. Form -9s, or other correspondence and response from staff member.)

# KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE FORM

## INMATE COMPLAINT

Inmate's Name _Ronnie Allen Bellamy Jr._   EXHIBIT—1   Number _53454_

Facility _L.C.F._   Housing Unit _A-1-238_   Work Detail _TRU-UNIT MH_

PER K.A.R. 44-15-101 (e) Copies K.S.A. 75-5210 - K.S.A. 75-5251 - K.A.R. 44-15-101.(g)(c)
K.A.R. 44-15-101a.(a)(1)(A)(B)

**NATURE OF COMPLAINT** BE SPECIFIC. (Include names, dates, places, rules, regulation, etc.; how you have been affected and action you believe the Warden should take.) Use additional paper if necessary. ATTACH DOCUMENTATION OF ATTEMPTS AT INFORMAL RESOLUTION PRIOR TO FILING THIS FORMAL GRIEVANCE (i.e. Form 9s or other correspondence and response from staff member). PER THE RESPONSE FROM THE F-9 RESPONSE HANDED BY WAY OF BLUE STAMP RECEIVED 1-5-2023 WARDENS OFFICE AND RESPONDED TO BY CSI KENDALES. THERE WAS NO MENTION OF CONTACTING THE PROSECUTOR ATTORNEY FOR LEAVENWORTH COUNTY LIKE I REQUESTED TO FILE CHARGES ON THE ATTEMPTED MURDER OF ME X5 TO INCLUDE OFFICERS JAMES ENGLIS - LARRY E-WAGNER - WITH ANDREW PARKS WHO ALL AIDED IN THE ATTACK OF ME AT KNIFEPOINT BY INMATE FELLERS #6003270. BY UNLAWFUL ORDERS AND OPENING MY DOOR KNOWING I LIVE ALONE AND WAS IN THERE AS THE WHOLE CELL HOUSE WATCHED IN ANTICIPATION OBVIOUS AND WITNESSED BY IN HOUSE CAMERAS AS MY CURTAIN WAS UP I WAS SHAVING MY BODY AS USUAL ONCE A WEEK THE OFFICERS KNOW ME AND WATCH ME CONSTANTLY AND HAVE FOR YEARS. YOU CAN NOT REFUSE TO FOLLOW THE LAW AND CALL THE PROSECUTION ATTORNEY TO REFUSE TO IS PARTICIPATING IN THE DELIBERATE ACTS SEE ATTACHED

Date this report was given to Unit Team for informal resolution (to be completed by inmate). _1-8-2023  2-pgs_

## UNIT TEAM RESPONSE (Complete and return to inmate within 10 calendar days.)

REFUSED TO RESPOND AND CALL THE PROSECUTING ATTORNEY AS REQUESTED MULTIPLE TIMES DELIVERED BY UNIT TEAM MR. MERIDETH

Unit Team Signature _____  Date _____

## INMATE RESPONSE (Complete and return to Unit Team within 3 calendar days)

_____ I am satisfied with the Unit Team response and wish to withdraw my formal grievance.

_____ I am not satisfied with the Unit Team response, and wish to forward to the Warden's office. (This must be done within 3 calendar days.) Date forwarded to Warden's Office (to be completed by staff). _____

_Ronnie Allen Bellamy Jr #53454_   _1-12-2023_
Inmate Signature   Date

## `WARDEN RESPONSE (Complete, attach response and return within 10 Working days.)

Date Received _____   Date of Final Answer _____   Date Returned to Inmate _____

_____   _____
Inmate's Signature            Date   Unit Team Signature            Date

If dissatisfied with this response, the inmate may appeal to the Secretary of Corrections within three (3) calendar days of receipt of this decision from the Warden.

## TO BE COMPLETED BY STAFF ONLY

Grievance Serial Number   _____  _____

Type of Complaint (Item 4: Code 01-75)   _____  _____

Cause of Complaint (Item 5: Code 01-30)   _____  _____

Type of Response (Item 6a: Code 01,02,08 or 09)   _____  _____

_Left margin (vertical):_ INVOKING 44-15-101 (b) IF AN EMERGENCY EXISTS AND A RESOLUTION CAN NOT BE OBTAINED BY GOING TO LET THE INMATE MAY GO DIRECTLY INTO THE GRIEVANCE PROCESS 44-15-104 KANSAS ADMINISTRATIVE REGULATIONS

_Right margin (vertical):_ INVOKING K.A.R. 44-15-101(b)(d)(e) QUICK RESOLUTION (b) INVOKE MH ISSUES K.A.R. 44-15-105, RECORDS PRESERVE FOR COURT - MH EXHIBIT 3/4 44 (e) SUPPORTING DUPLICATES - MATERIAL K.A.R. 44-15-101a.(c)(d)(1)(A)(B)(e)(c)(5) COPY OF EACH RESPONSE AT EACH LEVEL

PG 1 OF 2          EXHIBIT-L

UNDER THE COLOR OF LAW AND ALL STAFF BY LAW ARE MANDATORY
REPORTERS AND HAVE TO REPORT ALL VIOLATIONS AND OR ALLEGATIONS. THE VIDEO
WAS WITNESSED BY D.R. OFFICER THEN CHRISTOPHER HUNT WHO FOUND ME NOT GUILTY
OF BOGUS D.R. FIGHTING IN AN ATTEMPT TO COVER UP KDOC LIABILITY-RESPONSIBILITY
AND CONSPIRACY TO HELP HARM ME BY WAY OF MULTIPLE ATTACKS - LACK OF PROPER
MEDICAL CARE-TREATMENT-IMPROPER HOUSING AS A MENTAL PATIENT DUE TO
FIRST ATTACK AND TWO MORE SEVERE HEAD INJURIES - CONCUSSIONS. TO INCLUDE
THE FOLLOWING NAMES AND UNKNOWN NAMES DIRECTLY A PART OF ALL ATTACKS.
A. J. KIDD IN E-D.CF. B-1-210 UNPROVOKED WHILE ASLEEP ALMOST MURDERING ME
AND THE CAUSE OF MY MENTAL DISORDERS NOW IMPROPER MEDICAL CARE- TO INCLUDE
WESLEY MEDICAL CENTER - SUSAN B. ALLEN, AMBULANCE SERVICE ALL WITNESSED BY VIDEO
IN B-1-CELLHOUSE NO MEDICAL HELP AT ALL- ONLY OFFICERS-VIDEO-AMBULANCE
SERVICES - WESLEY MEDICAL CENTER - WHERE KDOC SST O'BRIEN -HOLCOMBE VIDEO'D
THE ENTIRE STORY AND EVENTS BY HANDHELD CELLPHONES AND CAMERA'S IN TRAUMA
ROOM SEE BODY OF COMPLAINT (ORIGINAL & AMENDED) 5:20-CV-03229-SAC BELLAMY V.CLINE ET. AL, AND HERE AT
L.C.F. INMATES THOMAS MOORE ADX 10-12-2021 AFTER EVENING MEAL LINE ATTACKED ME IN A-
BLOG HALL WITH KNIFE STG MEMBER A.B.--ASATRUS, 5-18-2022 INMATE CARILLO# ATTACKED
ME-PLAINTIFF, FROM BEHIND WITH WEAPON INTENDED TO KILL RENDERING ME UNCONSCIENCE AND NOT
KNOWING WHAT HAPPENED UNTIL TOLD. MOVED BY SST AFTER REGAINING CONSCIENCENS FOR
SECOND TIME WITH NO MEDICAL ASSISTANCE AND NOT KNOWING THAT WAS THE SECOND TIME
I LOST CONSCIENCENS FORCED TO WALK AND BE DRUG BETWEEN TWO SST OFFICERS WHO
APPARENTLY FOLLOWED ME AND WATCHED UNBEKNOWNST TO ME- HE WAS HIRED BY INMATES
LOPEZ AND FRANCISCO HERNANDEZ FOR A CHAPSTICK CAP OF METH BY WAY OF AND FOR
CHAPMAN AND THE A.B.'S AND LELAND DIXON WAS DIRECTLY INVOLVED- LAVELLE LEE-
YOSHI- BRADSHAW, AND ON 9-29-2022 INMATE FELLERS# 6003290., ATTACKED ME BY KNIFE
POINT - DUE TO HIM-HELMS HIS CELLIE-LELAND DIXON-REEDE MCCLELLAND STEALING THE DOPE
AND REDDLE STEALING WHAT HE COULD TO PAY HIS DEBTS AS HE WAS PROMISED SOME THE

EXHIBIT-1

DOPE BECAUSE THEY WERE USING HIS COMBINATION LOCK. THE DRUGS BELONGED TO DAN KENNAPEN G.D. KNOWN AS DOUGH POPPA - ALLOWED BY KDOC TO SELL LARGE AMOUNTS OF METHAMPHETAMINE - K2 - DEUCE - WEED - PHONES - UNCHECKED FOR YEARS NOW. UTILIZING STAFF AND OTHER INMATES TO SET PEOPLE UP AND DO HITS AND TO HOLD HIS PRODUCTS. I'VE NEVER HAD ANY BUSINESS DEALS WITH HIM EVER IN ANY WAY. THIS IS A TRUE STATEMENT - AFFIDAVIT BY RONNIE ALLEN BELLAMY JR. A SINGLE CELL RESIDENT ALWAYS BY LAW TRU UNIT MENTAL HEALTH - AND MOST RECENTLY ON 10-7-2022 AFTER A SEVERE CONCUSSION ON 5-18-2022 THAT LEFT ME UNABLE TO STAND UP OR WALK PROPERLY FOR OVER APPX 19-DAYS I WAS THROWN IN A STRIP-CRISIS CELL AND LEFT UNATTENDED WITH A DIAGNOSIS OF SERIOUS CONCUSSION UNABLE TO STAY AWAKE - THROWING UP WHEN I WOKE UP TRYING TO EAT TO GAIN ENERGY SEE VIDEO. ON 10-17-2022 OUTSIDE OTTAW HALL AT MAILBOX DURING LUNCH MEAL LINE I PLAINTIFF WAS ATTACKED FROM BEHIND WITH A WEAPON MEANT TO KILL ME BY INMATE FREY #124713 WHO WAS HIRED TO DO SO AS INMATE BRADSHAW THE DINING ROOM PORTER CAME OUT TO WATCH AND SO DID DOUGH POPPA UP FRONT AND INMATE LANDS AND NORTH - UNUSUAL INSTEAD OF AT CHOW WATCHING THAT SECTION OF STREET INSTEAD OF EATING. FREY A REGULAR GEN POP INMATE NOT FROM TRU-UNIT ALSO AFFILIATED WITH ASATRU'S - A.B.'S AS HE ATTACKED FROM BEHIND SGT LOOKED ON AND WAITED WHEN I FOUND MY ATTACKER I WENT TO DEFEND MYSELF AS I WAS BEING ATTACKED AND SGT BUSBY TOOK ME DOWN FROM THE SIDE BY TACKLING ME WITH BLOOD POURING OUT OF MY HEAD AND EAR FROM BEING SPLIT LEAVING MY ATTACKER TO KEEP HARMING ME UNCHECKED MY EAR WAS REATTACHED AND I RECEIVED STAPLES AND STITCHES. NO PAIN MEDS - - NO INFIRMARY - NO HOSPITALIZATION - JUST THROWN IN SEG AND THREATENED WITH DOUBLE BUNKING REPEATEDLY SEE VIDEO- COMPOUND AND CLINIC AS STG MEMBERS G.D'S WALKED THE HALL AND PLANNED ANOTHER ATTACK BASED OFF OF LIES FROM LELAND DIXON - JOHN HELMS - FELLERS - DOUGH POPPA - PEIRCE MCCLELLANS - OIC LARRY E. WAGNER - OIC JAMES ENGLES WHO LIED AND SHOWED VIDEO PARTIALS TO HELMS-FELLERS - DIXON AND WTM ANDREW PARKS HELPING LEAD TO LIES AND ASSISTING IN ATTACK AND UNLAWFUL ORDERS TO OPEN DOOR FOR FELLERS TO KILL ME PLACING ME IN THE LAST CELL OR IN BACK STRATEGICLY EVERYWHERE I GO! SEE ALL VIDEO!

SWORN STATEMENT UNDER PENALTY OF PERJURY AND I REQUEST PER IMPP 12-116 D POLYGRAPH EXAMINATIONS OF OFFENDERS AND AM WILLING TO TAKE ONE TO PROVE WHAT I HAVE CLAIMED AND WHAT HAS HAPPENED AS FACTS.

/S/ [signature] #53454
RONNIE ALLEN BELLAMY JR.

INVOKING K.A.R. 44-15-101
(e) COPIES
(F) SIGNATURES REQUIT-
(g) COPY-
K.S.A. 75-5210

44-15-104

DO NOT WRITE BELOW THIS LINE

6/9/20-Current

**Assessment/Diagnosis**

Behavioral Health Diagnosis

| # | Dx (Code), Status, Side, Site | Impression/Differential Dx |
|---|---|---|
| 1 | Delusional disorder (F22) | |
| 2 | Unspecified Personality Disorder (F60.9) | |

7/10/19

**Assessment/Diagnosis**

Behavioral Health Diagnosis

| # | Dx (Code), Status, Side, Site | Impression/Differential Dx |
|---|---|---|
| 1 | Personality disorder, unspecified (F60.9) | |
| 2 | Adjustment disorder with anxiety (F43.22) | |

MENTAL HEALTH CARE IS SUBJECT TO THE SAME CONSTITUTIONAL STANDARDS AS OTHER
FORMS OF PRISON MEDICAL CARE;DELIBERATE INDIFFERENCE TO SERIOUS MENTAL HEALTH
NEEDS VIOLATES THE 8TH AMENDMENT.
GATES V.COOK,376 F.3d 323,343 (5TH CIR.2004)
DOLIHITE V.MAUGHON BY AND THROUGH VIDEON,74 F. 3d 1027,1042-43(11TH CIR.1996)
SMITH V.JENKINS,919 F.2d 90,92-93 (8TH CIR.1990)
LANGLEY V.COUGHLIN,888 F.2d 252,254 (2D CIR.1989)

COURTS HAVE CITED AN EXPERTS DEFINITION OF A SERIOUS MENTAL ILLNESS AS ONE THAT
HAS CAUSED SIGNIFICANT DISRUPTION IN AN INMATES EVERYDAY LIFE AND WHICH PREVENTS
HIS FUNCTIONING IN THE GENERAL POPULATION WITHOUT DISTURBING OR ENDANGERING
OTHERS OR HIMSELF...ACUTE OR SERIOUS DEPRESSION CONSTITUTES A SERIOUS MEDICAL
NEED,AS ARE THREATS OR RISKS OF SUICIDE.COURTS INADDITION HAVE HELD OR ASSUMED
THAT MANIC-DEPRESSIVE,BI-POLAR,EXCESSIVE COMPULSIVE DISORDERS,POST TRAUMATIC
STRESS DISORDERS ARE SERIOUS NEEDS.

TILLERY V.OWENS F.SUPP. 1256,1286 (W.D.PA.1989);aff'd,907 F.2d 418(3D CIR.1990)
PARTEE V.LANE,528 F.SUPP.1254,1261 (N.D.ILL.1981)
PETERKIN V.JEFFES,661 F.SUPP.895,917 923 (E.D.PA.1987)
CONN.V.CITY OF RENO,572 f.3d 1047,1055 (9TH CIR.2009)

MULTIPLE COURTS HAVE FOUND THE CONFINEMENT OF MENTALLY ILL PRISONERS IN SEGRE-
GATION TO BE UNCONSTITUTIONAL,NOT JUST IN ITS EFFECTS ON THOSE PRISONERS,BUT
ALSO INSOFAR AS IT EXPOSES OTHER INMATES TO DANGEROUS OR DERANGED BEHAVIOR.
EXTREMES OF ISOLATION,IN THE FORM OF SOLITARY CONFINEMENT BEHIND SOLID OR
BOXCAR DOORS,HAVE BEEN HELD UNCOSTITUIONAL.

HOPTOWIT V.RAY,682 F.2d 1237,1257-58 (9TH CIR.1982)
LAMAIRE V.MAASS,745 F.SUPP. 623,636 (D.OR.1990)
GATES V.COOK,376 F.3d 323,342-43 (5TH CIR. 2004)
CORTES-QUINONES V.JIMINEZ-NETTLESHIP,842 F.2d 556,560-61 (1ST CIR.1988)

*EXHIBIT-1*

## KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE FORM

### INMATE COMPLAINT

Inmate's Name _RONNIE ALLEN BELLAMY JR_   Number _53454_

Facility _LCF - CORE CIVIC_   Housing Unit _INFIRMARY_   Work Detail _____

_CARILLO ATTACK_

**NATURE OF COMPLAINT** BE SPECIFIC. (Include names, dates, places, rules, regulation, etc.; how you have been affected and action you believe the Warden should take.) Use additional paper if necessary. ATTACH DOCUMENTATION OF ATTEMPTS AT INFORMAL RESOLUTION PRIOR TO FILING THIS FORMAL GRIEVANCE (i.e. Form 9s or other correspondence and response from staff member.) _I WAS APPARENTLY ATTACKED_ _FROM BEHIND AND HAVE INJURIES INCLUDING A CONCUSSION TO GO ALONGWITH THE ALREADY SEVERE HEAD TRAUMA SUFFERED FROM A PREVIOUS ATTACK ALMOST KILLING ME- I WAS NEVER TAKEN TO THE HOSPITAL. AND I AM BEEING PUNISHED AND COURT ACCESS IMPEDED BY NOT BEEING ALLOWED TO HAVE MY PERSONAL PROPERTY - LEGAL WORK - TV - TYPEWRITER - MP3 BIBLE HOT POT - HYGIENE - COFFE - ETC. WHY? I DIDNT DO ANYTHING WRONG I AM THE ONE ATTACKED._

Date this report was given to Unit Team for informal resolution (to be completed by inmate). _5-24-2022_

### UNIT TEAM RESPONSE (Complete and return to inmate within 10 calendar days.)

**I have investigated your concerns outlined in the attached grievance. K.A.R. 44-15-101 (b) before utilizing the grievance procedure, the inmate shall be responsible for attempting to reach an informal resolution of the matter with the personnel who work with the inmate on a direct or daily basis. (d) The grievance procedure shall incorporate several levels of problem solving to assure solution at the lowest administrative level possible. This grievance does not provide any informal resolution process. "K.A.R. 44-15-101a (d) (2) prohibits use of the grievance procedure in any way as a substitute for, or as a part of, the inmate disciplinary procedure, the classification decision making process, the property loss or personal injury claims procedure..." You are on Special management Pending Investigation status. This is a classification decision that is not grievable per the above mentioned KAR.** _HOW DOES THIS PROHIBIT ME FROM MY PROPERTY - LEGAL WORK?_ Staff Signature _____ _5-25-22_ Date _I FEEL AS-A-VERSAL CONVERSATION as well_

### INMATE RESPONSE (Complete and return to Unit Team within 3 calendar days)

_____ I am satisfied with the Unit Team response and wish to withdraw my formal grievance.

__X__ I am not satisfied with the Unit Team response, and wish to forward to the Warden's office. (This must be done within 3 calendar days.) Date forwarded to Warden's Office (to be completed by staff). _5-25-2022_

_Ronnie Allen Bellamy Jr_   _5-25-2022_
Inmate Signature   Date

### WARDEN RESPONSE (Complete, attach response and return within 10 Working days.)

Date Received _06-01-2022_   Date of Final Answer _5-26-2022_   Date Returned to Inmate _6-11-2022_

_SEE ATTACHED DOCUMENTATION AND NOTE: THE LACK OF ANY DOCUMENTATION ON PLACEMENT_

_Ronnie Allen Bellamy Jr._   _6-11-2022_   _____   _____
Inmate's Signature   Date   Unit Team Signature   Date

If dissatisfied with this response, the inmate may appeal to the Secretary of Corrections within three (3) calendar days of receipt of this decision from the Warden.

### TO BE COMPLETED BY STAFF ONLY

Grievance Serial Number   _____

Type of Complaint (Item 4: Code 01-75)   _____

Cause of Complaint (Item 5: Code 01-30)   _____

Type of Response (Item 6a: Code 01,02,08 or 09)   _____

EXHIBIT - 1

SAMPLE

**MENTAL HEALTH**
**Special Needs Questionnaire**

| Name: | DOC #: | Date: | Housing Assignment: |
|---|---|---|---|
| | | | |

| | |
|---|---|
| Would you say your symptoms have improved, remained stable, or worsened? Circle one. | Improved          Remained Stable          Worsened |
| Have you experienced any life changes over the past month? | Yes    or    No |
| On a scale from 0-5 with 5 being the most anxious, what has your average level of anxiety been in the last 30 days? | |
| On a scale from 0-5 with 5 being the most depressed, what has your average level of depressed been in the last 30 days? | |
| How has your appetite been over the past 30 days? | |
| What have your sleep patterns been like over the past 30 days? Please describe and discuss concerns (i.e. nightmares) | |
| Describe your thinking (i.e. thinking slow or racing thoughts, negative thoughts, odd thoughts or beliefs). | |
| Are you currently experiencing any thoughts of harming yourself? **If yes**, please explain: | Yes    or    No |
| Have you engaged in self-harm in the last 30 days? **If yes**, please explain: | Yes    or    No |
| Are you currently experiencing any thoughts of harming others? **If yes**, please explain: | Yes    or    No |
| In the past month have you heard or seen things that others could not hear or see? **If yes**, please describe: | Yes    or    No |
| Are you currently taking medications for mental health reasons? **If yes**, are you taking all of your medications as they are prescribed Do you have any concerns about your current medications? | Yes    or    No<br>Yes    or    No<br>Yes    or    No |

Do you have any other mental health concerns that were not addressed?

Created by: J. Snyder, LCP; Adapted by J. Sallee
Last revised March 2012

*EXHIBIT-1*

# DEPARTMENT OF CORRECTIONS
## BEHAVIORAL HEALTH SUICIDE OBSERVATION

**SITE:  Lansing - TRU**
**COMPLETED BY:  Carlton S. Quattlebaum, LPC**       **10/15/2021 1:33 PM**



**KDOC Adult Facilities**

**Lansing - TRU**

| | |
|---|---|
| PATIENT: | RONNIE A BELLAMY |
| DATE OF BIRTH: | 05/28/1969 |
| DOC #: | 53454 |
| DATE: | 10/15/2021 1:33 PM |

### Behavioral Health Crisis Level Orders

**Order Type: Update**
**Level: 1**
**Interval: 30 minutes**

**Crisis level initiated:**    10/15/2021 01:33 PM

**Authorized Property (No other property allowed)**
Security may remove any property as necessary to maintain safety and security.
The health care provider must approve the return of any property removed by security.

**Property restrictions**
Gown or smock
Toilet paper (as needed)
Finger foods

**Comments:**
Per Psychiatry, Pt will remain on CL1 at this time.

-------------------------------------------------------------------------------------------

**Provider: Jay Barone MD**
**Document generated by: Carlton S. Quattlebaum, LPC 10/15/2021 1:41 PM**

Name: BELLAMY , RONNIE
Number: 53454
D.O.B. 05/28/1969

BELLAMY, RONNIE   A.  000000053454 05/28/1969 10/15/2021 01:33 PM Page: 1/2

*EXHIBIT-1*

# DEPARTMENT OF CORRECTIONS
## BEHAVIORAL HEALTH SUICIDE OBSERVATION

**SITE:  Lansing - Maximum**
**COMPLETED BY:  Howard Anderson, LMSW      10/16/2021 11:16 AM**



**KDOC Adult Facilities**
**Lansing - Maximum**

PATIENT:                          RONNIE A BELLAMY
DATE OF BIRTH:                    05/28/1969
DOC #:                            53454
DATE:                             10/16/2021 11:16 AM

### Behavioral Health Crisis Level Orders

**Order Type: Update**
**Level: 1**
**Interval: 30 minutes**

**Crisis level initiated:**    10/16/2021 11:16 AM

**Authorized Property (No other property allowed)**
Security may remove any property as necessary to maintain safety and security.
The health care provider must approve the return of any property removed by security.

**Property restrictions**
Gown or smock
Toilet paper (as needed)
Finger foods

**Comments:**
Per psychiatry  PT to remain on CL1 with same property

lights on  6am to 10pm
lights off  10pm to 6am

----------------------------------------------------------------------------------------------------
**Provider: Jay Barone MD**
**Document generated by: Howard Anderson, LMSW 10/16/2021 11:18 AM**

Name: BELLAMY , RONNIE
Number: 53454
D.O.B. 05/28/1969

BELLAMY, RONNIE   A.  000000053454 05/28/1969 10/16/2021 11:16 AM Page: 1/2

*EXHIBIT-1*
*DOUBLE SIDED*

## DEPARTMENT OF CORRECTIONS
## BEHAVIORAL HEALTH SUICIDE OBSERVATION

**SITE:** Lansing - Maximum
**COMPLETED BY:** Howard Anderson, LMSW      10/17/2021 11:16 AM



**KDOC Adult Facilities**
**Lansing - Maximum**

PATIENT:                          RONNIE A BELLAMY
DATE OF BIRTH:              05/28/1969
DOC #:                             53454
DATE:                              10/17/2021 11:16 AM

### Behavioral Health Crisis Level Orders

**Order Type: Update**
**Level: 1**
**Interval: 30 minutes**

**Crisis level initiated:**    10/17/2021 11:16 AM

**Authorized Property (No other property allowed)**
Security may remove any property as necessary to maintain safety and security.
The health care provider must approve the return of any property removed by security.

**Property restrictions**
Gown or smock
Toilet paper (as needed)
Finger foods

**Comments:**
per psychiatry  PT to remain on CL1 with same property

lights on 6am to10pm
lights off  10pm to 6am

----------------------------------------------------------------------------------------

**Provider: Jay Barone MD**
**Document generated by: Howard Anderson, LMSW 10/17/2021 11:19 AM**

Name: BELLAMY , RONNIE
Number: 53454
D.O.B. 05/28/1969

BELLAMY, RONNIE   A.  000000053454 05/28/1969 10/17/2021 11:16 AM Page: 1/2

EXHIBIT-1

# DEPARTMENT OF CORRECTIONS
# BEHAVIORAL HEALTH SUICIDE OBSERVATION

**SITE:  Lansing - Maximum**
**COMPLETED BY:  Howard Anderson, LMSW       10/19/2021 11:23 AM**


**centurion.**

**KDOC Adult Facilities**

**Lansing - Maximum**

PATIENT:                          RONNIE A BELLAMY
DATE OF BIRTH:                    05/28/1969
DOC #:                            53454
DATE:                             10/19/2021 11:23 AM

### Removal from Crisis Level

This inmate has been removed from crisis level placement.

Though crisis level status is discontinued by Behavioral Health, approval of the
segregation review board is required prior to releasing the inmate from administrative
segregation.

**Provider: Jay Barone MD**
**Document generated by: Howard Anderson, LMSW 10/19/2021 11:24 AM**

Name: BELLAMY , RONNIE
Number: 53454
D.O.B. 05/28/1969

BELLAMY, RONNIE   A.  000000053454 05/28/1969 10/19/2021 11:23 AM Page: 1/1

PAGE 1 OF 3
WITH ATTACHMENTS-AFFIDAVITS
IN SUPPORT OF SAID DOCUMENTS-NOA

IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF KANSAS

*EXHIBIT-1*

TO:CLERK OF THE COURT
    444 S.E. QUINCY  490 U.S.COURTHOUSE
    TOPEKA,KANSAS  66683

*6-6-2022*
*1:20 P.m.*
*WAITING AT*
*E-FILE PLACE*

FROM:RONNIE ALLEN BELLAMY JR.(53454)
      L.C.F.P.O.BOX 2,LANSING,KANSAS 66043

MOTION FOR/AS

RE:ACTIVITY IN CASE NO.20-3229-DDC-ADM----/NOTICE OF APPEAL
    THE SUBJECT OF APPEALING THE DECISION OF
    FIRST DISMISSING MY LAWSUIT-UNLAWFULLY-
    UNCONSTITUTIONALLY-EGREGIOUSLY-ERRONEOUSLY-
    SHOCKING THE CONSCIENCE-VIOLATING MULTIPLE
    LAWS-STATE & FEDERAL,PROTECTIVE LAWS.
    SECOND SUBJECT THE DENIAL OF MY MOTION FOR
    RECONSIDERATION ON THOSE ISSUES IN BODY OF
    COMPLAINT-CIVIL-CRIMINAL COMPLAINT THAT
    PLAINTIFF WAS NEVER AFFORDED THE OPPORTUNITY
    TO REPRESENT PROPERLY-PRESENT AVAILABLE EVIDENCES
    BEEING DENIED AN ATTORNEY TO HELP MULTIPLE TIMES
    BY WAY OF MOTION(S),E-FILED.AS A VICTIM OF A VERY
    HEINOUS CRIME AND DISABLED-PARTIALLY MENTALLY INCA-
    PACITATED,EGREGIOUS-UNATTENDED INJURIES,ALREADY
    SUFFERED,SOME WHICH WERE NEVER EVEN ACKNOWLEDGED
    BY THOSE IN POWER,TO INCLUDE THE FOLLOWING RECENT
    INJURIES.SEE ATTACHED-GRIEVANCE & RESPONSE OF THOSE
    IN CHARGE OF PLAINTIFFS LIFE,SECOND AND EVEN MORE
    EGREGIOUS ATTACK ALMOST AGAIN ENDING PLAINTIFFS LIFE
    AND ABSOLUTELY NO PAPERWORK GENERATED OR GIVEN TO
    PLAINTIFF-RONNIE ALLEN BELLAMY JR.(53454),PLAINTIFF
    WAS APPARENTLY ATTACKED FROM BEHIND BY SOMEONE WITH
    A WEAPON BEATING PLAINTIFF IN THE HEAD AND NECK FROM
    BEHIND AND APPARENTLY KNOCKING PLAINTIFF UNCONSCIOUS
    BEFORE BEEING STOPPED.PLAINTIFF BELLAMY JR.LISTED HAS
    NO MEMORY OF EVER SEEING ANYONE COMING FROM BEHIND HIM
    BEEING UNCONSCIOUS-OR EVEN BEEING HIT OR ATTACKED,THE
    PLAINTIFF REMEMBERS LEAVING THE DINING HALL AT BREAKFAST
    AROUND 5:00-6:00 A.M.,AND WALKED INTO HIS UNIT A-7,THE
    MENTAL HEALTH UNIT,WHERE INMATE BELLAMY RESIDES.AND THE
    PLAINTIFF RONNIE ALLEN BELLAMY JR.(53454),SPOKE TO THE
    OFFICER IN CHARGE STATING COULD YOU PLEASE OPEN MY DOOR
    I DONT FEEL GOOD AS HE COLAPSED ON THE FLOOR,AND OFFICER
    ELLISON STATED THERES BLOOD ALL OVER YOU SO THATS PROBABLY
    WHAT IT IS.AND THEN SST SORT MEMBERS MCCURRIE AND ANOTHER
    OFFICER SHOWED UP TO TAKE PLAINTIFF TO CLINIC,SEE VIDEO-
    AUDIO-PHONE-COMPUTERICS FROM ALL PLACES PLAINTIFF WAS AT
    ON 5-18-2022,LANSING CORE-CIVIC PRISON.ALL OF THESE EVENTS

*EXHIBIT-1*

HAVE LEFT AND RENDERED THE PLAINTIFF IN VARIOUS STAGES OF
CONFUSION-FORGETFULLNESS-UNABLE TO FIGURE OUT WHAT TO DO AT
DIFFERENT TIMES-PLACES-KNOWING THAT THE PLAINTIFF CAN NOT
AFFORD TO SUSTAIN ANY FURTHER HEAD INJURIES,AS THE KDOC-
STAFF-CENTURION-UNIVERSITY OF KANSAS HELD CONTRACT-STATE
OF KANSAS DID NOT EVEN SEND THE PLAINTIFF TO THE HOSPITAL
FOR THE VIOLENT ATTACK AND INJURIES.PLAINTIFF WAS INSTEAD
TAKEN TO THE INFIRMARY DIAGNOSED WITH A SERIOUS CONCUSSION
AND THROWN INTO A STRIP-CRISIS CELL WITH NOTHING,LEFT UN-
ATTENDED,WHERE IF PLAINTIFF MOVED HE STARTED VOMITING-DUE
TO THE SPINNING AND MOTION,UNABLE TO WALK PROPERLY,SLEEPING
UNCONTROLLABLY,OFFERED TYLENOL AT SOME POINT,LISTED AS SEG-
STATUS-OBSERVATION,WITHOUT ANY PAPERWORK,DUE PROCESSES-OR
PROCEDURES BEEING FOLLOWED TO EXPLAIN ANYTHING-PROTECTING
THE CONSTITUTIONAL RIGHTS OF PLAINTIFF-CORE-CIVIC,KDOC,AND
ALL GOVERNING LAWS.A STRIP-CRISIS CELL IS FOR PEOPLE WHO ARE
SUICIDAL-HOMICIDAL-GOING THROUGH SOME FORM OF A DRUG STUPOR,
UNCONTROLLABLY,OR A DANGER TO THEMSELVES IN SOME WAY.WHICH
BY POLICY REQUIRES A STAFF MEMBER TO BE PRESENT OUTSIDE OF THE
CELL AT ALL TIMES UNTIL THE CRISIS IS OVER WITH OR THEY ARE
SUBDUED BY SOME FORM OF ATTENTION THAT RENDERS THEM OR THE
SITUATION UNDER CONTROL.PLAINTIFF DID NOTHING WRONG AND DID
NOT EVEN FIGHT BACK DUE TO NOT EVEN REALIZING HE WAS BEEING
ATTACKED,OR SEEING THE ATTACKER,THIS WAS APPARENTLY DUE TO
THE PREVALENT GANG HERE AND AT ALL KDOC FACILITIES,SECURITY
THREAT GROUP.*** **,PAYING PEOPLE TO HAVE PLAINTIFF REMOVED FROM
THE TRU-UNIT-POPULATION,AND PLACED IN SEGREGATION,WHERE THE
FIRST GROUP OF SECURITY THREAT GROUP MEMBERS,ARE BEEING HOUSED
THAT TRIED TO KILL PLAINTIFF IN HIS SLEEP,AS ALL CENTRAL MONITORS
WERE REMOVED FROM PLAINTIFFS FILE AND COMPUTERICS BY A HIGH
RANKING MEMEBER OF THE ADMINISTRATION WRONGFULLY-ILLEGALLY-
UNCONSTITUTIONALLY,AND WITHOUT PLAINTIFFS PERMISSION-AND/OR
PARTICIPATION.PLAINTIFF KEEPS TALKING ABOUT FILING AN APPEAL
TO HIS LAWSUIT,AND DOES NOT EVEN KNOW WHAT TO DO,WHERE TO START
AS YET ANOTHER CORRESPONDENCE ARRIVES VIA-MAIL FROM THE ATTORNEY
GENERALS OFFICE,AS A MOTION FOR ATTORNEY-COUNSEL ASSISTANT MICHAEL
J.DUENES WITHDRAWALS AS REPRESENTATION FOR DEFENDANTS.THE
PLAINTIFF RONNIE ALLEN BELLAMY JR.(53454),NEEDS COUNSEL AS KDOC
REFUSES TO HELP DUE TO THEIR INVOLVEMENT IN THE CRIMES BEEING
COMMITTED AGAINST THE PLAINTIFF AND HELPING ASSISTING IN THE
VIOLATING OF HIS CONSTITUTIONAL RIGHTS AND CONSPIRACY TO MURDER
THE PLAINTIFF,BY NOT FOLLOWING POLICY-PROCEDURES-PROTOCOLS-
PROCESSES,DENYING THE PLAINTIFF HIS PROPERTY,LEGAL BOX-PERSONAL
PROPERTY,STATING YOU ARE SEG STATUS,WHEN PLAINTIFF WAS IN THE
INFIRMARY AND SEG STATUS,IS FOR DISCIPLINARY REASONS,PLAINTIFF
WAS NOT BEEING DISCIPLINED,HE HAD DONE NOTHING WRONG.PLAINTIFF
RONNIE ALLEN BELLAMY JR.(53454),HAD NOT THEN AND STILL HAS NOT
RECEIVED ANY PAPERWORK AS PART OF THE DUE PROCESS RIGHTS,THE
PROCEDURAL RIGHTS,THE EIGHTH AMENDMENTS RIGHT TO BE FREE FROM
CRUEL AND UNUSUAL PUNSIHMENTS,AND TO RECEIVE PROPER MEDICAL CARE
AND ATTENTION,PLAINTIFF IS NOW BACK IN THE MENTAL HEALTH UNIT-
TRU-UNIT,AS SINGLE CELL-OCCUPANCY,A-7-239,LANSING CORE-CIVIC,
PRISON,IN NEED OF REPRESENTATION,FOR LAWSUIT-APPEAL-LIFE,DUE
TO ALL OF THE EGREGIOUS,FELONIOUS-UNCONSTITUTIONALITIES-UNLAWFUL,
ACTS BEEING COMMITTED AGAINST HIM,TO INCLUDE THE REFUSAL TO

*EXHIBIT-1*

ACCEPT AND PROCESS AN EMERGENCY GRIEVANCE,PER THE KDOC AND
STAFFS FAVORITE LINE-PARTIALITY OF THE RULE-RIGHT,FAILURE TO
ATTEMPT AN INFORMAL RESOLUTION,INFORMAL RESOLUTION CAN BE IN
WRITING OR VERBALLY,AS IN WRITING MAY NOT ALWAYS BE POSSIBLE
DUE TO STAFF-OFFICERS THROWING PAPERWORK AWAY,OR ALLOWING OTHER
INMATES TO STEAL IT FOR THE PURPOSE OF LABELING-TARGETING-IN AN
EFFORT TO HARM THE INMATE OR HAVE THEM MURDERED,REMOVED.AS KEEPS
HAPPENING TO PLAINTIFF AS THE HEAD OF THE ELDORADO CORRECTIONAL
FACILITY EAI AGENT JOHN G.CANNON,IS NOW THE DEPUTY DIRECTOR,
AFTER CLEARLY VIOLATING THE LAW AND PLAINTIFFS CONSTITUTIONAL
RIGHTS AND CODE OF ETHICS CONTRACT HE SIGNED AS PART OF THE
EMPLOYMENT AGREEMENT OF THE KDOC UPON ACCEPTANCE,AND RULES OF
ACKNOWLEDGEMENT,WITH HIS BOASTFUL CLAIM OF " IN GOD WE TRUST-
ALL OTHERS WE RUN THROUGH NCIC.",WHERE HE CLEARLY LIED.SEE THE
FIRST RESPONSE FROM THE ATTORNEY GENERALS OFFICE BY WAY OF ONE
NATASHA CARTER,SERIES WITH THE NARRATIVES AND PARTIAL PHOTOS
NO SHOTS FROM THE MULTITUDE OF CAMERAS IN THE CELL-HOUSE-B,OR
MAIN COMPOUND-YARD AREA FOR POPULATION-GYMNASIUM ENROUTE TO
THE INFIRMARY TRIAGE UNIT,WITH NO MEDICAL IN ATTENDANCE AT ANY
POINT WHATSOEVER.SEE BODY OF COMPLAINT FOR ALL DETAILS,TO INCLUDE
THE AMBULATORY RESPONSE ON ARRIVAL AT EDCF,AND  IN THE AMBULANCE,
AND UPON ARRIVAL AT WESLEY MEDICAL CENTER,AND DURING THE OVER 10,
HOURS AT WESLEY MEDICAL CENTER,IN THE EMERGENCY ROOM WITH A MULTI
TUDE OF WITNESSES WATCHING RECORDING WITH THEIR CELL-PHONES TO
INCLUDE SST TRANSPORT O'BRIEN,A NURSE ON DUTY.AND OTHERS.WHILE
PLAINTIFF LAID THERE WAITING FOR HELP THAT DID NOT COME.SEE ALL
VIDEO-AUDIO-PHONE-COMPUTERICS,AS PLAINTIFF HAS REPEATEDLY REQUESTED
THROUGHOUT THESE ENTIRE PROCEEDINGS AND E-FILINGS,FOR THIS VERY
PURPOSE TO ENSURE THE INTEGRITY AND PROTECTION FROM ALL INVOLVED
AS WELL AS FOR CRIMINAL PURPOSES,INSURANCE PURPOSES,CONSTITUTIONAL
PROTECTIONS AND ASSURANCES,LAWS,ARE ALL BEEING FOLLOWED DUE TO THE
NATURE OF ALL PARTIES INVOLVEMENT(S),VOLUNTARY OR INVOLUNTARILY.
THIS AND ALL ATTACHMENTS ALONGWITH THE BODY OF COMPLAINT-AND THE
AND ALL AMENDMENTS DUE TO AND ALONGWITH ALL AFFIDAVITS ARE TO SERVE
AS AND PART OF THE PLAINTIFFS COMPLAINT-APPEAL-MOTIONS-RECONSIDER-
ATIONS-VIOLATIONS-CONSPIRACIES-CRIMINALITIES-ILLEGAL IMPRISONMENT.

RESPECTFULLY SUBMITTED,
*Ronnie Allen Bellamy Jr.#53454*
RONNIE ALLEN BELLAMY JR.(53454)
PLAINTIFF-RESIDENT-CITIZEN

CORE-CIVIC PRISON
P.O.BOX 2
LANSING,KANSAS 66043

INMATE REQUEST TO STAFF MEMBER

To: _____                          Date: _____
     (Name and Title of Officer or Department)

_____                          *EXHIBIT-1*

     Unit Team, Detail, or Cellhouse Officer's Signature       **To be retained by inmate**

**Form 9**
For Cellhouse Transfer                                 *BELLAMY*
Work Assignment                                    **Last Name Only**
Interview Requests

                    **KANSAS DEPARTMENT OF CORRECTIONS**       *53454*
*Public Service Administrator Mr. STIFFEN*                     **Number**
                    **INMATE REQUEST TO STAFF MEMBER**

To: *LAW LIBRARY*                     Date: *1-10-2022*
     (Name and Title of Officer or Department)
     State completely but briefly the problem on which you desire assistance. (Be specific.)

*PLEASE SEND ME A LEGAL PACKET AND TELL ME HOW
YOU ARE DOING THE E-FILING WITH THE DISTRICT COURT
IN TOPEKA PLEASE I HAVE URGENT DOCUMENTS TO BE
E-FILED AS LAW LIBRARY AND ACCESS HAS BEEN
RESTRICTED FOR SOME REASON UNKNOWNST TO ME AND
MOST OF THE GEN POP. MY UNIT KNOWN AS TRU UNIT*

Work Assignment: _____        Living Unit Assignment: *A-8-223*

Comment: _____               Detail or C.H. Officer: *Spann*

Disposition: _____

_____

_____

To: _____                          Date: *1/24/22*
          (Name & Number)

Disposition: *Send your efile to the library.*

_____

_____

Employee's Signature *J. P. Stiffen*                  **To be returned to inmate.**

P-0009

IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF KANSAS

*EXHIBIT-1*

FROM:RONNIE ALLEN BELLAMY JR.(53454)
        L.C.F.P.O. BOX 2
        LANSING,KANSAS 66043

RE:ACTIVITY IN CASE NO.20-3229-DDC-ADM

SUBJECT:AFFIDAVIT IN SUPPORT OF PLAINTIFFS NOTICE OF APPEAL,AND
REASON FOR THE DELAY IN FILING SAID NOTICE,PROOF OF THE LEVEL OF
CRIMINAL MISCONDUCT ON PART OF THE DEFENDANTS,AND ALL PARTIES
INVOLVEMENT-WITH AND WITHOUT KNOWLEDGE-LIABLE AND CULPABLE-AND
THE EGREGIOUSNESSES,OF ALL OF THE CONSTITUTIONAL VIOLATIONS-AND
VIOLATIONS OF LAW,FOR EXAMPLE.

ON 6-6-2022,@ 11:00 a.m. PLAINTIFF AFTER LUNCH MADE A REQUEST TO
THE OFFICER RUNNING THE TRU-UNIT-MENTAL HEALTH UNIT,COULD YOU
PLEASE CALL MR.STIFFIN,THE PUBLIC SERVICE ADMINISTRATOR,LAW
LIBRARIAN,AND LET HIM KNOW THAT I NEED TO E-FILE MY NOTICE OF
APPEAL,TODAY ITS THE DEADLINE,AND PLAINTIFF DOES NOT SET THE
DEADLINES,THE COURT DOES.TO WHICH THE OFFICER SGT.MR.ENGLIS,THEN
STATED  DONT THREATEN ME,AND PLAINTIFF BELLAMY,THEN STATED DONT
DO THAT I NEVER THREATENED YOU,AND THEN THE OFFICER STATED YOUR
RIGHT YOU DID NOT THREATEN ME,WITH WITNESSES PRESENT,AND UT-MRS.
BLACKMON-UNIT COUNSELOR PRESENT AND HEARING EVEN WITH HER DOOR
CLOSED AS PLAINTIFF GOT HER ATTENTION,AND TRIED TO GET HER TO
INTERVENE AND HELP TO WHICH SHE STATED I AM NOT SEEING ANYONE
TODAY TALK TO THE OTHER UNIT TEAM,MRS.CAMACHO,AND PLAINTIFF
BELLAMY,THEN STATED SHE IS NOT IN HER OFFICE,WELL WAIT TILL SHE
RETURNS.CLEAR MISCONDUCT ON ALL PARTIES INVOLVED,THE KDOC AND/OR
ITS EMPLOYEES OR AFFILIATES CAN NOT STOP OR IMPEDED THE ACCESS TO
ANY COURT FEDERAL OR SATTE,OR REMOVE ARBITRARILY ANYONES PROTECTED
CONSTITUTIONAL RIGHTS OR MEANINGFUL ACCESS TO COURTS.PLAINTIFF
RONNIE ALLEN BELLAMY JR.(53454),IS STILL SUFFERING FROM AND ALSO
DEALING WITH THE EFFECTS OF A SERIOUS CONCUSSION,FROM YET ANOTHER
ATTACK ON HIS LIFE,BY AFFILIATES OF THE SAME GROUP ALL MEMEBERS OF
SECURITY THREAT GROUPS,AND/OR AFFILIATES.AND WITH THE EFFECTS OF
THE CONCUSSION COMING AND GOING,ALONGWITH THE EFFECTS FROM THE
SEVERE HEAD TRAUMA ALREADY PRESENT FROM THE FIRST ATTEMPTED
MURDER ON PLAINTIFF BELLAMY (53454),CAUSING THE PLAINTIFF TO BE
PLACED AND HOUSED IN THE MENTAL HEALTH UNIT,DUE TO THE SEVERITY
OF INJURIES SUSTAINED AND NEVER ADDRESSED ALL WITNESSED BY VIDEO-
AUDIO-PHONE-COMPUTERICS,AT ALL PLACES THAT PLAINTIFF BELLAMY WAS
AND IS BEEING HOUSED PRIOR TO,DURING,AFTER,WHILE,AS THE PLAINTIFF
HAS BEEN A VICTIM OF MULTIPLE HEINOUS AND ATROCIOUS CRIMES OVER
AND OVER WHILE ON DUTY ACTING UNDER COLOR OF LAW KDOC OFFICERS-
OFFICIALS,EMPLOYEES-CONTRACTORS-AFFILIATES,AND ALL PARTIES THAT
ARE INVOLVED IN ALL WAYS INVOLVED,CONTRACTUALLY,AND OTHERWISE
TO INCLUDE THE SECRETARY OF CORRECTIONS,GOVERNOR,STATE OF KANSAS,
AND SUBSTRUCTURES.

RESPECTFULLY SUBMITTED,

RONNIE ALLEN BELLAMY JR.(53454)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **RONNIE ALLEN BELLAMY, JR.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**ALEX MCCOLLOUGH, DUSTIN RANDOLPH, JOHN CANNON, and DYLAN DARTER,**<br><br>**Defendant.** | *EXHIBIT – 1*<br><br>**Case No. 20-3229-DDC-ADM** |

## MEMORANDUM AND ORDER

Plaintiff Ronnie Allen Bellamy, Jr. brought an Eighth Amendment claim against defendants in their official and individual capacities, based on their alleged failure to protect him from a brutal attack at the El Dorado Correctional Facility in El Dorado, Kansas. In a Memorandum and Order dated March 1, 2022, the court dismissed plaintiff's official capacity claims because the Eleventh Amendment bars those claims. Doc. 62 at 16. And, the court granted summary judgment against plaintiff's individual capacity claims because defendants are entitled to qualified immunity. *Id.* Plaintiff now asks the court to reconsider its March 1 Order. *See* Doc. 64. For reasons explained below, the court denies plaintiff's request for reconsideration.[1]

Motions for reconsideration are appropriate only where there is: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d

---

[1]     As he did before, plaintiff again appears pro se. The court thus construes his filing liberally and holds it "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court can't serve as a pro se plaintiff's advocate. *See id.*

*EXHIBIT-1*

1005, 1012 (10th Cir. 2000).  "Thus, a motion for reconsideration is appropriate where the court

has misapprehended the facts, a party's position, or the controlling law." *Id.*  Such a motion isn't

an appropriate vehicle "to revisit issues already addressed or advance arguments that could have

been raised in prior briefing." *Id.*; *see also Castanon v. Cathey*, 976 F.3d 1136, 1141 (10th Cir.

2020) (reiterating that parties can't use a reconsideration motion to "relitigate old matters" or

"rehash[ ]" arguments previously raised (quotation cleaned up)).

Plaintiff provides no basis for the court to reconsider its March 1 Order.  He doesn't

identify any intervening change in the controlling law.  Nor does he introduce new evidence

previously unavailable.  But, liberally construed, his motion generally asserts that there's a need

to correct manifest injustice.  And, implicit in his motion are three reasons for why that's so.

None of those reasons justify reconsidering the court's March 1 Order.  The court addresses each

one, below.

*First*, citing his Complaint, plaintiff argues that the court didn't conduct "any actual fact

finding" about "the truthfulness of [his] allegations[.]"  Doc. 64-1 at 1.  But it's not the court's

role to engage in fact finding at the summary judgment stage.  Instead, to overcome defendants'

summary judgment motion, plaintiff had the burden to "set forth specific facts showing that there

[wa]s a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)

(quotation cleaned up).  To do so, plaintiff had to go beyond the allegations in his pleadings, and

by his "own affidavits, or by the depositions, answers to interrogatories, and admissions on file,

designate specific facts showing that there [wa]s a genuine issue for trial." *Celotex Corp. v.

Catrett*, 477 U.S. 317, 324 (1986) (quotation cleaned up).  Plaintiff didn't shoulder this burden.

As explained in the March 1 Order, plaintiff only provided unsupported allegations for his

claims.  Doc. 62 at 12.  Allegations unsupported by any evidence don't create a genuine issue for

2

*EXHIBIT-1*

trial.  *Id.*  And, plaintiff doesn't provide new support for his allegations now.  He merely

highlights once again the allegations in his Complaint.  But a motion for reconsideration isn't the

place to "simply rehash[ ]" old arguments.  *Castanon*, 976 F.3d at 1141.

   *Second*, plaintiff resurrects an earlier argument that a *Martinez* report[2] would've

produced the evidence he needed to survive summary judgment.  But, as the court explained

before, "*Martinez* reports 'facilitate th[e] screening process' of a complaint under 28 U.S.C. §§

1915(e)(2)(B), 1915A(a)–(b)."  Doc. 62 at 14 (quoting *Rachel v. Troutt*, 820 F.3d 390, 393 n.1

(10th Cir. 2016)).  A *Martinez* report isn't relevant where, as here, the court previously screened

the Complaint and determined that it asserted at least one plausible claim for relief.  The court

also recognized, however, that plaintiff's request for a *Martinez* report, liberally construed,

implicated Fed. R. Civ. P. 56(d).  As the court explained, that rule "allows a court to defer

deciding a motion for summary judgment when 'a nonmovant shows by affidavit or declaration

that, for specified reasons, it cannot present facts essential to justify its opposition[.]'"  *Id.*

(quoting Fed. R. Civ. P. 56(d)).  Plaintiff didn't meet the specific requirements outlined by our

Circuit for justifying relief under Rule 56(d).  *See Adams v. C3 Pipeline Constr. Inc.*, ___ F.4th

___, 2021 WL 7543790, at *16 (10th Cir. Nov. 2, 2021) ("In the Tenth Circuit, a non-movant

requesting additional discovery under Rule 56(d) must specify in the affidavit (1) the probable

facts not available, (2) why those facts cannot be presented currently, (3) what steps have been

taken to obtain these facts, and (4) how additional time will enable the party to obtain those facts

---

[2]       "When the pro se plaintiff is a prisoner, a court-authorized investigation and report by prison
officials (referred to as a *Martinez* report) is not only proper, but may be necessary to develop a record
sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims."  *Hall*, 935
F.2d at 1109 (citing *Martinez v. Aaron*, 570 F.2d 317, 318–19 (10th Cir. 1978) (en banc) (per curiam)).

*EXHIBIT - 1*

and rebut the motion for summary judgment." (quotation cleaned up)).[3]  And, in any event, the

evidence plaintiff sought—video and audio evidence of his attack—wasn't relevant to the

decisive issue in this case:  whether defendants subjectively knew about an allegedly planned

attack against plaintiff and thus disregarded a substantial risk of serious harm to plaintiff.  *See*

Doc. 62 at 14–15.

*Third*, plaintiff argues the court has denied his constitutional rights by repeatedly denying

his request for counsel.  But he is mistaken.  "There is no constitutional right to appointed

counsel in a civil case." *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989) (per curiam);

*McCleland v. Raemisch*, No. 20-1390, 2021 WL 4469947, at *5 (10th Cir. Sept. 30, 2021).  And,

after evaluating the factors for appointing counsel to a litigant proceeding in forma pauperis,

Magistrate Judge Angel D. Mitchell denied plaintiff's earlier request for appointment of counsel.

*See* Doc. 48 at 2–4.  Plaintiff offers no reason to reconsider that decision.

In sum, plaintiff hasn't identified any reason for the court to reconsider its March 1

Order.  Plaintiff hasn't demonstrated that the court's March 1 Order "misapprehended the facts, a

party's position, or the controlling law." *Servants of the Paraclete*, 204 F.3d at 1012.  Thus, the

court won't reconsider its March 1 Order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion to

Reconsider (Doc. 64) is denied.

**IT IS SO ORDERED.**

---

[3]      In its March 1 Order, the court cited *Adams* at a different citation, 17 F.4th 40, 65 (10th Cir.
2021).  But, Westlaw since has republished *Adams* at 2021 WL 7543790 due to a publisher's error in the
originally cited version.  The quote from *Adams* and the corresponding point of law that the court cited in
its March 1 Order are unchanged.

*EXHIBIT-1*

Dated this 4th day of April, 2022, at Kansas City, Kansas.

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge

A7 239
BOOTO

**Janet DePinto [KDOC]**

EXHIBIT-1

| | |
|---|---|
| **From:** | KDOC_Court_File_LCF |
| **Sent:** | Friday, May 27, 2022 8:41 AM |
| **To:** | Janet DePinto [KDOC]; Colette Winkelbauer [KDOC] |
| **Subject:** | FW: Activity in Case 5:20-cv-03229-DDC-ADM Bellamy (ID 53454) v. Cline et al Withdrawal and Entry of Appearance of Substituted Counsel |

**From:** KSD_CMECF@ksd.uscourts.gov <KSD_CMECF@ksd.uscourts.gov>
**Sent:** Friday, May 27, 2022 8:39:46 AM (UTC-06:00) Central Time (US & Canada)
**To:** ksd_nef@ksd.uscourts.gov <ksd_nef@ksd.uscourts.gov>
**Subject:** Activity in Case 5:20-cv-03229-DDC-ADM Bellamy (ID 53454) v. Cline et al Withdrawal and Entry of Appearance of Substituted Counsel

*EXTERNAL*: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**DISTRICT OF KANSAS**

## Notice of Electronic Filing

The following transaction was entered by Depew, Dennis on 5/27/2022 at 8:39 AM CDT and filed on 5/27/2022

| | |
|---|---|
| **Case Name:** | Bellamy (ID 53454) v. Cline et al |
| **Case Number:** | 5:20-cv-03229-DDC-ADM |
| **Filer:** | John Cannon |
| | Dylan Darter |
| | Alex McCollough |
| | Dustin Randolph |

**WARNING: CASE CLOSED on 03/01/2022**

**Document Number:** 67

**Docket Text:**
**WITHDRAWAL OF COUNSEL by Michael J. Duenes and ENTRY OF APPEARANCE OF SUBSTITUTED COUNSEL by Dennis D. Depew on behalf of All Defendants (Depew, Dennis)**

**5:20-cv-03229-DDC-ADM Notice has been electronically mailed to:**

Dennis D. Depew    dennis.depew@ag.ks.gov, chelsea.zamora@ag.ks.gov, connie.deckard@ag.ks.gov, donna.wells@ag.ks.gov

Michael Joseph Duenes    michael.duenes@ag.ks.gov, chelsea.zamora@ag.ks.gov, connie.deckard@ag.ks.gov, donna.wells@ag.ks.gov

Ronnie Allen Bellamy, Jr    KDOC_court_file_lcf@ks.gov

*EXHIBIT — 1*

**5:20-cv-03229-DDC-ADM Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1028492125 [Date=5/27/2022] [FileNumber=5587423-0
] [6911ba60a74a14fe13c5da65ff288d19830297b243b26c2a225707f31254ce47a92
8bd43c88ff454043ff7138f0ef8b93aa02e3ea57e411d17fd3fe3f4ae55bd]]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RONNIE ALLEN BELLAMY, JR. )
 )
   Plaintiff, )
 )
v. )  Case. No. 20-3229-DDC-ADM
 )
ALEX MCCOLLOUGH, DUSTIN )
RANDOLPH, JOHN CANNON, and )
DYLAN DARTER )
 )
   Defendants. )
_____)

*EXHIBIT - 1*

## WITHDRAWAL OF COUNSEL AND
## ENTRY OF APPEARANCE OF SUBSTITUTED COUNSEL

   Assistant Attorney General Michael J. Duenes hereby withdraws as counsel of record for

Defendants Alex McCollough, Dustin Randolph, John Cannon, and Dylan Darter ("KDOC

Defendants") pursuant to D. Kan. Rule 83.5.5(c). Further, Deputy Attorney General Dennis D.

Depew hereby enters his appearance as substituting counsel of record for KDOC Defendants.

          Respectfully Submitted,

          OFFICE OF ATTORNEY GENERAL
          DEREK SCHMIDT

          *s/ Michael J. Duenes*
          Michael J. Duenes, KS No. 26431
          Assistant Attorney General
          Memorial Building, 2nd Floor
          120 SW 10th Avenue,
          Topeka, Kansas, 66612-1597
          Phone: (785) 296-2215
          Fax: (785) 291-3767
          Email: michael.duenes@ag.ks.gov
          *Withdrawing Attorney for*
          *KDOC Defendants*

1

_EXHIBIT - 1_

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

/s/ *Dennis D. Depew*
Dennis D. Depew, No. 11605
Deputy Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas  66612-1597
Telephone:  785-368-8426
FAX:  785-291-3767
Email: dennis.depew@ag.ks.gov
*Substituting Attorney for*
*KDOC Defendants*



## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of May, 2022, the above and foregoing was filed with the clerk of the court by using the CM/ECF system which will send notice of electronic filing to the following:

Natasha Carter
Kansas Department of Corrections
714 SW Jackson, Suite 300
Topeka, KS 66603
Natasha.Carter@ks.gov
*Attorney for Kansas Department of Corrections, Interested Party*

I also certify that a copy of the above was served via first-class mail, postage prepaid to:

Ronnie Allen Bellamy, # 53454
Lansing Correctional Facility
P.O. Box 2
Lansing, Kansas 66043-0002
*Plaintiff, pro se*

s/ Michael J. Duenes
Michael J. Duenes
Assistant Attorney General

3



EXHIBIT-1

**TO:**       Ronnie Allen Bellamy, Jr., #53454
              Lansing Correctional Facility
              P.O. Box 2
              Lansing, KS  66043

**FROM:**     United States District Court
              444 SE Quincy Street
              490 US Courthouse
              Topeka, KS  66683

**DATE:**     March 31, 2022

**SUBJECT:**  Affidavit


The clerk's office is in receipt of the enclosed Affidavit for filing with the United States District Court, a copy of which is enclosed.  Please be advised the Affidavit was not submitted on a court-approved form, nor did you submit a motion for leave to proceed in forma pauperis or pay the filing fee. Accordingly, forms are enclosed for your review and use.

If you have questions or concerns, do not hesitate to contact the Topeka Clerk's Office at 785-338-5400.  Thank you.

# KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE FORM

## INMATE COMPLAINT

Inmate's Name _RONNIE ALLEN BELLAMY JR_    Number _53454_

Facility _LCF-C_    Housing Unit _A-8-223 MH Unit_ Work Detail _INFIRMACY 10-6 am_

## NATURE OF COMPLAINT BE SPECIFIC. (Include names, dates, places, rules, regulation, etc.; how you have been affected and action you believe the Warden should take.) Use additional paper if necessary. ATTACH DOCUMENTATION OF ATTEMPTS AT INFORMAL RESOLUTION PRIOR TO FILING THIS FORMAL GRIEVANCE (i.e. Form 9s or other correspondence and response from staff member).

_SEE ATTACHED 8-PAGES GRIEVANCE-COMPLAINT-AFFIDAVIT WITH ATTACHMENTS_

_EMERGENCY GRIEVANCE_
_DEP WARDEN SKIDMORE_

Date this report was given to Unit Team for informal resolution (to be completed by inmate). _11-19-2021_

## UNIT TEAM RESPONSE (Complete and return to inmate within 10 calendar days.)

_REFUSED BY CTM PARKS_

_EXHIBIT-1_

_____ Unit Team Signature    Date

## INMATE RESPONSE (Complete and return to Unit Team within 3 calendar days)

_____ I am satisfied with the Unit Team response and wish to withdraw my formal grievance.

_____ I am not satisfied with the Unit Team response, and wish to forward to the Warden's office. (This must be done within 3 calendar days.) Date forwarded to Warden's Office (to be completed by staff). _____

_____    _____
Inmate Signature    Date

## `WARDEN RESPONSE (Complete, attach response and return within 10 Working days.)

Date Received _____ Date of Final Answer _____ Date Returned to Inmate _____

_____    _____
Inmate's Signature    Date    Unit Team Signature    Date

If dissatisfied with this response, the inmate may appeal to the Secretary of Corrections within three (3) calendar days of receipt of this decision from the Warden.

## TO BE COMPLETED BY STAFF ONLY

Grievance Serial Number    _____

Type of Complaint (Item 4: Code 01-75)    _____ _____

Cause of Complaint (Item 5: Code 01-30)    _____ _____

Type of Response (Item 6a: Code 01,02,08 or 09)    _____ _____

# MEMO



**Kansas**
Department of Corrections
*Lansing Correctional Facility*

EXHIBIT-1

**DATE:** 12/01/2021
**TO:** Bellamy 53454

**FROM:** S.W. Knowles, UTS / Grievance officer

**SUBJECT:** Grievance

I have received and reviewed your grievance.

Your grievance is being returned to you for failure to follow the grievance procedure as outlined in **KAR 44-15-102**.

You must first seek out "Informal Resolution" with your Unit Team Manager, UTM Parks. A written form-9 response must be attached to any submitted grievance.

**44-15-102. Procedure**
**(a)      Grievance step one:  preliminary requirement; informal resolution and problem solving at unit team level.**
**(1)      Each inmate shall first seek information, advice, or help on any matter from the inmate's unit team, or from a member of the team.  If unable to solve the problem, the unit team shall refer the inmate to the proper office or department.**

The grievance procedure requires you to attach documentation of attempts at informal resolution prior to filling a formal grievance (i.e. Form -9s, or other correspondence and response from staff member.)

Please work with your Unit Team in an attempt to resolve this issue.  If those attempts fail, you may resubmit your grievance with supporting documentation of your attempt at informal resolution.

S.W. Knowles, UTS
Grievance officer

PAGE 1 OF 8

UNITED STATES DISTRICT COURT
 FOR THE STATE OF KANSAS

**COPY**

FROM: RONNIE ALLEN BELLAMY JR.(53454)

 LANSING CORRECTIONAL FACILITY

 P.O.BOX 2,301 EAST KANSAS

 LANSING,KANSAS 66043

EXHIBIT-1

CASE NO. 5:20-CV-03229-DOC-ADM

TO: CLERK OF THE COURT

 444 S.E.QUINCY

 490 U.S.COURTHOUSE

 TOPEKA,KANSAS 66683

AFFIDAVIT

THIS AFFIDAVIT-COMPLAINT-GRIEVANCE,IS TO SERVE AS AN AFFIDAVIT,FOR THE
COURT AND TO SERVE AS AN COMPLAINT-GRIEVANCE FOR THE KDOC-L.C.F. FACILITY.
FOR THE FOLLOWING REASONS,THIS IS BEEING SUBMITTED DUE TO THE FOLLOWING
REASONS-ISSUES,ON OR ABOUT THE DATE OF 10-12-2021,PLAINTIFF RONNIE ALLEN
BELLAMY JR.(53454),WAS INVOLVED IN AN INCIDENT IN THE HALLWAY,OF A-BLDG.
RETURNING FROM THE DINING HALL,WHEN RESIDENT ████,THE ATTACKER CAME FROM
BEHIND PLAINTIFF AND CIRCLED TO THE FRONT OF PLAINTIFF,CAUSEING PLAINTIFF
TO SAY WHATS UP?ALREADY KNOWING DUE TO THE ONGOING ISSUES AND ORDERS FROM
THE ARYAN BROTHERHOOD AND IT "S AFFOLIATES-SUB STRUCTURES,AND THE REASON
FOR THE ATTACK THAT HAPPENED AT THE ELDORADO CORRECTIONAL FACILITY.AND THE
LAWSUIT PENDING IN FEDERAL COURT,IN PART.PENDING IN THE UNITED STATES DIS-
TRICT COURT 444 S.E.QUINCY,490 U.S.COURTHOUSE,TOPEKA,KANSAS 66683.

RESIDENT ████,APPROACHED PLAINTIFF-RESIDENT BELLAMY (53454),FROM BEHIND
AND AS HE PULLED THE MAKESHIFT KNIFE FROM HIS POCKET AND RAISED HIS HANDS
TO ATTACK,IT WAS AN AUTOMATIC RESPONSE FOR PLAINTIFF BELLAMY (53454),TO
THROW HIS HANDS UP TO FIGHT OFF THE ATTACK.AT NO TIME WAS RESIDENT-PLAINT-
IFF BELLAMY (53454),THE AGRESSOR OR ATTACKER-SEE VIDEO.

THESE SECURITY THREAT GROUP MEMBERS AND THE ONES HERE IN THE NEW CORE-CIVIC-
LANSING PRISON,AND IN THE ELDORADO PRISON,THE HUTCHINSON PRISON,IN ALL OF
THE POPULATION UNITS,AND IN THE LONG TERM AND SHORT TERM SEGREGATION UNITS
KNOWN AS RESTRICTED HOUSING,TO INCLUDE THE PROTECTIVE CUSTODY UNIT-RESTRIC-
TED HOUSING UNITS,IN ALL PLACES LISTED AS KNOWN.ARE ALL PART OF THE SAME
GROUP(S),WHO GAVE THE ORDERS AND TRIED TO KILL ME IN MY SLEEP IN THE ELDOR-
ADO CORRECTIONAL FACILITY-THE HUTCHINSON CORRECTIONAL FACILITY-THE CORE-
CIVIC-LANSING CORRECTIONAL FACILITY,MULTIPLE TIMES.

RESIDENT-PLAINTIFF SHOULD NOT BE HOUSED IN THE SAME FACILITY-STATE-AS THE
HIGH RANKING AND DICTATING FACTIONS,THAT ARE IN ALL OF THESE FACILITIES,
TO INCLUDE THOSE HERE AT THE CORE-CIVIC LANSING PRISON,IN SEGEREGATION-
RESTRICTED HOUSING-LONG AND SHORT TERM,AND IN THE OTHER FACILITIES,TO
INCLUDE THE FOLLOWING KNOWN LEADERS.

~~██████████~~,██████████,UNKNOWN RESIDENT DOE-IN
FOOD SERVICE,AND DUE TO THE ALLIANCE OF THE ARYAN BROTHERHOOD AND THE
WELL ESTABLISHED GANG THE SURANOS-MEXICAN GANG-13'S,THE ASATRUS,AND ALL
PARTICIPATING FACTIONS OF WHITE ANTI-SEMITIC GROUPS,AND ALL FOR HIRE OR
PROSPECTING PERSONS.

DUE TO THEIR EXTENSIVE IBFLUENCE-REACH-ABILITY TO ISSUE ORDERS-AND TO
SOLICIT -RECRUIT HELP-UNCHECKED BY THE KDOC-STATE OF KANSAS.WITH THEIR
ABILITY TO UTILIZE BOTH STAFF-RESIDENTS,KNOWN AS INMATES-AND CONTRACT
PERSONELL,DUE TO THE DESIRE TO BE A PART OF A RASCIST-TERRORIST ORGINI-
ZATION,THREAT TO SECURITY AND HOMELAND SECURITY ADVERSARTISTS.IT MAKES THESE
MEN-WOMEN,VERY DANGEROUS,OFTEN GOING UNOTICED OR KNOWN DUE TO THEIR INFL-
UENCE AND ABILITY TO OPERATE FREELY BEHIND CLOSED DOORS,AND THE BLIND EYE
TURNED TO THEM OUT OF FEAR OR DESPERATION OR PROFITABILITY OR THE DESIRE
TO BE A PART OF SUCH A DISTASTEFUL-HATE BASED AND FILLED ORGINIZATION.THE
PLAINTIFF IS REQUESTING RELOCATION IN AN MINIMUM SETTING-WITH A NEW AND
UNKNOWN IDENTITY,FOR PROTECTIVE MEASURES FOR MYSELF AND MY FAMILY.

THE KNOWN LIST OF MEMBERS  AT THE HUTCHINSON CORRECTIONAL FACILITY IS AS
FOLLOWS.~~██████████████████~~,~~██████~~,SUCH AS PLAINTIFF-RESIDENT BELLAMY (53454),TO INCL-
UDE,~~██████~~ A VALIDATED ARYAN BROTHERHOOD FROM SAN QUENTIN,CALIFORNIA,
AND ALL PARTICIPATING FACTIONS IN H.C.F.,WHERE THE GENERATED AND HEAVILY
CIRCULATED PAPAERWORK BEGAN THAT WAS MADE IN THE PRINT SHOP,WITH A SUPER-
IMPOSED RENO COUNTY COURT STAMP THAT HAD NOTHING TO DO WITH THE PAPERWORK
THAT WAS GENERATED BY THE CRIP GANG MEMBER RON C,DUE TO THE INFORMATION
THAT WAS ALLEDGEDLY GIVEN BY A MEMEBER OF THE H.C.F. EAI-SPECIAL AGENT,
KNOWN AS MORA.

THE KNOWN LIST OF MEMBERS AT THE ELDORADO CORRECTIONAL FACILITY IS AS
FOLLOWS.~~████████████████████~~MY CENTRAL MONITOR,PLACED ON THERE BY THEN EAI-DON LANGFORD NOW
THE WARDEN OF LARNED CORRECTIONAL MENTAL HEALTH FACILITY.AND ALL OF THE
UNKNOWN PARTICIPATING FACTIONS.

HOW MANY TIMES IS THE STATE OF KANSAS-KDOC,GOING TO USE ME AS BAIT,AND TRY
TO HAVE ME MURDERED?THAT COUPLED WITH THE ADMISSION OF MULTIPLE STAFF AND
INMATES SUCH AS CO2,MR.WAGONER,THE TWO DAY A WEEK OFFICER IN THE TRU-UNIT
TELLING ME WHILE I WAS ON CRISIS-DUE TO FORCED ,ILLEGAL DOUBLE-BUNKING
SITUATION,WE HAVE HAD SOME INMATES,SHOWUS SOME THINGS WITH THESE DOORS,
THAT MADE US FEEL UNCOMFORTABLE,I.E.THE DOORS CAN BE POPPED BY THE INMATE-
RESIDENT POPULATION FROM THR INSIDE OR OUTSIDE WHEN AND IF NECESSARY.THIS
ALSO VERIFIED BY ALAN WHITE CORE-CIVIC MAINTENANCE,WHO WORKS ON SAID DOORS
A FLAW IN THE CORE-CIVIC PRISONS CONSTRUCTION.

IT IS IMPOSSIBLE FOR THE RESIDENTS AND OR THE STAFF TO FEEL SAFE IN THIS
ENVIRONMENT AT ANY TIME.THE SECURITY THREAT MEMBERS HAVE BEEN EXTENSIVELY
MOVING PEOPLE INTO EVERY UNIT AND AREA EVEN THE PROTECTIVE CUSTODY AND ALL
LONG TERM AND SHORT TERM RESTRICTED-RESTRICTIVE HOUSING UNITS.SO AS TO HAVE
EVERY SPOT COVERED WITH THE RULE THAT ONCE YOU SHIT THE KNIFE OUT THAT YOU
STUCK INSIDE OF YOU AND ARRIVE AT YOUR DESTINATION IT DOES NOT MATTER IF
YOU ARE PLACED IN THE CELL WITH THE INTENDED TARGET OR SOMEONE ELSE,WHEN IT
COMEES OUT YOU USE IT OR YOU ARE NEXTSUCH AS WAS THE REASON FOR MY DEPARTURE
FROM A-1,TO THE CRISIS SITUATION DUE TO THE FORCED THREAT AND DOUBLE-BUNKED

PAGE 3 of 8                    EXHIBIT -1

SITUATION THAT CAUSED THE RESIDENT-.         TO SHUT DOWN AND GO UN-
RESPONSIVE,AND TRY TO PROCESS WHY THIS WAS STILL HAPPENING  WITH THE
STAFF ALL KNOWING THE RESIDENT-PLAINTIFFS SITUATION,ALL ACTING UNDER
COLOR OF LAW,ON DUTY,AND STILL PARTICIPATING IN THE CONSPIRACY TO
COMMITT MURDER BY PLACEING SOMEONE IN THE ROOM WITH RESIDENT-PLAINTIFF,
AND BY PLACEING THE RESIDENT-PLAINTIFF IN SEGREGATION-RESTRICTED-RESTR-
ICTIVE HOUSING,WHERE MULTIPLE LEADING-FOUNDING MEMBERS RESIDE CURRENTLY
THAT ARE ISSUEING ORDERS-DECREES,FROM SAID AREAS,AND FACILITIES.

RESIDENT-PLAINTIFF,BELLAMY (53454),WAS AND IS CLEARLY NOT IN THE WRONG
WITH THE LT.ON DUTY ACTING UNDER COLOR OF LAW (BARNETT),AFTER WATCHING
THE VIDEO,SAYING I-LT.BARNETT(WATCHED THE VIDEO-AND YOU WERE FIGHTING
BACK.AND YOU ARE GOING TO BE DOUBLE-BUNKED,I-LT.BARNETT DONT CARE ABOUT
YOU BEEING SINGLE-CELL TRU-UNIT,(MENTAL HEALTH UNIT,OR WHAT HAPPENED TO
YOU,I-LT.BARNETT,WILL HAVE SST SUIT UP AND FORCE CELL YOU FROM THIS CAGE,
OR I WILL LEAVE YOU IN THE CAGE AND YOU CAN SLEEP ON THE CEMENT FLOOR WITH
NOTHING,BUT MADE IT CLEAR THAT THAT WAS NOT REALLY ONE OF THE OPTIONS.THIS
ALL WITNESSED BY TWO OTHER OFFICERS ON DUTY,ACTING UNDER COLOR OF LAW AS
WELL,AND WITNESSED BY MULTIPLE RESIDENTS-INMATES,IN THE A-1-PROTECTIVE
CUSTODY-RESTRICTED -RESTRICTIVE HOUSING UNIT,ALSO THE SEGREGATION UNIT
FOR THE TRU-MENTAL HEALTH UNIT-SPECIAL NEEDS UNIT.

ANS AS THIS ATTACK WAS TAKING PLACE IN THE HALLWAY OF THE NEW CORE-CIVIC
LANSING PRISON BUILDING ( A ).A MEMBER OF THE SST-SPECIAL RESPONSE-SORT
TEAM THAT RESPONDED PROMPTLY,HIT RESIDENT-PLAINTIFF FROM THE SIDE AND
TOOK RESIDENT-PLAINTIFF OFF HIS FEET AND SLAMMED RESIDENT BELLAMY (53454),
INTO THE CEMENT FLOOR IN EFFECT BATTERING THE RESIDENT-PLAINTIFF FOR NO
REASON AS RESIDENT BELLAMY(53454),WAS NOT ADVANCING,NOT COMBATIVE,BELLAMY,
BELIEVES IT TO HAVE BEEN SST TOWELL,WHO STATED THAT IT WAS ANOTHER MEMBER
AND NOT HER.THIS FURTHER PUT RESIDENT BELLAMY(53454),IN EVEN MORE DANGER-
JEAPORDY,DUE TO THE ATTACKER STRUGGLING AND RIGHT NEXT TO BELLAMY,AND THE
DOORS OPEN TO THE OTHER PODS,AND OTHER SECURITY THREAT GROUP MEMBERS ALL
COMING TO SEE THE EVENT ALREADY PLANNED AND ORDERED AHEAD OF TIME,AND NOW
WITH AN OFFICER ON TOP OF BELLAMY WHO WAS NOT STRUGGLING(SEE VIDEO),AND
DUE TO THE SEVERE HEAD TRAUMA SUSTAINED IN THE ATTEMPTED MURDER ALREADY
AND NO MEDICAL CARE EVER PROVIDED,BELLAMY CAN NOT EVEN DEFEND HIMSELF,AND
WAS OUT OF SORTS AND BREATH WHICH HAD NOT HAPPENED DURING THE ATTACK.

THESE ARE ALL SERIOUS VIOLATIONS OF POLICIES-RULES-LAWS-STANDARDS OF CARE-
AMERICAN CORRECTIONAL ASSOCIATION GUIDELINES-STANDARDS-NCCHC VIOLATIONS.IT
CREATES AND FURTHER CREATED AN ALREADY EGREGIOUS LIFE THREATENING ORDEAL
AND MADE IT EVEN MORE HEINOUS-CALLOUS-EGREGIOUS,FURTHER VIOLATING RESIDENT
BELLAMY(53454) CONSTITUTIONALLY PROTECTED RIGHTS AND VIOLATING THE 8TH,AND
ALL APPLICABLE RIGHTS TO INCLUDE THE RIGHT TO BE FREE FROM CRUEL AND UNU-
SUAL PUNISHMENTS.THIS ALL DUE TO THE STATE OF KANSAS-KDOC-HOMELAND SECURITY,
ALLOWING SECURITY THREAT GROUPS-TERRORIST-TO OPERATE UNCHECKED-REAPING
HAVOC AND SPREADING THEIR ANTI-SEMITISMS,FORCEING THEIR MISGUIDED IDEOLO-
GIES ON OTHERS OUT OF FEAR AND THE DESIRE NOT TO BE THE NEXT TARGET.THERE
IS A SUBSTANIAL AMOUNT OF DOCUMENTED-VALID PAPERWORK TO PROVE WHAT RESIDENT
BELLAMY(53454),IS ALLEGING-CLAIMING,AND ALL PROVABLE,(SEE VIDEO-FILE-AND
ALL STATEMENTS-BODY OF COMPLAINT IN 5:20-CV-03229-TC-ADM,RESIDEN-PLAINTIFF
BELLAMY (53454),1983-CIVIL-CRIMINAL COMPLAINT.

PAGE 4 OF 8

EXHIBIT-1

THIS IS ALSO DUE IN PART TO THE GENERATED AND HEAVILY CIRCULATED PAPER-WORK,FABRICATED WITH ASUPERIMPOSED RENO COUNTY COURT STAMP,MADE IN THE PRINT SHOP IN THE HUTCHINSON CORRECTIONAL FACILITY,FOR THE PURPOSE OF LABELING AND TARGETING RESIDENT-PLAINTIFF BELLAMY,BY THEN CRIP GANG MEMBER KNOWN AS O.G.RON C,FROM WYANDOTTE COUNTY,KANSAS CITY KS,NOW DEAD WITH SURVIVING FAMILY MEMBERS,STILL PUSHING THE ISSUE,THIS ALL DUE TO A MEMBER OF THE EAI-UNIT IN H.C.F.KNOWN AS SPECIAL AGENT MORA,ET.AL.,ALL ALLEGEDLY TELLING CRIP GANG MEMBER,O.G.RON C,THAT IT WAS RESIDENT-PLAIN-TIFF BELLAMY(53454),THAT TOLD ON HIM OVER THE ITEMS FOUND IN HIS LOCKER.

THIS PAPERWORK WAS INTRODUCED INTO THE E.D.C.F. MAINLINE BY THE BLOOD AND ARYAN MEMEBERS WHILE IN C-CELLHOUSE-LONG TERM SEGREGATION,WHILE THE RESIDENT BELLAMY WAS THERE FROM 2012-2016.DUE TO THE STABBING INCIDENT WITH VALIDATED ARYAN BROTHERHOOD MEMBER FROM SAN QUENTIN CALIFORNIA-STEVN SCHLER,BY WAY OF RAP SONGS ON THE TIER ALL WITNESSED BY THE OFFICERS ON DUTY ACTING UNDER COLOR OF LAW,CS1 MASON AND CREW,CS1WEIMERS AND CREW,AND VIDEOS MADE USEING SMUGGLED CELL PHONES FOR THE PURPOSE OF PLACEING THESE EVENTS ON THE INTERNET,AND OFFICERS CS1MASON,AND WEIMERS PARTICIPATING IN THE TARGETING AND COMMENTING AS WELL,DUE TO RESIDENT-PLAINTIFF BELLAMY, NOT RESPONDING BY YELLING OR PARTICIPATING THIS WENT ON EVERYDAY FOR A FEW MONTHS,AT DIFFERENT TIMES TO AMUSE THE OFFICERS AS WELL ONE A FEMALE WHO WAS FIRED FOR TRAFFICKING CELLPHONES AND COMMENTARY.THE UNIT TEAM AT THE TIME A MR.MATTHEW MOORE,NOW DEPUTY WARDEN OF E.D.C.F.MADE HUNDREDS OF COPIES OF THIS PAPERWORK ILLEGALY-UNLAWFULLY,AS DID OFFICERS CS1 WEIMERS AND MASON, FOR THE PURPOSE OF CIRCULATION TO THE STATE OF KANSAS KDOC-POPULATIONS AND TO BE SENT TO OTHER STATES IN CASE OF TRANSFER-INTERSTATE COMPACT,WHAT ALL STATES UNKNOWN BY RESIDENT-PLAINTIFF BELLAMY(53454),IT IS BELIEVED,KANSAS, MISSOURI,COLORADO,ARIZONA,CALIFORNIA,MISSISIPPI,NEW YORK,IDAHO,AND POSSIBLY OTHERS.

THE INVOLVMENT OF STAFF-CONTRACT PERSONELL IS ESPECIALLY EGREGIOUS AND ONLY SHOWS THE LEVEL OF INVOLVMENT IN CRIMINAL ACTIVITY,CONSTITUTIONAL VIOLATIONS, DELIBERATE INDIFFERENCES,CRUEL AND UNUSUAL PUNISHMENTS.AND ALL RECORDINGS CAN BE VERIFIED,AS CAN ALL THE COPIES AND AMOUNTS MADE GENERATED,DUE TO THE IT CONTRACTS FOR THE STATE OF KANSAS,KDOC TO MONITOR ALL COPY MACHINES, INTEL,INTERNET COMMUNICATIONS,CELLPHONES.

IT IS DOCUMENTED BY THE UNIVERSITY OF KANSAS HELD CONTRACT THE MENTAL HEALTH BHP-IRU UNIT-UNIT TEAMS,DRAFTED A TRANSFER SUMMARY,SENDING RESIDENT-PLAINTIFF BELLAMY HERE FOR THE PURPOSE OF SINGLE CELL ONLY NEVER TO BE DOUBLE BUKED,AND FOR THE PURPOSE OF PLACEING BELLAMY(53454),IN A PRIVATE INDUSTRY SETTING IN PREPARATION FOR RELEASE,AND TO OBTAIN MINIMUM CUSTODY WITHIN 6-MOTHS OF BEEING HERE,SPEARHEADED BY UNIT TEAM MR.MALTY MARTIN, BHP'S-MCLANE-FLEEKER-HOWLAND-DORITY-GERMANE-UNIT TEAM SUPERVISOR LEWIS-ADMINISTARTION OF E.D.C.F.WITH APPROVAL FROM TOPEKA,AND KU-BEHAVIORAL HEALTH SERVICES-WELLNESS PLANNING-REENTRY INTO THE COMMUNITY.

ON 10-26-2021,THE D.R. WAS DISMISSED BY HEARING OFFICER BEEING FAIR AND IMPARTIAL FOLLOWING THE RULES AND PROCEDURAL AND DUE PROCESS PROTECTIONS AFFORDED AT ALL HEARINGS CONSTITUTIONALLY PROTECTED,AFTER WATCHING THE VIDEO,THE SAME VIDEO EAI-LT.BARNETT WATCHED NIGHT OF ATTACK.UPON RETURN FROM THE INFIRMARY AND THE CRISIS SITUATION  WITH RESIDENT-PLAINTIFF BELLAMY AND BEEING RETURNED TO THE A-8-TRU UNIT-MENTAL HEALTH UNIT,BELLAMY HAD AN OPPORUNITY TO SPEAK WITH UNIT TEAM MANAGER PARKS,THANKING HIM FOR BEEING ABLE TO RETURN TO THE UNIT AND SINGLE CELL-OCCUPANCY TO WHICH UTM PARKS,

PAGE 5 OF 8          EXHIBIT-1

STATED I DIDN'T HAVE ANY CHOICE BUT I WILL DOUBLE BUNK YOU IF I NEED THE
SPACE OR FEEL LIKE IT.VIOLTING POLICY-ORDERS-LAW-CONSTITUTIONALLY PROTEC-
TED RIGHTS OF RESIDENT-PLAINTIFF BELLAMY(53454),TO BE FREE FROM CRUEL AND
UNUSUAL PUNISHMENTS,LIES,CONSPIRACY TO COMMITT MURDER,ATTEMPTS TO ASASSINATE
BELLAMY BY USING SOMEONE TO ATTACK HIM AWAKE OR ASLEEP,DURING A PERIOD OF
VULNERABILITY.AS SLEEP IS ARECOGNIZED VULNERABLE STATE,AND A NECESSITY,AND
VITAL ONES MENTAL AND PHYSICAL HEALTH AND WELL BEEING,AS IS SAFETY AND
COGNIZANCE-COHERENCY.

FOR UTM MR.PARKS OR ANY STAFF TO DEAL DISRESPECTFULLY WITH RESIDENT-PLAIN-
TIFF BELLAMY OR HIS CONCERNED FAMILY MEMBERS CALLING THE FACILITY TO TRY
AND HELP,IS A VIOLATION OF LAW-POLICIES INCLUDING IMPP 02-118D,IV RULES OF
CONDUCT B.CONDUCT AND DEMEANOR(1.),(3.),(e.),)4),(S.),ALSO IN VIOLATION OF
ATTACHMENT -A,CODE OF ETHICS CONTRACT,ATTACHMENT -B,RULES OF ACKNOWLEDGE-
MENTS.REFUSING TO PROVIDE RESIDENT-PLAINTIFF BELLAMY (53454),WITH THE PROP-
ER STANDARD OF CARE NEEDEDDUE TO THE PERMANENT AND IRREVERSIBLE DAMAGES
INFLICTED UPON AND BECAUSE OF THE MULTIPLE ATTEMPTS OF MURDER ON BELLAMY,
REPEATEDLYAT ALL FACILITIES RESIDENT-PLAINTIFF BELLAMY HAS EVER BEEN-FOR
EXAMPLE ALL FACILITIES LISTED TO INCLUDE THE ELLSWORTH CORRECTIONAL FACILITY.

SEE IMPP 10-121D,FOR VERIFICATION THAT THE UNIVERSITY OF KANSAS,HOLDS ALL
MEDICAL AND EXPIERIMENTAL CONTRACTS FOR THE STATE OF KANSAS-KDOC,TO WHICH
RESIDENT-PLAINTIFF BELLAMY(53454)REFUSES TO WILLINGLY PARTICIPATE.


RESIDENT BELLAMY IS REQUESTING RELOCATION TO AN UNDISCLOSED ENVIRONMENT,
FOR THE PURPOSE OF SUSTAINING HIS LIFE AND THE LIVES OF HIS FAMILY,WITH
A NEW IDENTITY ALSO UNDISLOSED TO ANYONE UNNECESSARY TO ENSURING THE
SAFETY OF ALL INVOLVED,IN A MINIMUM OR PRIVATE SETTING FOR ALL OF US,TO
INCLUDE THE IMMEDIATE RELEASE FROM PRISON,DUE TO SENTENCE BEEING VACATED
IN 1991,AND RESIDENT-PLAINTIFF NEVER RELEASED.


                              RESPECTFULLY SUBMITTED,
                              RONNIE ALLEN BELLAMY JR.(53454)
                              L.C.F. P.O. BOX 2
                              LANSING,KANSAS 66043

PAGE 6 OF 8

# KANSAS DEPARTMENT OF CORRECTIONS
## ADMINISTRATIVE SEGREGATION REVIEW (PURSUANT TO IMPP 20-105/106)

A8-223

|  | C-SEG |  |
|---|---|---|
| Initial | XXWeekly | Monthly |

Name: Bellamy, Ronnie          Number: 53454          Date: 10/22/2021

Date placed in segregation: 10/12/2021          Recommended date of release: ASAP

Did inmate appear before board? NO

*EXHIBIT-1*

1. Present Status: <u>IMPP 20-104 (4) Pre-Hearing Detention</u>

2. Return to General Population?
   XXYes                    No

3. Transfer to another Kansas facility or another State or Federal facility?
   Yes                    XXNo

4. Medical or Psychological intervention?
   Yes                    XXNo

5. Continue XX          Modify          program or treatment status?

6. Inmate informed of right to submit written request for release to board?
   XXYes                    No

7. While in segregation inmate's behavior has been satisfactory?
   XXYes                    No

8. The placement was legal and proper?
   XXYes                    No

9. A pre-segregation placement hearing was held?
   XXYes                    No

10. Board Comments: Offender was placed prehearing detention for fighting. Went on CL on 10.13.2021 to the clinic. The Restrictive Housing Review Board agreed he could return to TRU Unit at this time.

Approved: _____   Disapproved: _____   _____
                                          EAI Staff
Approved: _____   Disapproved: _____   _____
                                          Clinical Staff
Approved: _____   Disapproved: _____   _____
                                          Security Staff
Approved: _____   Disapproved: _____   _____
                                          Chairperson
Approved: _____   Disapproved: _____   _____
                                          Warden

Inmate acknowledgement
I received a copy of this review on: _____ 20____ At _____

_____
Inmate signature and number

_____
Signature and Title of Staff

*PAGE 7 OF 8*

Bellamy, Ronnie     53454   1464          **A1118**

☐ Witness(es) Sworn In/Affirmed   _____   _____

_____   _____   _____

Witness(es) Testimony / Cross Examination  (Attach Testimony)

Closing Statement(s): (Attach Arguments)

If applicable include inmate's testimony/ arguments on restitution     *EXHIBIT~1*

Sanction(s): *301: DM*

Reason for Sanctions: *Due to I/M being attacked and defending himself while trying to get away.*

Disposition of Evidence: *N/A*

☐ Inmate advised of right to Appeal,  Have Inmate Initial _____

HEARING OFFICER SIGNATURE _____     DATE *10/26/21*

FINAL ACTION BY FACILITY WARDEN:
☒ APPROVED
☐ REINSTATE DISMISSED CHARGES; REMAND NEW HEARING
☐ AMEND THE CHARGE
☐ DISAPPROVE/DISMISS
☐ REDUCE THE PENALTY
☐ SUSPEND ALL OR PART OF SENTENCE
☐ REMAND NEW HEARING
☐ CLARIFICATION OF RECORD

☐ REDUCE TO SUMMARY JUDGMENT
- restriction from privileges up to 10 days
- fine not exceed $10.00
- extra work w/o incentive pay for no more
      than 2 hrs/day no more than 5 days
- work w/o incentive pay not to exceed 5 days
- restitution not less than $3.00
      or more than $20.00

Comments: _____

_____ WARDEN/DESIGNEE SIGNATURE     *11/3/21* DATE

I received a Copy of the Hearing Record and understand I have 15 days to Appeal this decision.

*Ronnie Bellamy Jr* _____
INMATE SIGNATURE          DATE

I served a copy of the Hearing Record

*CCI Spann* _____     *11/4/21*
STAFF SIGNATURE          DATE

Technical and clerical errors in the writing and/or processing of the Disciplinary Report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to prove. Pursuit to K.A.R 44-13-707. Harmless error; Plain error.

*vuamy*   PAGE 8 OF 8

EXHIBIT-1

6/9/20-Current

**Assessment/Diagnosis**

Behavioral Health Diagnosis

| # | Dx (Code), Status, Side, Site | Impression/Differential Dx |
|---|---|---|
| 1 | Delusional disorder (F22) | |
| 2 | Unspecified Personality Disorder (F60.9) | |

7/10/19

**Assessment/Diagnosis**

Behavioral Health Diagnosis

| # | Dx (Code), Status, Side, Site | Impression/Differential Dx |
|---|---|---|
| 1 | Personality disorder, unspecified (F60.9) | |
| 2 | Adjustment disorder with anxiety (F43.22) | |

MENTAL HEALTH CARE IS SUBJECT TO THE SAME CONSTITUTIONAL STANDARD AS OTHER FORMS OF PRISON MEDICAL CARE:DELIBERATE INDIFFERENCE TO SERIOUS MENTAL HEALTH NEEDS VIOLATES THE EIGHTH AMENDMENT.

GATES V.COOK,376 F.3d 323,343 (5th Cir.2004)
DOLOHITE V.MAUGHON BY AND THROUGH VIDEON,74 F.3d 1027,1042-43(11th Cir.1996)
SMITH V.JENKINS,919 F.2d 90,92-93 (8th Cir.1990)
LANGLEY V.COUGHLIN,888 F.2d 252,254 (2d Cir.1989)

COURTS HAVE CITED AN EXPERTS DEFINITION OF A SERIOUS MENTAL ILLNESS AS ONE THAT HAS CAUSED SIGNIFICANT DISRUPTION IN AN INMATES EVERYDAY LIFE AND WHICH PREVENTS HIS FUNCTIONING IN THE GENERAL POPULATION WITHOUT DISTURBING OR ENDANGERING OTHERS OR HIMSELF,...ACUTE OR SERIOUS DEPRESSION CONSTITUTES A SERIOUS MEDICAL NEED,AS ARE THREATS OR RISKS OF SUICIDE.COURTS IN ADDITION HAVE HELD OR ASSUMED THAT MANIC-DEPRESSIVE,BI-POLAR,EXCESSIVE-COMPULSIVE DISORDERS,POST TRAUMATIC STRESS DISORDER ARE SERIOUS NEEDS.

TILLERY V.OWENS,719 F.SUPP.1256,1286 (W.D.Pa.1989);aff'd,907 F.2d 418 (3d Cir. 1990)
PARTEE V.LANE,528 F.SUPP.1254,1261 (N.D.Ill.1981)
PETERKIN V.JEFFES,661 F.SUPP. 895,917,923 (E.D.Pa. 1987)
CONN V.CITY OF RENO,572 F.3d 1047,1055 (9th Cir.2009)

MULTIPLE COURTS HAVE FOUND THE CONFINEMENT OF MENTALLY ILL PRISONERS IN SEGRE-GATION TO BE UNCONSTITUTIONAL,NOT JUST IN ITS EFFECTS ON THOSE PRISONERS BUT ALSO INSOFAR AS IT EXPOSES OTHER INMATES TO DANGEROUS OR DERANGED BEHAVIOR.THE EXTREMES OF ISOLATION,IN THE FORM OF SOLITARY CONFINEMENT BEHIND SOLID OR BOX-CAR DOORS HAVE BEEN HELD UNCONSTITUTIONAL.
HOPTOWIT V.RAY,682 F.2d 1237,1257-58 (9th Cir.1982)
LAMAIRE V.MAASS,745 F.SUPP.623,636 (D.Or.1990)
GATES V.COOK,376 F.3d 323,342-43 (5th Cir.2004)
CORTES-QUINONES V.JIMINEZ-NETTLESHIP,842 F.2d 556,560-61 (1st Cir.1988)

PAGE 5 OF 5   AS ATTACHMENT

A-8 - 223

## AFFIDAVIT OF CUSTODIAN OF BUSINESS RECORDS

State of KANSAS )
) ss:
County of Leavenworth )

*EXHIBIT - 1*

I, ___R. Arnold___, being first duly sworn, on oath, depose and say that:

(1)    I am a duly authorized custodian of the business records of the Kansas Department of Correction, and have the authority to certify those records.

(2)    The copy of the record attached to this affidavit is a true copy of the record created and maintained by the Kansas Department of Corrections known formally as the Inmate Data Summary, or informally as the "face sheet," in its current form, for   Bellamy, Ronnie Jr #53454

(3)    The record was prepared by the personnel or staff of the Kansas Department of Corrections, or persons acting under their control, in the regular course of the business of the Department at or about the time of the act, condition or event recorded.

(4)    FURTHER, the affiant sayeth naught.

_____
(Signature of Custodian)

Subscribed and sworn to before the undersigned on _November 9th_, 20_24_.

_____
(Notary Public)

My Appointment Expires: _____4/22/24_____

ANGELA MILLEN
Notary Public - State of Kansas
My Appt. Expires 4/22/24

## Janet DePinto [KDOC]

A1-219

| | |
|---|---|
| **From:** | KDOC_Court_File_LCF |
| **Sent:** | Monday, April 4, 2022 11:57 AM |
| **To:** | Janet DePinto [KDOC]; Colette Winkelbauer [KDOC] |
| **Subject:** | FW: Activity in Case 5:20-cv-03229-DDC-ADM Bellamy (ID 53454) v. Cline et al Order on Motion for Reconsideration |

*EXHIBIT-1*

**From:** KSD_CMECF@ksd.uscourts.gov <KSD_CMECF@ksd.uscourts.gov>
**Sent:** Monday, April 4, 2022 11:55:31 AM (UTC-06:00) Central Time (US & Canada)
**To:** ksd_nef@ksd.uscourts.gov <ksd_nef@ksd.uscourts.gov>
**Subject:** Activity in Case 5:20-cv-03229-DDC-ADM Bellamy (ID 53454) v. Cline et al Order on Motion for Reconsideration

*EXTERNAL*: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* There is no charge for viewing opinions.**

### U.S. District Court

### DISTRICT OF KANSAS

## Notice of Electronic Filing

The following transaction was entered on 4/4/2022 at 11:55 AM CDT and filed on 4/4/2022
**Case Name:**       Bellamy (ID 53454) v. Cline et al
**Case Number:**    5:20-cv-03229-DDC-ADM
**Filer:**
**WARNING: CASE CLOSED on 03/01/2022**
**Document Number:** 66

**Docket Text:**
**MEMORANDUM AND ORDER denying [64] MOTION for Reconsideration filed by Ronnie Allen Bellamy, Jr. Signed by District Judge Daniel D. Crabtree on 4/4/2022. Mailed to pro se party Ronnie Allen Bellamy, Jr. by regular mail. (kas)**


**5:20-cv-03229-DDC-ADM Notice has been electronically mailed to:**

Dennis D. Depew     dennis.depew@ag.ks.gov, chelsea.zamora@ag.ks.gov, connie.deckard@ag.ks.gov, donna.wells@ag.ks.gov

Michael Joseph Duenes     michael.duenes@ag.ks.gov, chelsea.zamora@ag.ks.gov, connie.deckard@ag.ks.gov, donna.wells@ag.ks.gov

Ronnie Allen Bellamy, Jr     KDOC_court_file_lcf@ks.gov

1

**5:20-cv-03229-DDC-ADM Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

*EXHIBIT-1*

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1028492125 [Date=4/4/2022] [FileNumber=5550908-0]
[67d8a2646db44c61dd510b66c8f79c1872c02a421d5f87f59e095b74c6903b8bc91a
ca738394cd65387d2933fc925c4d4a01bb0bbb28495ccd3350d5e7f7af46]]

2

EXHIBIT-1

UNITED STATES DISTRICT COURT
FOR THE STATE OF KANSAS

RONNIE A. BELLAMY JR.

V.

CASE NO. 5:20-CV-03229-SAC

SAM CLINE et. al.,
STATE OF KANSAS et. al.,

MOTION FOR PRELIMINARY INJUNCTION-
INJUNCTIVE RELIEF

THE STATE OF MISSOURI IN OCTOBER 31st 1984, ARRESTED ME
AND NEVER MIRANDIZED ME - Illegaly CONVICTED ME AND
SENTENCED ME TO 10 yrs - 5yrs RAN CONCURRENT 10 year CONTRO-
lling SENTENCE IN JUNE 1985, AS SOON AS I TURNED 16 yrs
OF AGE IMMEDIATELY SENTENCED ME ILLEGALY. IN 1991 THE
STATE OF KANSAS, IN MAY I BELIEVE. ILLEGALY, CONVICTED ME
AND SENTENCED ME TO 3-15-LIFE SENTENCES, 4-5-20 year
SENTENCES, AND 1-1-5 year SENTENCE. At SOME POINT TOPEKA
AGGRAGATED MY SENTENCE to BECOME 66-LIFE, INDETER-
MINATE. IN SEPTEMBER 11th 1991, MY SENTENCE WAS
VACATED. AND THE STATE OF KANSAS LEFT ME IN PRISON
AND COST ME EVERYTHING.

RESPECTFULLY SUBMITTED,
Ron Bellamy

RONNIE A. BELLAMY JR.

PMC 18-102

PMC

## KANSAS DEPARTMENT OF CORRECTIONS

| | | SECTION NUMBER | PAGE NUMBER |
|---|---|---|---|
| **DOC** El Dorado Correctional Facility **GENERAL ORDERS** | | 18-102 | 1 of 2 |
| | | SUBJECT: Program Management Committee | |

| Approved By: SIGNATURE ON FILE Warden | Original Date Issued: | 01-22-1992 |
|---|---|---|
| | Current Amendment Effective: | 11-21-2007 |
| | Replaces Amendment Issued: | 09-30-1997 |

### POLICY

To identify EDCF staff assigned to the Program Management Committee to review and approve or deny proposed classification exceptions, amendments to inmate program agreements, and transfer requests/recommendations in accordance with IMPP 11-106.

### DEFINITIONS

None

### PROCEDURES

I.  **Program Management Committee Members**

   A.  The Program Management Committee (PMC) shall consist of the Warden, DWO, DWP, DWSS, Chief of Security, Classification Administrator, Facility Specialist, RDU Administrator, and the Satellite Unit Administrator.

   B.  The Unit Team Manager shall make available, when requested, supporting documentation when submitting recommendations to the PMC.

   C.  The PMC may approve or disapprove the recommendations of the Unit Team or the Segregation Review Board, and may make alternate recommendations. Decisions shall be documented and clearly stated.

II.  **Appeal of Classification Decisions**

   A.  Within 72 hours after receiving a PMC decision, an inmate may appeal the decision to the warden. The inmate's request shall be submitted through their unit team on a Form 9 for review.

      1.  If the warden did not participate in the PMC decision, the warden shall review the decision and the inmate's written appeal. The warden shall return a written response to the inmate's appeal within fifteen (15) working days of the warden's receipt of the appeal.

      2.  If the warden was a participant in the PMC decision, the inmate's appeal shall be forwarded to the Deputy Secretary of Facility Management's designee for review. The reviewer shall return a written

response to the appeal within fifteen (15) working days of the receipt of the appeal.

   B.  The decision of the warden or Deputy Secretary of Facility Management's designee shall be final.

**Note:**  The general orders set forth herein are intended to establish directives and guidelines for staff, offenders and those entities who are contractually bound to adhere to them. They are not intended to establish State created liberty interests for employees, offenders or an independent duty owed by the Department of Corrections to either employees, offenders or third parties. This General Order is not intended to establish or create new constitutional rights or to enlarge or expand upon existing constitutional rights or duties.

Authority to override policy as written in this General Order may only be authorized in writing by the Warden. In an emergency, the Incident Commander may temporarily suspend the General Order for the duration of the time to restore order to the facility and it shall be logged in the emergency log.

### REPORTS REQUIRED

None

### REFERENCES

KAR  44-5-104, 44-5-105
IMPP  11-106

### ATTACHMENTS

None

EXHIBIT-1

G.O. 14-106

EXHIBIT-1

G.O. 14-106 RIGHTS @ EXIGENCY VAGUE

## KANSAS DEPARTMENT OF CORRECTIONS

| | El Dorado Correctional Facility | SECTION NUMBER | PAGE NUMBER |
|---|---|---|---|
| DOC | | 14-106 | 1 of 2 |
| | **G**eneral **O**rders | SUBJECT:  Inmate Rights | |

| Approved By: | | Original Date Issued: | 02-05-1993 |
|---|---|---|---|
| SIGNATURE ON FILE | Warden | Current Amendment Effective: | 01-04-2010 |
| | | Replaces Amendment Issued: | 10-30-1998 |

### POLICY

Inmates shall not be denied access to any program, service, job assignment, or housing unit based solely on the basis of race, religion, national origin, sex, disability, or political views.

### DEFINITIONS

None

### PROCEDURES

**I.  Access to Programs and Services**

   A.  Inmates shall have certain rights relative to their living conditions and confinement which shall include.

      1.  Living unit assignments specific to an inmate's classification and availability within the facility.

      2.  Living conditions that comply with local, state, and federal fire, health, and safety laws and regulations.

      3.  Purposeful and respectful interactions with employees.

      4.  Participation in the classification process to allow inmates to have input in program planning.

      5.  Personal grooming and appearance choices in accordance with facility and departmental policy.

   C.  Access to routine and emergency medical, dental, and mental health services provided by persons with appropriate training and under the supervision of a licensed practitioner in accordance with the contracted health care provider's policies.

**II.  Personal Treatment**

   A.  Staff shall not subject inmates to.

      1.  Corporal punishment.

      2.  Deliberate or unnecessary personal injury which exceeds the minimum force allowed when required.

      3.  Personal abuse and verbal harassment to include intentional damage to personal property.

   B.  Policies shall be applied fairly and consistently with the focus to address poor behavior in a positive and proactive manner.

**Note:**  The general orders set forth herein are intended to establish directives and guidelines for staff, offenders and those entities who are contractually bound to adhere to them.  They are not intended to establish State created liberty interests for employees, offenders or an independent duty owed by the Department of Corrections to either employees, offenders or third parties.  This General Order is not intended to establish or create new constitutional rights to or enlarge or expand upon existing constitutional rights or duties.

Authority to override policy as written in this General Order may only be authorized in writing by the Warden.  In an emergency, the Incident Commander may temporarily suspend the General Order for the duration of the time to restore order to the facility and it shall be logged in the emergency log.

### REPORTS REQUIRED

None

### REFERENCES

| | |
|---|---|
| KAR | 44-5-106, 44-5-112, 44-7-113, 44-12-209, 44-12-210, 44-12-106, 44-12-601 |
| IMPP | Chapter 10, Programs and Services Section |
| EDCF General Order | 12-101, 12-102, 13-101, 16-107, 16-102, 21-101, 22-101 |

### ATTACHMENTS

G.O. 13-102

EXHIBIT-1  DOUBLE SIDED

*G.O. 13-102 EMERGENCY NOTICE INFO/DEATH-*

## KANSAS DEPARTMENT OF CORRECTIONS

| | | SECTION NUMBER | PAGE NUMBER |
|---|---|---|---|
| **DOC** | El Dorado Correctional Facility | 13-102 | 1 of 3 |
| | **G**ENERAL **O**RDERS | SUBJECT: Emergency Notifications in the Event of the Death or Hospitalization of an Inmate | |

| Approved By: | Original Date Issued: | 03-14-1995 |
|---|---|---|
| SIGNATURE ON FILE | Current Amendment Effective: | 01-25-2016 |
| Warden | Replaces Amendment Issued: | 11-16-2007 |

### POLICY

The shift supervisor shall be responsible for notifying the warden or the facility duty officer without delay of a significant injury, hospitalization, or death of an inmate.

If an inmate dies or is hospitalized as a result of a serious injury or illness, the EDCF Chaplains shall notify the inmate's designated contact person with information regarding the inmate's condition and other relevant data in accordance with IMPP 10-123. In the event the Chaplains are not available, the inmate's Unit Manager shall make the notification.

In the event of an inmate's death, the notification of appropriate authorities per IMPP 01-114 shall be required in addition to notifying the inmate's designated contact person.

### DEFINITIONS

Designated Individual: The person, identified by the inmate, to be notified in the event the inmate requires placement in a hospital for any serious illness (including mental illness), injury, or in the event of the inmate's death.

Hospitalized/Hospitalization: Placement of an inmate in a public or private medical care facility outside of the facility, for a period of 24 hours or longer, for a serious or critical condition. Hospitalized does NOT refer to the placement of an inmate in an infirmary operated by, or on the grounds of, a State correctional facility or placement of an inmate in programs operated by, or on the grounds of, Larned State Hospital.

### PROCEDURES

I. Notification Procedures

None

### REFERENCES

| KSA | 65-904 (b) |
|---|---|
| IMPP | 01-113, 01-114, 10-123 |
| EDCF GO | 01-106 |

### ATTACHMENTS

Emergency Notification Form(s) Effective 1-12-16

2. Emergency information forms shall be maintained in the inmate's unit team file with the most current form filed on top of previous Emergency Information forms, which shall be retained in the file and marked or stamped "VOID".

C. The person making the notification shall document the contact using an Emergency Notification Form (Attachment B, IMPP 10-123). The original copy of the Emergency Notification form shall be placed in the inmate's unit team file with a copy sent to the records department for filing.

D. When attempts to notify an inmate's designated contact person by telephone are not successful, a letter shall be sent by certified mail within 72 hours to the most recent address of the designated individual in accordance with IMPP 10-123.

II. Facility and Central Office Notifications

A. In accordance with IMPP 01-113, the shift supervisor shall be responsible for notifying the warden or the facility duty officer without delay of a significant injury, hospitalization, or death of an inmate.

B. In accordance with EDCF General Order 01-106, if the nature of the incident justifies notification of additional management staff to include Central Office staff, the warden or the facility duty officer shall be responsible initiating such notifications.

III. Disposition of a Deceased Inmate's Body and Personal Property

A. The Deputy Warden of Programs shall work with the business office, the chaplains, and the property officer to ensure a deceased inmate's body and personal property to include money are handled in accordance with IMPP 01-114.

1. Unit team staff shall assist inmates in completing a Disposition of Deceased Inmate Body Form (Attachment A, IMPP 01-114) and maintaining updated copies in the inmate's permanent record.

2. Inmates shall be informed that if they decline to complete the above listed form, the disposition of their remains shall be in compliance with the provisions of KSA 65-904 (b).

Note: The general orders set forth herein are intended to establish directives and guidelines for staff, offenders and those entities who are contractually bound to adhere to them. They are not intended to establish State created liberty interests for employees, or offenders or an independent duty owed by the Department of Corrections to either employees, offenders or third parties. Similarly, those references to the standards of various accrediting entities as may be contained within this document are included solely to manifest the commonality of purpose and direction as shared by the content of the document and the content of the referenced standards. Any such reference within this document neither imply accredited status by the facility or organizational unit, nor indicate compliance with the

---

### KANSAS DEPARTMENT OF CORRECTIONS

### EMERGENCY INFORMATION FORM

_____
Date

Offender Name _____ KDOC # _____

Person to notify in case of offender death or hospitalization due to serious illness/injury
_____

Relationship to Offender (For Juveniles must be Parent or Legal Guardian)
_____

Address
_____

City, State, Zip
_____

_____   E-mail _____   Address _____

Phone Number(s) including Area Code

Other _____ Relevant _____ Information: _____

_____
_____

First alternate person to notify in case of offender death or hospitalization due to serious illness/injury

_____

Relationship to Offender
_____

Address
_____

09-109  INMATE CONTROL OF INMATES

**KANSAS DEPARTMENT OF CORRECTIONS**

| | El Dorado Correctional Facility | SECTION NUMBER | PAGE NUMBER |
|---|---|---|---|
| DOC | | 09-109 | 1 of 2 |
| | GENERAL ORDERS | SUBJECT:  Inmate Control Over Other Inmates | |

| Approved By: | Original Date Issued: | 02-25-1991 |
|---|---|---|
| | Current Amendment Effective: | 07-09-2012 |
| Warden James Heimgartner | Replaces Amendment Issued: | 12-12-2007 |

**POLICY**

Each inmate shall be subjected to controls of the correctional system that are authorized by law and administered by employees of the KDOC.  Such controls shall never be administered by inmates in order to ensure all inmates receive equal treatment and are afforded equal opportunity to participate in programs.

**DEFINITIONS**

Direct Supervision:  Observation of an inmate or a group of inmates by staff with sufficient frequency to assure continuous accountability for movements and activities of the inmate or inmates.

**PROCEDURES**

I.  Inmate Control

  A.  No inmate or group of inmates shall be given control over any other inmate or group of inmates.

  1.  With the exception of the infirmary custodians and helpers, inmates shall not be allowed to clean another inmate's cell or cubicle without direct supervision.

  2.  Inmates shall not be allowed to pack-out another inmate's property.

II.  Control of Information

  A.  No inmate shall be allowed access to information that could be used to control another inmate or reveal security operations of the facility.

  1.  Internal Management Policies and Procedures and Facility General Orders marked "Staff Read Only", Post Orders, Emergency Plans, and any other materials relating to the security operations of the facility shall not be disclosed to inmates.

  2.  Records, reports, and any other written or verbal information concerning an inmate shall not be disclosed to any other inmates.

  a.  This shall not prohibit the discussion of learning assignments, test results, and progress reports during mental health groups as part of the group experience.

  b.  Once an inmate's participation in a group ceases, either by the inmate's request or removal by staff, the sharing of information about them shall cease.

III.  Inmate Self-Help Programs

  A.  The provisions of this General Order shall not be construed to prohibit inmate peer training assistants or the election of inmate leadership in authorized inmate self-help programs or religious groups supervised by appropriate staff.

**Note:**  The general orders set forth herein are intended to establish directives and guidelines for staff, offenders and those entities who are contractually bound to adhere to them.  They are not intended to establish State created liberty interests for employees, offenders or an independent duty owed by the Department of Corrections to either employees, offenders or third parties.  This General Order is not intended to establish or create new constitutional rights or to enlarge or expand upon existing constitutional rights or duties.

Authority to override policy as written in this General Order may only be authorized in writing by the Warden.  In an emergency, the Incident Commander may temporarily suspend the General Order for the duration of the time to restore order to the facility and it shall be logged in the emergency log.

**REPORTS REQUIRED**

None

EXHIBIT-1

**REFERENCES**

None

**ATTACHMENTS**

None

G.O. COMPLIANCE    01-102



EXHIBIT-1

## KANSAS DEPARTMENT OF CORRECTIONS

| | El Dorado Correctional Facility | SECTION NUMBER | PAGE NUMBER |
|---|---|---|---|
| DOC | | 01-102 | 1 of 3 |
| | **G**ENERAL **O**RDERS | SUBJECT: Facility General Orders | |

| Approved By: | | Original Date Issued: | 08-21-1991 |
|---|---|---|---|
| Warden/Superintendent | | Current Amendment Effective: | 05-29-2015 |
| | | Replaces Amendment Issued: | 03-12-2012 |

### POLICY

Unless an IMPP specifically prohibits the issuance of a General Order on a particular subject, the Warden may issue General Orders on any subject for purposes of establishing facility procedure and practice.

General Orders shall be consistent with applicable federal and State statutes, departmental regulations (KARs), policies and procedures (IMPPs), and similar documents of a regulatory nature.

General Orders shall be review annually.  They shall be made accessible to all employees and to the public, and, as appropriate for security and control, to contract personnel, volunteers, and when appropriate, to inmates.

### DEFINITIONS

General Orders:  General Orders are written manifestations of facility policies and procedures, and, as directives signed by the Warden, they establish policy or effect procedures.  Routine matters concerning daily operations within a single department and not affecting other departments shall not be designated as General Orders.

### PROCEDURES

I.  **Development and Revisions of General Orders**

    A.  General Orders shall be developed in accordance with IMPP 01-127D.

    B.  The Warden shall establish a General Order review committee who shall meet at least annually for the purpose of:

        1.  Evaluating current General Orders and their compliance with policy requirements.

        2.  Considering proposals for revisions, deletions and/or additions to current General Orders.

        3.  Making recommendations regarding the organization or content of General Orders.

    C.  This committee shall be overseen by the EDCF Policy Compliance Officer who shall be responsible for:

        1.  Scheduling and documenting the meetings.

IV.  **Facility Operations Compliance**

    A.  Division Heads and designees of the Warden shall review General Orders and other specific policies applicable to their assigned areas.

        1.  They shall conduct periodical inspections to ensure operational compliance with all departmental and facility policies and directives.

        2.  When problems or concerns are observed, written corrective action plans shall be developed and submitted to the Compliance Officer to remedy shortcomings including timelines for compliance.

**Note:**  The General Orders set forth herein are intended to establish directives and guidelines for staff, offenders and those entities who are contractually bound to adhere to them.  They are not intended to establish State created liberty interests for employees, or offenders or an independent duty owed by the Department of Corrections to employees, offenders or third parties.  Similarly, those references to the standards of various accrediting entities as may be contained within this document are included solely to manifest the commonality of purpose and direction as shared by the content of the document and the content of the referenced standards.  Any such reference within this document neither imply accredited status by the facility or organizational unit, nor indicate compliance with the stands so cited.  The policy and procedures contained within this General Order are intended to be compliant with all applicable statues and/or regulatory requirements of the Federal Government and the state of Kansas.  This General Order is not intended to establish or create new constitutional rights or to enlarge or expand upon existing constitutional rights or duties.

Authority to override policy as written in this General Order may only be authorized in writing by the Warden.  In an emergency, the Incident Commander may temporarily suspend the General Order for the duration of the time to restore order to the facility and it shall be logged in the emergency log.

### REPORTS REQUIRED

None

### REFERENCES

KSA    75-5256, 75-5252
IMPP   01-127D

### ATTACHMENTS

None

G.O. 01-101

G.O. 01-101 K.O.R.A-F.O.I.A Info.

EXHIBIT-1

## KANSAS DEPARTMENT OF CORRECTIONS

| El Dorado Correctional Facility | SECTION NUMBER | PAGE NUMBER |
|---|---|---|
| | 01-101 | 1 of 2 |
| **G**ENERAL **O**RDERS | SUBJECT: Responding to Governmental Inquiries | |

| Approved By: | Original Date Issued: | 08-21-1991 |
|---|---|---|
| | Current Amendment Effective: | 03-12-2012 |
| Warden James Heimgartner | Replaces Amendment Issued: | 07-13-2009 |

### POLICY

The El Dorado Correctional Facility shall respond to requests for information from Federal, State, and local governments in accordance with IMPP 05-101.

The Compliance Officer shall be designated as the facility Public Information Officer.  The Compliance Officer, with the approval of the Warden shall be responsible for selecting an alternate Public Information office.

### DEFINITIONS

Freedom of Information Officer:  An employee appointed by the Secretary of Corrections and responsible for: preparing education  materials, brochures, and information concerning the Open Records Act; responding to inquiries relating to the Open Records Act; and assisting with resolving disputes relating to Open Records Act requests.

Public Information Manager:  The Central Office designee responsible for the overall administration of the KDOC's public information program.

Public Information Officer:  An individual assigned the responsibility to coordinate a public information program of a facility or parole region.

### PROCEDURES

A.  The Warden or the EDCF Public Information Officer shall respond to all requests for information from Federal, State, and local legislatures or agencies within three working days of receipt of the request.

B.  All information provided to the legislature, media, criminal justice agencies, or general public shall be in accordance with IMPP 05-101 and all applicable confidentiality statutes.

C.  All requests for information relative to the Kansas Open Records Act (KORA) shall be submitted to the KDOC Freedom of Information Officer in Central Office through the EDCF Public Information Officer.

**Note:**  The general orders set forth herein are intended to establish directives and guidelines for staff, offenders and those entities who are contractually bound to adhere to them.  They are not intended to establish State created liberty interests for employees, offenders or an independent duty owed by the Department of Corrections to either employees, offenders or third parties.  This General Order is not intended to establish or create new constitutional rights or to enlarge or expand upon existing constitutional rights or duties.

Authority to override policy as written in this General Order may only be authorized in writing by the Warden.  In an emergency, the Incident Commander may temporarily suspend the General Order for the duration of the time to restore order to the facility and it shall be logged in the emergency log.

### REPORTS REQUIRED

None

### REFERENCES

| KSA | 75-2973 |
|---|---|
| KAR | 44-1-102, 44-1-103 |
| IMPP | 05-101, 08-101, 08-104 |

### ATTACHMENTS

None




*EXHIBIT-1*

## FAX TRANSMITTAL SHEET
### FAX NUMBER (785) 368-6362
### PHONE NUMBER (785) 296-8586

**From:** University of Kansas Medical Center
Director of Health Care Compliance Office

**To:** Centurion Regional Office
ATTN: Kara Fiske  *Already Fired ~~...~~*

**Date:** 9/1/2020                    **Grievance #:** CA21864

**Offender Name:** BELLAMY, RONNIE #53454    **SITE:** El Dorado Correctional Facility

**Reason for request:** Grievance, Family, Offender, Warden, Gov, Office, Other

[■■] [ ] [ ] [ ] [ ] [ ]

[ ] DENTAL    [ ] MEDICAL    [■■] BEHAVIORAL HEALTH

**This information is requested at the direction of Jeff Cowger, Chief Legal Counsel for KDOC**

Please provide requested information regarding the following complaints: Issue with being enrolled in a certain group/program; staff complaint; issue with receiving supplies for group.

- X    Did the offender have any consults pertaining to complaint(s)? If yes, provide documentation
- X    Are there any referral(s) approval/denials pertaining to complaints?
- X    If there is approval for an outside consult/service, provide name of provider and date of appointment.
- X    Was the offender seen by the site dental/physician/psychiatrist regarding his/her complaint(s)?
- X    Has the offender complied with all recommendations? Provide signed/witnessed copies of refusals.
- X    Provide lab information pertaining to complaint(s)
- X    Provide any X-Rays, scans/mammogram if any pertaining to complaint(s)

MARS – Last 30 Days

**PLEASE PROVIDE ADDITIONAL INFORMATION TO THE FOLLOWING QUESTIONS:**

- What are any Diagnoses relating to the concerns? What are any associated treatment plans?
- Has the offender been evaluated by a physician? If so, what were the findings / recommendations?
- Is a specialty consult indicated for this offender? Why or why not?
- Please provide any other pertinent details relating to the concerns.

[ ] Provide completed Release of Medical Information consent (05-107-001) authorizing information be released to: ____ _____ *please fill out releasing entity as KDOC/KUMC – please fill out for verbal and written communication – Thank you.*

Please respond by:   __9/8/2020___   attention material to Whitney Barancik.

Total number of pages _6_   *WHERES THE OTHER 4 pages?*

**SITES-----**
- (•) **DO NOT PROVIDE ANY "EHR" DOCUMENTS WITH GRIEVANCE SITE RESPONSE, EXCEPT THOSE REQUESTED ABOVE**
- (•) **DO NOT RETURN COPIES OF THE GRIEVANCE DOCUMENTS PROVIDED BY THE OFFENDER WITH THE SITE RESPONSE.**

*Mr. JEFF COWGER IMPEDED MY EXHAUSTION OF ADMINISTRATIVE REMEDIES AND ACCESS TO COURT IN CASE NUMBER 5:20-CV-03229-SAC §1983 CIVIL-CRIMINAL LAWSUIT PLEASE HAVE HIM DISBARRED AND ARRESTED IMMEDIATELY. THEY ARE TRYING TO HAVE ME MURDERED. PLEASE HELP! @ Ron Bellamy #53454*

EXHIBIT

**DATE:** September 4, 2020

**ATTENTION:** UNIVERSITY OF KANSAS PHYSICIANS INC.
DIRECTOR OF HEALTHCARE OFFICE

**CONFIDENTIAL**
SEP 1 1 2020
MEDICAL RECORDS

**TO:** ATTN: Jeff Cowger
Chief Legal Counselor for KDOC

**Inmate Name:** BELLAMY, Ronnie #53454       **SITE:** El Dorado Correctional Facility

Please provide requested information regarding the following complaints: **Issues with being enrolled in a certain group/program; staff complaint; issue with receiving supplies.**

1. Did the offender have any consult pertaining to complaint(s)? **No** If yes, provide documentation.
2. Are there any referral(s) approval/denials pertaining to complaints? **No**
3. If there is approval for an outside consult/service, provide name of provider and date of appointment. **N/A**
4. Was the offender seen by the site dental/physician/psychiatrist regarding his/her complaint? **Yes**
5. Has the offender complied with all recommendations? **Yes** Provide signed witnessed copies of refusals.
6. Provide lab information pertaining to complaint(s). **N/A**
7. Provide any X-Rays, scans/mammograms if any pertaining to complaint(s). **N/A**

**MARS** – Last 30 days.

**PLEASE PROVIDE ADDITIONAL INFORMATION TO THE FOLLOWING QUESTIONS:**

- What are any diagnoses relating to the concerns? **Delusional Disorder; Anxiety** What are any associated treatment plans? **Placed into IRU; seen at least monthly for individual sessions; group sessions twice a week.**
- Has the offender been assessed by physician regarding concern? **N/A** If so, what were any findings/recommendations?
- Is a specialty consult indicated for this offender? **No** If not, why not? **Not medically indicated.**
- Please provide any other pertinent details relating to the concerns. **As a participant in the IRU program, the patient participates in group sessions five times a week. For each group, there are materials needed to complete the group activities. Those materials are provided to the patient during the group. Additional supplies are determined by the Multi-Disciplinary Services Team, of which the patient is a part. The team determines what other supplies the patient will receive. The BHAT working with the patient does not use personal fund to purchase supplies. Supplies are given only based on the recommendations of the treatment team.**

_cv, HSA_

John Koppenhaver, LCP Health Services Administrator

Attachment B, IMPP 20-105A
Effective 05-13-22

## Kansas Department of Corrections
## Administrative Restrictive Housing Report

*EXHIBIT — 1*

| | | | | |
|---|---|---|---|---|
| TO: | SOC | | Report Number: | 01-23-0751 |

FROM:      Lansing Correctional Facility

| | | | | |
|---|---|---|---|---|
| Date This Report Filed | 10-7-22 | Time of Report | 1135 | ☒ a.m.   ☐ p.m. |
| Date of Restrictive Housing Placement | 10-7-22 | Time of Placement | 1115 | ☒ a.m.   ☐ p.m. |

Reason(s) for Restrictive Housing
(including Rule No. and Title)

Resident Name: **Bellamy**      **#53454**

Moved from Cell:   A7-102    to Restrictive Housing Cell #:   A4-120

☒   Pre-Restrictive Housing hearing conducted

☐   Pre-Restrictive hearing NOT conducted (Explain

| |
|---|
| IMPP 20-104A ; III. A. Pending Results of Investigation |
| IMPP Choose an item. |

Facts:

Inmate Bellamy #53454 is being placed in restrictive housing for being battered by inmate Frey #124713 with a padlock.

☐   This placement is an Involuntary Protective Custody due to PREA Concerns (respond to next two (2) sections)

What is the basis for the facility's concern for the resident's safety?

What is the reason no alternative means of separation can be arranged?

Approved By:

Lt. Jewell

| | |
|---|---|
| 10-7-22 | 10-7-22 |
| Signature and Title of Reporting Officer    Date | Shift Supervisor or Restrictive Housing Unit Mgr.    Date |

Warden Authorization (if needed)      Date

**************************************************************************************

ACKNOWLEDGMENT:

I received a copy of this report on:   Date   10-7-22      Time   1142   ☒ a.m.   ☐ p.m.

| | |
|---|---|
| | *COI Schmultz* |
| Resident Signature and Number    # | Staff Witness and Title |

Record this Document in Imaging
Original to Master File
Copy to: Warden
       Resident
       PCM

KANSAS DEPARTMENT OF CORRECTIONS
ADMINISTRATIVE SEGREGATION REVIEW (Pursuant to IMPP 20-105/106)
LCF-120

*EXHIBIT—1*

☒ Initial Review

Name: BELLAMY,RONNIE          Number: 53454          Date: 10/10/2022

Date placed in Segregation: 10/7/2022          Recommended date of release: N/A

Did inmate appear before board?  ☒ Yes          ☐ No

1. Present Status: <u>IMPP 20-104 (2) Pending Investigation</u>

2. Return to General Population?
   ☐ Yes  ☒ No

3. Transfer to another Kansas facility or another State or Federal facility?
   ☐ Yes  ☒ No

4. Medical or Psychological intervention?
   ☐ Yes  ☒ No
   a.  Continue ☒     Modify ☐  program or treatment status?

5. Inmate informed of right to submit written request for release to board?
   ☒ Yes  ☐ No

6. While in segregation inmate's behavior has been satisfactory?
   ☒ Yes  ☐ No

7. The placement was legal and proper?
   ☒ Yes  ☐ No

8. A pre-segregation placement hearing was held?
   ☒ Yes  ☐ No

Board Comments: Inmate was placed in restricted housing for pending investigation for housing needs after being attacked by another offender, Frey 124713.  The Board agreed he will remain in restricted housing at this time.

Approved: _X_          Disapproved: _____          S/S
                                                    EAI Staff
Approved: _✓_          Disapproved: _____          *Janise Williams*
                                                    Clinical Staff
Approved: _✓_          Disapproved: _____          *Lt. Brooks*
                                                    Security Staff
Approved: _X_          Disapproved: _____          *S. Doyle, LMH*
                                                    Chairperson
Approved: _X_          Disapproved: _____          _____
                                                    Warden

Inmate acknowledgement:
I received a copy of this review on: _____ 20___ At _____

_____
Inmate Signature and Number

*US Steimle*
_____
Signature and Title of Staff

Attachment B, IMPP 20-105A
Effective 05-13-22

# Kansas Department of Corrections
# Administrative Restrictive Housing Report

*EXHIBIT—1*

| | | |
|---|---|---|
| TO: | Secretary of Corrections | Report Number: **01-23-0847** |
| FROM: | Lansing Correctional Facility | |

Date This Report Filed _10/21/2022_   Time of Report _0948_  ☒ a.m.  ☐ p.m.
Date of Restrictive Housing Placement _10/7/2022_   Time of Placement _1000_  ☒ a.m.  ☐ p.m.

Resident Name: **Bellamy, Ronnie**   **#53454**

Moved from Cell: _A4-120_   to Restrictive Housing Cell #: _A4-120_

☐ Pre-Restrictive Housing hearing conducted
☒ Pre-Restrictive hearing NOT conducted (Explain

Reason(s) for Restrictive Housing
(including Rule No. and Title)

IMPP 20-104A ; V. B. Other Security Risk

IMPP Choose an item.

Status Change

**Facts:**

Status Change: Offender Bellamy's status was changed from PI status to OSR status.This is due to the facts of the EAI investigation completion and not supporting Protective Custody status for the offender currently.  Offender continues to be battered by other offenders while in general population at LCF.  Offender will remain special management as OSR status, pending housing options and/or possible transfer to another facility.

☐ This placement is an Involuntary Protective Custody due to PREA Concerns (respond to next two (2) sections)

What is the basis for the facility's concern for the resident's safety?

N/A

What is the reason no alternative means of separation can be arranged?

N/A

| | | |
|---|---|---|
| S. Latzke, UTM | | Approved By: |
| | _10/20/2022_ | _Lt. Brooks_  _10-21-22_ |
| Signature and Title of Reporting Officer | Date | Shift Supervisor or Restrictive Housing Unit Mgr.   Date |

Warden Authorization (if needed)   Date

*************************************************************************************************

ACKNOWLEDGMENT:

I received a copy of this report on:   Date _10-?-22_   Time _2378_  ☐ a.m.  ☒ p.m.

_[signature]_   _53454_   _JS Steinle_
Resident Signature and Number   #   Staff Witness and Title

Record this Document in Imaging
Original to Master File
Copy to:  Warden
           Resident
           PCM

Attachment B, IMPP 20-105A
Effective 05-13-22

# Kansas Department of Corrections
## Administrative Restrictive Housing Report

EXHIBIT-1

TO:      Seceratery of Corrections          Report Number:  **01-23-0706**

FROM:    Lansing Correctional Facility

Date This Report Filed          09/29/2022     Time of Report     1930   ☐ a.m.  ☒ p.m.
Date of Restrictive Housing Placement  09/29/2022   Time of Placement   1929   ☐ a.m.  ☒ p.m.

| | | |
|---|---|---|
| Resident Name: **Bellamy**          **#53454** | | Reason(s) for Restrictive Housing (including Rule No. and Title) |

Moved from Cell:  A7-239     to Restrictive Housing Cell #:  A1-203

☒  Pre-Restrictive Housing hearing conducted

☐  Pre-Restrictive hearing NOT conducted (Explain

IMPP 20-104A ; III. C. Pre-Hearing Detention

IMPP Choose an item.

Facts:

Inmate Bellamy #53454 is being placed in restricitive housing Pre-Hearing in A1-203 due to being in a altercation with another inmate in A7. Inmate was not present when his property was packed and was seen by a clinic nurse prior to being placed in restrictive housing in A1. DR Case # 1018

☐  This placement is an Involuntary Protective Custody due to PREA Concerns (respond to next two (2) sections)

What is the basis for the facility's concern for the resident's safety?

What is the reason no alternative means of separation can be arranged?

*CSII Wyatt*          09/29/2022          *CSII Wyatt*          09/29/2022
Signature and Title of Reporting Officer     Date     Shift Supervisor or Restrictive Housing Unit Mgr.   Date

_____     _____
Warden Authorization (if needed)          Date

*****************************************************************************************************

ACKNOWLEDGMENT:

I received a copy of this report on:   Date _____     Time _____  ☐ a.m.  ☒ p.m.

_____     _____
Resident Signature and Number     #          Staff Witness and Title

Record this Document in Imaging
Original to Master File
Copy to: Warden
         Resident
         PCM

Attachment B, IMPP 11-119
Effective: 12-11-13

# DISCIPLINARY REPORT

LCF-C
<u>(FACILITY)</u>

 *EXHIBIT - 1*

| | | | | |
|---|---|---|---|---|
| Case No. 1018 | Date of Alleged Violation: | 09/29/2022 | Time: 1628 | ○ A.M. / ◉ P.M. |
| Date This Report Written: | | 09/29/2022 | Time: 1732 | ○ A.M. / ○ P.M. |

Name of Inmate: BELLAMY       RONNIE                    No.  53454      Cell No. *TBD*
                    LAST        FIRST          MI

Duty Assignment: TRU 2

**Alleged Violation of Law or Rule** *(identify by Code No., Short Title, and Class)* 44-12-301 FIGHTING CLASS I

FACTS:  ON THE ABOVE DATE AT THE APPROXIMATE TIME, I HEARD YELLING COMING FROM THE TOP TIER OF A7, RIGHT BY CELL 235. I LOOKED UP THERE AND SAW INMATES BELLAMY #53454 AND FELLERS #6003270 FIGHTING. I CALLED THE ALARM AND RAN UP THERE. INMATE BELLAMY HAD INMATE FELLERS IN A HEAD LOCK. INMATE FELLERS WAS HOLDING A HOMEMADE WEAPON IN HIS HAND. THE WEAPON WAS HEAVY DUTY METAL WITH TAPE AROUND THE END FOR A HANDLE. INMATE BELLAMY IS IN VIOLATION OF 44-12-301 FIGHTING CLASS I

Staff Witnesses: _____

(Attach Additional Sheet(s) if necessary)
(Signature) *COII Wagner*
COII WAGNER A7-OIC MTW OFF
Printed Name and Title of Employee Writing Report

Approved by: *CSII White*
(Shift Supervisor/Unit Team Manager & Title)

*I declare (or verify, certify or state) under penalty of perjury that the foregoing is true and correct.*

Executed on _____9/29/2022_____        Signature *COII Wagner*

I received a copy of this report on _____
                                        (Date)       (Time)                    (Inmate Signature & No)

I served a copy of this report _____
                                        (Date)       (Time)        (Signature of Officer or Unit Team Manager & Title)

*Technical and clerical errors in the writing and / or processing of the Disciplinary report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to provide. Pursuit to K.A.R. 44-13-707. Harmless error; Plain error.*

Bellamy, Ronr       ᴐ454  1018                                    A1203

☐ Witness(es) Sworn In/Affirmed   _____   _____

_____   _____   _____

Witness(es) Testimony / Cross Examination  (Attach Testimony)   *EXHIBIT-1*

Closing Statement(s):  (Attach Arguments)

If applicable include inmate's testimony/ arguments on restitution

Sanction(s): *30 !. DM*

Reason for Sanctions: *Was attacked with weapon unprovoked per Bellamy +*
*video, self defense*

Disposition of Evidence: *hold if any*

☐ Inmate advised of right to Appeal,  Have Inmate Initial  _____

HEARING OFFICER SIGNATURE *C.S. Hurt*                    DATE *10/3/2022*

FINAL ACTION BY FACILITY WARDEN:
☑ APPROVED
☐ REINSTATE DISMISSED CHARGES; REMAND NEW HEARING      ☐ REDUCE TO SUMMARY JUDGMENT
☐ AMEND THE CHARGE                                         - restriction from privileges up to 10 days
☐ DISAPPROVE/DISMISS                                       - fine not exceed $10.00
☐ REDUCE THE PENALTY                                       - extra work w/o incentive pay for no more
☐ SUSPEND ALL OR PART OF SENTENCE                            than 2 hrs/day no more than 5 days
☐ REMAND NEW HEARING                                       - work w/o incentive pay not to exceed 5 days
☐ CLARIFICATION OF RECORD                                  - restitution not less than $3.00
                                                             or more than $20.00
Comments: _____

_____            _____
WARDEN/DESIGNEE SIGNATURE          DATE

I received a Copy of the Hearing Record and understand I have 15 days to Appeal this decision.

_____            _____
INMATE SIGNATURE                   DATE
I served a copy of the Hearing Record

*USStemle* _____            _____
STAFF SIGNATURE                    DATE

Technical and clerical errors in the writing and/or processing of the Disciplinary Report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to prove. Pursuit to K.A.R. 44-13-707. Harmless error; Plain error.

Page 1 of 3, Attachment L1, IMPP 11-119
Effective: 07/2007

## KANSAS DEPARTMENT OF CORRECTIONS
### DISCIPLINARY OFFICE
### INMATE DISCIPLINARY SUMMONS



---

TO:   Bellamy, Ronnie              53454              DATE: September 30, 2022
        INMATE NAME              NUMBER

HOUSING UNIT/CELL: A1203

CASE NO. 1018

---

YOU ARE HEREBY SUMMONED TO APPEAR BEFORE A HEARING OFFICER AS DEFENDANT IN THE ABOVE REFERENCED CASE.

TIME:  7:30 a.m. or when called.

DATE: **MONDAY      10/3/2022**

LOCATION:  A1   Hearing Room

**FAILURE TO REPORT WILL RESULT IN THE ISSUANCE OF A DISCIPLINARY REPORT FOR THE VIOLATION OF K.A.R. 44-12-501; A CLASS III OFFENSE.**

---

INMATE SIGNATURE: _____

STAFF SIGNATURE: _____

SERVED: _____
        DATE                              TIME

---

PLEASE RETURN ORIGINAL SUMMONS TO THE DISCIPLINARY ADMINISTRATOR'S OFFICE.  GIVE THE INMATE THE COPY FOR HIS RECORDS.

# OFFENDER COPY

Page 1 of 3, Attachment L1, IMPP 11-119
Effective: 07/2007

KANSAS DEPARTMENT OF CORRECTIONS *EXHIBIT-1*
DISCIPLINARY OFFICE
**INMATE DISCIPLINARY SUMMONS**

TO:  Bellamy, Ronnie                    53454                    DATE: November 29, 2022
     INMATE NAME                        NUMBER

HOUSING UNIT/CELL: A1238

CASE NO. 1751   *ILLEGAL MRA - D.R. DUE TO ILLEGAL-*
*UNCONSTITUTIONAL DOUBLE BUNKING ATTEMPT*
*BY LT. BARNETT - CSI SHACKELFORD - COI SLOAN*

YOU ARE HEREBY SUMMONED TO APPEAR BEFORE A HEARING OFFICER AS DEFENDANT IN THE ABOVE
REFERENCED CASE.

TIME:  7:30 a.m. or when called.

DATE: **THURSDAY**   **12/1/2022**

LOCATION:  A1  Hearing Room

**FAILURE TO REPORT WILL RESULT IN THE ISSUANCE OF A DISCIPLINARY REPORT FOR THE VIOLATION
OF K.A.R. 44-12-501; A CLASS III OFFENSE.**

INMATE SIGNATURE: _____

STAFF SIGNATURE: *COI Sloan*

SERVED: 11/30/22                    0412
        DATE                        TIME

PLEASE RETURN ORIGINAL SUMMONS TO THE DISCIPLINARY ADMINISTRATOR'S OFFICE.  GIVE THE INMATE
THE COPY FOR HIS RECORDS.

# OFFENDER COPY

basic circumstances or facts.

**Origin**

EXHIBIT-1
DOUBLE SIDED

1782    Latin *stāre dēcīsīs*  (to stand by decided matters)

# History of the Doctrine of Stare Decisis

The doctrine of *stare decisis*, or precedent law, has its beginning in 12th century England, when King Henry II established a unified system of deciding legal maters. In this system, referred to as "common law," the decisions of the King's judges in various regions were respected by the other judges in deciding similar cases. As the colonists came to America, they brought with them the common law system, including the principle of *stare decisis*. Over the centuries, the principle of *stare decisis* has also become known as "binding precedent," or "binding authority."

# Which Courts Set Precedent

Within the hierarchy of the U.S. court system, the decisions of a higher court, such as an appellate court, or supreme court, become binding precedent, or obligatory *stare decisis*, on lower courts. In some cases, precedent set by a court of lateral jurisdiction, meaning a court at the same level, becomes binding authority, though more often, decisions made by lateral or lower courts are used as *persuasive* authority, rather than *binding* authority. This means that these decisions are used to guide the thought process of the judge, without requiring a certain ruling.

The degree to which a prior court decision is required to be used in other cases depends on such factors as the nature of the jurisdictions of both the prior and current case, the similarities between the facts of the prior and current cases, and the length of time since the prior decision was made. With this in mind, decisions made by the U.S. Supreme Court hold the most sway as *stare decisis*, or binding authority, on other cases in every jurisdiction in the nation. Decisions made by state supreme commor by appe

X



*decisis* on the trial courts beneath them, but must adhere to decisions of the courts above.



# The Overturning of a Supreme Court Precedent

The U.S. Supreme Court is the source of the most decisions held as *stare decisis* in American courts. As such, it is a rare thing for the Court to overturn one of its own decisions that has been held as binding precedent. In 1896, the U.S. Supreme Court rendered a landmark decision in the matter of *Plessy v. Ferguson*, when it upheld the state of Louisiana's "separate but legal" doctrine, which allowed racial segregation in public facilities. This decision held *stare decisis* for nearly 60 years, until the case of *Brown v. Board of Education* was heard in 1953.

In 1951, a civil lawsuit was filed in U.S. District Court in Topeka, Kansas, by 13 parents on behalf of their 20 children. The plaintiffs demanded that the school district reverse its policy of racial segregation. At the time, state law allowed the school districts to maintain separate elementary schools for black and white students, but did not require it.

The matter was eventually taken to the U.S. Supreme Court, which returned a unanimous decision that racial discrimination in schools is unconstitutional. This decision surprised most people, not simply because it struck down educational discrimination, but because the Court ruled unanimously on the seriously divisive topic. Since the *Brown v. Board of Education* ruling, the ban on racial segregation has become *stare decisis*, or binding precedent, on decisions of segregation and discrimination in all things.

# Related Legal Terms and Issues

- **Civil Lawsuit** – A lawsuit brought about in court when one person claims to have suffered a loss due to the actions of another person.
- **Defendant** – A party against whom a la has been filed in civil court, or who has been accused of, or charged with, a crime or offense.
- **Jurisdiction** – The legal authority to hear legal cases and make judgments; the geographical region of authority to enforce justice.
- **Plaintiff** – A person who brings a legal action against another person or entity, such as in a civil lawsuit, or criminal proceedings.

X



INMATE REQUEST TO STAFF MEMBER

To: _____     Date: _____ EXHIBIT-1
         (Name and Title of Officer or Department)

_____
         Unit Team, Detail, or Cellhouse Officer's Signature          **To be retained by inmate**

Form 9
For Cellhouse Transfer
Work Assignment  *COMPLIANCE REQUEST*                    BELLAMY
Interview Requests                                        **Last Name Only**

KANSAS DEPARTMENT OF CORRECTIONS                         53454
                                                         **Number**

*LAW LIBRARY*   INMATE REQUEST TO STAFF MEMBER
To: *PUBLIC ADMINISTRATOR MR. STIFFIN*     Date: *7-16-2021*
         (Name and Title of Officer or Department)
         State completely but briefly the problem on which you desire assistance. (Be specific.)

*COULD YOU PLEASE SEND ME THE K.A.R. THAT DEALS WITH
THE DISPOSITION OF OF EVIDENCES. I DO NOT HAVE
THE NUMBERS. THANK YOU AND HAVE A GOOD DAY*

Work Assignment: _____     Living Unit Assignment: *A-1-214 TRU G.P.*

Comment: _____     Detail or C.H. Officer: _____

Disposition: _____

To: _____     Date: *7/20/21*
         (Name & Number)

Disposition: *Please contact legal services*

_____
         Employee's Signature                    **To be returned to inmate.**

P-0009

*EXHIBIT-1*



# LEGAL AID

## Legal Services for Prisoners

telephone number:  (785) 296-8887
Director: Charles Cavenee
Address: PO Box 12438
Overland Park, KS 66282-2438

**About Us**
**Legal Services for Prisoners, is a non-profit group that provides legal services to indigent inmates in Kansas correctional facilities. The program's goal is to ensure that prisoners' rights to the courts are met to pursue non-frivolous claims. Funding for Legal Services for Prisoners is administered by the State Board of Indigents' Defense Services although the entity is not a state agency. The program currently operates offices in the Topeka Correctional Facility, Lansing Correctional Facility, and El Dorado Correctional Facility. However, an** inmate may apply for services at any correctional facility.

## Submit a form-9 to Legal Services or write or phone to the above contact info.

EXHIBIT - 1

**Send a form 9 to Legal Services: Chuck Cavanee or write to this address:**

**Legal Services for Prisoners, Inc.**

**PO Box 12438**

**Overland Park, Kansas 66282**

**785-296-8867**

**Director: Charles J. Cavenee**



EXHIBIT - 1

TO: KANSAS BAR Association
LAWYER REFERRAL SERVICE
225 N. MARKET, SUITE 200
WICHITA, KANSAS 67202

I WAS REFERRED TO YOU BY MR. STEVEN C.
SHERWOOD, LEGAL SERVICES FOR PRISONERS INC. I FILED
A 81983 CIVIL-CRIMINAL LAWSUIT. CASE NUMBER 5:20-
CV-03229-SAC. THE JUDGE IS, HONORABLE SAM A.
CROW, SENIOR JUDGE. I MOST CERTAINLY HAVE A CASE
THAT STANDS ON ITS OWN MERIT. BUT I NEED HELP I
HAVE A TREMENDOUS AMOUNT OF PROOF-EVIDENCE. THE
SURVEILLANCE VIDEO-AUDIO-PHONE-COMPUTERICS, CONTRACTUAL
AGREEMENT THE KDOC HAS WITH AN OUTSIDE PROVIDER AND
THE FOOTAGES AVAILABLE THAT EAI-A BRANCH OF THE KBI
HAS TO HOLD ALL EVIDENCE AND FOOTAGE FOR 7, YEARS BY
LAW. ALL PREVIOUS ADMINISTRATIVE REMEDIES WERE
EXHAUSTED. AS A RESULT OF WHAT HAPPENED TO ME, I
HAVE BEEN PLACED IN THE MENTAL HEALTH UNIT
KNOWN AS THE IRU PROGRAM. A PROGRAM THAT RECEIVES
FEDERAL SUBSIDIARY MONEY TO HOUSE ME. THEY TREAT ME
LIKE I AM IN SEGREGATION, BUT TELL ME THIS IS NOT
SEGREGATION. HERE IS A CONDENSED VERSION OF THE
FACTS IN CASE # 5:20-CV-03229-SAC, YOU CAN VERIFY
THIS WITH THE CLERK OFFICER OF THE UNITED STATES
DISTRICT COURT 444 S.E. QUINCY 490 U.S. COURTHOUSE TOPEKA,
KANSAS 66683. THREE INMATES ESCAPED FROM THE LANSING
CORRECTIONAL FACILITY WITH THE HELP OF THREE STAFF MEMB-
ERS. AND MURDERED RAPED BEAT TORTURED SOME OF MY FAMILY
MEMBERS IN MARSHALL, MO. 65340. VARIOUS BODY PARTS
WERE BROUGHT BACK TO THE PRISON. SURVEILLANCE FOOTAGES
VIDEO-AUDIO-PHONE-COMPUTERICS=POLICE REPORTS-NEWS
FOOTAGE WILL ALL SHOW THIS. I WAS TRANSFERRED TO THE
ELDORADO CORRECTIONAL FACILITY IN JULY 2019. IN SEPTEMBER

②

EXHIBIT-1

ON THE 3rd DAY OF 2019. AGAINST MY WILL AND AFTER A
MEETING WITH THEN UNIT TEAM MANAGER DUSTIN M. RANDOLPH
NOW MAJOR- HEAD OF SECURITY, A DEFENDANT HE MOVED AN
ARYAN BROTHERHOOD MEMBER- PROSPECT, INTO MY ROOM
KNOWING WHO MR. A. J. KIDD WAS AND THAT HE HAD ALREADY
PLANNED TO MURDER ME IN MY SLEEP FOR HIS ARYAN
BROTHERHOOD PATCH. AND THIS AFTER HE AND OTHER MEMBERS
OF THE KDOC STAFF AND SECURITY HAD RECEIVED INTEL
INFORMATION, KITES, PHONE CALLS FROM VARIOUS SOURCES
INCLUDING THEIR INFORMANTS. KNOWING IN ADVANCE
AND CONSPIRING TO HAVE ME MURDERED. UNBEKNOWNST TO
ME AT THE TIME. THERE HAS LONG BEEN FOR MANY YEARS
DOCUMENTATION THAT THE ARYAN BROTHERHOOD AND VARIOUS
OTHER GANGS HAVE WANTED AND TRIED TO HAVE ME MURDERED.
AFTER DEFENDANT DUSTIN RANDOLPH MOVED A.J. KIDD, IN
MY ROOM AFTER ASKING ME WHO I WANTED AND I STATED
AARON WOODS THE PORTER ON P.C. AND A FRIEND. I INSTEAD
GOT KIDD. THERE WAS NO PROVOCATION HARSH WORDS NO
CLUES THAT HE WAS GONNA TRY TO MURDER ME. HE WAS
ONLY IN MY ROOM TWO DAYS I BELIEVE. I WENT TO SLEEP
AS NORMAL AROUND 9-9:30 EVERY NIGHT. AND WOKE UP
BLEEDING TO DEATH LITERALLY. AT THAT TIME I DID NOT
KNOW THE EXTENT OF MY INJURIES. I KNEW MY THROAT
WAS CUT BLOOD WAS POURING OUT AND I STRUGGLED TO
SIT UP IN BED THERE WAS BLOOD EVERYWHERE. THE ATTACKER
WAS STANDING BY THE SINK YELLING GET THE FUCK OUT
STILL HOLDING THE KNIFE. THE OFFICERS WERE JUST STANDING
AT THE DOOR CASUALLY NOT HELPING ME NOT DEPLOYING MACE
THE FOOD PASS IS OPEN AND THEY ARE WAITING TO CUFF ME
UP. I MANAGED TO CLIMB DOWN OUT OF THE TOP
BUNK SOMEHOW AND GET TO THE DOOR AND I WAS PLACED
IN HAND CUFFS FIRST MY ATTACKER STANDING NEXT TO
ME NOT CUFFED. HE WAS CUFFED LAST! THE REST IS QUITE
GRUESOME THE WAY I WAS TREATED THERE WAS ALREADY A

EXHIBIT-1

(3)

GURNEY WAITING FOR ME ON THE BOTTOM OF THE CELL HOUSE BOARDWALK
NO MEDICAL IN ATTENDANCE. I DISCOVER MY THROAT IS
CUT FROM A STAB WOUND. I WAS STABBED THROUGH MY
RIGHT TEMPLE IN MY HEAD MY FOREARM WAS CUT IN
HALF I WAS STABBED IN THE SHOULDER TWICE ONCE
GOING ALL THE WAY THROUGH FRONT TO BACK I WAS STABBED
IN THE LEG ALL WOUNDS ON THE RIGHT SIDE OF MY BODY
AND HEAD. SUSAN B. ALLEN DISPATCHED AN AMBULANCE AFTER
A LENGTHY DELAY. NO MEDICAL PERSONNEL ATTENDED OR HEALED
ME. EVEN AFTER I WAS WHEELED TO THE FACILITIES CORIDON-
CENTURION ER TRIAGE ROOM. WHEN BUTLER COUNTY EMS
ARRIVED I WAS LOADED IN AMBULANCE. NO IV NO STATS
NO HELP WHATSOEVER NO PAIN MEDS. THEY DIDN'T EVEN DRESS
MY WOUNDS. THEY DECIDED TO TRANSPORT ME TO WESLEY MEDICAL
CENTER DUE TO SEVERE TRAUMA SUSAN B. ALLEN WASN'T EQUIPPED
TO HANDLE IT. NO ONE WAS HELPING ME. UPON ARRIVAL AT
WESLEY MEDICAL CENTER I WAS TAKEN TO THEIR ER TRIAGE UNIT
AND LEFT ON A GURNEY FOR OVER 11 HOURS OVER 8 HOURS
WITH NO HELP OR ATTENTION EXCEPT AN OCCASIONAL GLANCE
OR WALK AROUND ME. NO IV HELP-NOTHING. THEN THEY SEWED
UP MY SKIN ON MY SHOULDER FOREARM LEG. NEVER ADDRESSING
MY HEAD-THROAT NEVER RE-ATTACHING ANY MUSCLES. I FORCED
THEM TO GIVE ME A URINE TEST TO SHOW THEY NEVER GAVE
ME ANY PAIN MEDS. THEY TOOK ME TO MRI AND THERE WAS A
ONE INCH PIECE OF STEEL LEFT IN MY HEAD. THEY STOPPED
THE MRI AND BROUGHT ME OUT. LEFT THE PIECE IN MY HEAD
I HAD A BROKEN JAW AND A CLEFT PALLETTE FROM THE STAB
WOUND THROUGH MY RIGHT TEMPLE. NEVER ADDRESSED NO SURGERY
WENT TO FOLLOW UP CLINIC TWO WEEKS LATER FROM PRISON INFIRMARY
AS I CAME BACK FROM WESLEY SAME DAY. NO HELP AT WESLEY FOLLOW
UP CLINIC JUST DENTAL X-RAYS AND LEFT. TOOK ONE INCH
PIECE OF KNIFE OUT OF MY HEAD MYSELF WHEN I GOT BACK FROM
HOSPITAL. SURVEILLANCE VIDEO-AUDIO-PHONE-COMPUTERIES WILL
SHOW EVERYTHING I AM SAYING FROM PRISON CELL HOUSE-INFIRMARY-

④

EXHIBIT-1

PRISON ER TRIAGE AREA - AMBULANCE ON BOARD CAMERA - WESLEY MEDICAL CENTER CAMERA FOOTAGES TRANSPORTATION OFFICERS State ISSUED PHONES VIDEOING ER AT WESLEY. TRANSPORTATION VAN AND THE KDOC OFFICER WHO SEXUALLY ACCOSTED ME COMING BACK FROM HOSPITAL. AND ONE OF THE DEFENDANTS ON 10-24-10-25 10-6 SHIFT THE OFFICER WHO STOOD AT MY DOOR AND WATCHED THE RACIST TRY TO MURDER ME AND DID NOTHING TO HELP ME CSI DYLAN H. DARTER JUST THREATENED TO POISON ME WITH A CLEAR LIQUID IN MY FOOD ON Surveillance CAMERA IN CII HOUSE MENTAL HEALTH UNIT THERE IS VIDEO AND AUDIO, OF INCIDENT AND HE MAY HAVE tried to CARRY IT OUT DUE TO HOW THEY PASSED FOOD. I FILED A COMPLAINT. AND I AM IN DESPERATE NEED OF HELP I NEED AN ATTORNEY. I APOLOGISE FOR SLOPPY WRITING MY FOREARM WAS CUT IN HALF.

RESPECTFULLY

☒ Ron Bellamy

RONNIE A. BELLAMY #53454
EDCF P.O. BOX 311
1737 S.E. HWY 54
EL DORADO, KANSAS 67042
FACILITY PHONE #314-321-7284
EMAIL WWW. J-PAY. Com
@ RONNIE A. BELLAMY JR #53454

EXHIBIT-1

TO: KANSAS BAR ASSOCIATION
LAWYER REFERRAL SERVICE
1200 SW HARRISON St.
TOPEKA, KANSAS 66612

    I WAS REFERRED TO YOU BY MR. STEVEN C.
SHERWOOD, LEGAL SERVICES FOR PRISONERS INC. I FILED
A §1983 CIVIL-CRIMINAL LAWSUIT. CASE NUMBER 5:20-
CV-03229-SAC. THE JUDGE IS, HONORABLE SAM A.
CROW, SENIOR JUDGE. I MOST CERTAINLY HAVE A CASE
THAT STANDS ON ITS OWN MERIT. BUT I NEED HELP. I
HAVE A TREMENDOUS AMOUNT OF PROOF-EVIDENCE. THE
SURVEILLANCE VIDEO-AUDIO-PHONE-COMPUTERICS, CONTRACTUAL
AGREEMENT THE KDOC HAS WITH AN OUTSIDE PROVIDER AND
THE FOOTAGES AVAILABLE THAT EAI-A BRANCH OF THE KBI
HAS TO HOLD ALL EVIDENCE AND FOOTAGE FOR 7, years BY
LAW. ALL PREVIOUS ADMINISTRATIVE REMEDIES WERE
EXHAUSTED. AS A RESULT OF WHAT HAPPENED TO ME, I
HAVE BEEN PLACED IN THE MENTAL HEALTH UNIT
KNOWN AS THE IRU PROGRAM. A PROGRAM THAT RECEIVES
FEDERAL SUBSIDIARY MONEY TO HOUSE ME-THEY TREAT ME
LIKE I AM IN SEGREGATION, But TELL ME THIS IS NOT
SEGREGATION. HERE IS A CONDENSED VERSION OF THE
FACTS IN CASE # 5:20-CV-03229-SAC, YOU CAN VERIFY
THIS WITH THE CLERK OFFICER OF THE UNITED STATES
DISTRICT COURT 444 S.E. QUINCY 490 US. COURTHOUSE TOPEKA,
KANSAS 66683. THREE INMATES ESCAPED FROM THE LANSING
CORRECTIONAL FACILITY WITH THE HELP OF THREE STAFF MEMB-
ERS. AND MURDERED RAPED BEAT TORTURED SOME OF MY FAMILY
MEMBERS IN MARSHALL, MO. 65340. VARIOUS BODY PARTS
WERE BROUGHT BACK TO THE PRISON. SURVEILLANCE FOOTAGES
VIDEO-AUDIO-PHONE-COMPUTERICS-POLICE REPORTS-NEWS
FOOTAGE WILL ALL SHOW THIS. I WAS TRANSFERRED TO THE
ELDORADO CORRECTIONAL FACILITY IN JULY 2019. IN SEPTEMBER

②

EXHIBIT-1

ON THE 3rd DAY OF 2019. AGAINST MY WILL AND AFTER A MEETING WITH THEN UNIT TEAM MANAGER DUSTIN M. RANDOLPH NOW MAJOR-HEAD OF SECURITY, A DEFENDANT. HE MOVED AN ARYAN BROTHERHOOD MEMBER-PROSPECT, INTO MY ROOM KNOWING WHO MR A.J. KIDD WAS AND THAT HE HAD ALREADY PLANNED TO MURDER ME IN MY SLEEP FOR HIS ARYAN BROTHERHOOD PATCH. AND THIS AFTER HE AND OTHER MEMBERS OF THE KDOC STAFF AND SECURITY HAD RECEIVED INTEL INFORMATION, KITES, PHONE CALLS FROM VARIOUS SOURCES INCLUDING THEIR INFORMANTS. KNOWING IN ADVANCE AND CONSPIRING TO HAVE ME MURDERED. UNBEKNOWNST TO ME AT THE TIME. THERE HAS LONG BEEN FOR MANY YEARS DOCUMENTATION THAT THE ARYAN BROTHERHOOD AND VARIOUS OTHER GANGS HAVE WANTED AND TRIED TO HAVE ME MURDERED. AFTER DEFENDANT DUSTIN RANDOLPH MOVED A.J. KIDD, IN MY ROOM AFTER ASKING ME WHO I WANTED AND I STATED AARON WOODS THE PORTER ON P.C. AND A FRIEND. I INSTEAD GOT KIDD. THERE WAS NO PROVOCATION HARSH WORDS NO CLUES THAT HE WAS GONNA TRY TO MURDER ME. HE WAS ONLY IN MY ROOM TWO DAY I BELIEVE. I WENT TO SLEEP AS NORMAL AROUND 9-9:30 EVERY NIGHT. AND WOKE UP BLEEDING TO DEATH LITERALLY. AT THAT TIME I DID NOT KNOW THE EXTENT OF MY INJURIES. I KNEW MY THROAT WAS CUT BLOOD WAS POURING OUT AND I STRUGGLED TO SIT UP IN BED THERE WAS BLOOD EVERYWHERE. THE ATTACKER WAS STANDING BY THE SINK YELLING GET THE FUCK OUT STILL HOLDING THE KNIFE. THE OFFICERS WERE JUST STANDING AT THE DOOR CASUALLY NOT HELPING ME NOT DEPLOYING MACE THE FOOD PASS IS OPEN AND THEY ARE WAITING TO CUFF ME UP. I MANAGED TO CLIMB DOWN OUT OF THE TOP BUNK SOMEHOW AND GET TO THE DOOR AND I WAS PLACED IN HAND CUFFS FIRST MY ATTACKER STANDING NEXT TO ME NOT CUFFED. HE WAS CUFFED LAST? THE REST IS QUITE GRUESOME THE WAY I WAS TREATED THERE WAS ALREADY A

(3)                                                    EXHIBIT-1

GURNEY WAITING FOR ME ON THE BOTTOM OF THE CELL HOUSE
NO MEDICAL IN ATTENDANCE. I DISCOVER MY THROAT IS
CUT FROM A STAB WOUND. I WAS STABBED THROUGH MY
RIGHT TEMPLE IN MY HEAD MY FOREARM WAS CUT IN
HALF I WAS STABBED IN THE SHOULDER TWICE ONCE
GOING ALL THE WAY THROUGH FRONT TO BACK I WAS STABBED
IN THE LEG ALL WOUNDS ON THE RIGHT SIDE OF MY BODY
AND HEAD. SUSAN B. ALLEN DISPATCHED AN AMBULANCE AFTER
A LENGTHY DELAY. NO MEDICAL PERSONNEL ATTENDED OR HELPED
ME. EVEN AFTER I WAS WHEELED TO THE FACILITIES CORRIDOR-
CENTURION ER TRIAGE ROOM. WHEN BUTLER COUNTY EMS
ARRIVED I WAS LOADED IN AMBULANCE. NO IV NO STATS
NO HELP WHATEVER NO PAIN MEDS. THEY DIDN'T EVEN DRESS
MY WOUNDS. THEY DECIDED TO TRANSPORT ME TO WESLEY MEDICAL
CENTER DUE TO SEVERE TRAUMA SUSAN B. ALLEN WASN'T EQUIPPED
TO HANDLE IT. NO ONE WAS HELPING ME. UPON ARRIVAL AT
WESLEY MEDICAL CENTER I WAS TAKEN TO THEIR ER. TRIAGE UNIT
AND LEFT ON A GURNEY FOR OVER 11 HOURS OVER 8 HOURS
WITH NO HELP OR ATTENTION EXCEPT AN OCCASIONAL GLANCE
OR WALK AROUND ME. NO IV. HELP-NOTHING. THEN THEY SEWED
UP MY SKIN IN MY SHOULDER FOREARM LEG. NEVER ADDRESSING
MY HEAD-THROAT NEVER RE-ATTACHING ANY MUSCLES. I FORCED
THEM TO GIVE ME A URINE TEST TO SHOW THEY NEVER GAVE
ME ANY PAIN MEDS. THEY TOOK ME TO MRI AND THERE WAS A
ONE INCH PIECE OF STEEL LEFT IN MY HEAD. THEY STOPPED
THE MRI AND BROUGHT ME OUT. LEFT THE PIECE IN MY HEAD
I HAD A BROKEN JAW AND A CLEFT PALLETTE FROM THE STAB
WOUND THROUGH MY RIGHT TEMPLE. NEVER ADDRESSED NO SURGERY
WENT TO FOLLOW UP CLINIC TWO WEEKS LATER FROM PRISON INFIRMARY
AS I CAME BACK FROM WESLEY SAME DAY. NO HELP AT WESLEY FOLLOW
UP CLINIC JUST DENTAL X-RAYS AND LEFT. TOOK ONE INCH
PIECE OF KNIFE OUT OF MY HEAD MYSELF WHEN I GOT BACK FROM
HOSPITAL. SURVEILLANCE VIDEO-AUDIO-PHONE-COMPUTERS WILL
SHOW EVERYTHING I AM SAYING FROM PRISON CELL HOUSE-INFIRMARY-

④

EXHIBIT - 1

PRISONER TRIAGE AREA - AMBULANCE ON BOARD CAMERA - WESLEY MEDICAL CENTER CAMERA FOOTAGES TRANSPORTATION OFFICERS STATE ISSUED PHONES VIDEOING ER AT WESLEY. TRANSPORTATION VAN. AND THE KDOC OFFICER WHO SEXUALLY ACCOSTED ME COMING BACK FROM HOSPITAL. AND ONE OF the DEFENDANTS ON 10-24-10-25 10-6 SHIFT THE OFFICER who STOOD AT MY DOOR AND WATCHED THE RACIST TRY TO MURDER ME AND DID NOTHING TO HELP ME CSI DYLAN H. CARTER JUST THREATENED TO POISON ME WITH A CLEAR LIQUID IN MY FOOD ON SURVEILLANCE CAMERA IN CELL HOUSE MENTAL HEALTH UNIT THERE IS VIDEO - AND AUDIO, OF INCIDENT AND HE MAY HAVE TRIED TO CARRY IT OUT DUE TO HOW THEY PASSED FOOD. I FILED A COMPLAINT. AND I AM IN DESPERATE NEED OF HELP I NEED AN ATTORNEY. I APOLOGISE FOR SLOPPY WRITING MY FOREARM WAS CUT IN HALF.

RESPECTFULLY

/S/ Ron Bellamy

RONNIE A. BELLAMY #53454
EDCF P.O. BOX 311
1737 S.E. HWY 54
EL DORADO, KANSAS 67042
FACILITY PHONE # 316-321-7284
EMAIL WWW. J-PAY. Com
@ RONNIE A. BELLAMY JR #53454

57  2 OF 2  CONTENT OF ENVELOPE                    EXHIBIT - 1

Date:        September 13, 2020

To:          Ronnie Bellamy, #53454

From:        Steven C. Sherwood, Attorney
             Legal Services for Prisoners, Inc.

Mr. Bellamy:

While this office provides 1983 forms to the offender population as a curtesy to
the federal court clerk's office, we are not permitted to advise, consult or assist
on any matters which allow for the request for damages, specifically including the
1983 actions.  Should you need advice or consultation on such an action, I am
limited to advising you to consider contacting the Kansas Bar Association,
Lawyer Referral Service, 1200 S.W. Harrison St., Topeka, Kansas, 66612, or the
Wichita Bar Association, Lawyer Referral Service, 225 N. Market, Suite 200,
Wichita, Kansas, 67202.  Perhaps one of these resources will be able to give you
assistance.

Steven C. Sherwood, Attorney
SCS/ms

THIS CORRESPONDENCE MAKES NO SENSE
HE IS LEGAL SERVICES FOR PRISONERS INC.
                    By Ronnie Bellamy #53454
I AM CONFUSED BY THIS    RONNIE A. BELLAMY SR

## FAX TRANSMITTAL SHEET
### FAX NUMBER (785) 368-6362
### PHONE NUMBER (785) 296-8586

*EXHIBIT — 1*

*DOUBLE SIDED*

**From:** University of Kansas Medical Center
Director of Health Care Compliance Office

**To:** Centurion Regional Office
ATTN: Kara Fiske

**Date:** 9/1/2020      **Grievance #:** CA21864

**Offender Name:** BELLAMY, RONNIE #53454      **SITE:** El Dorado Correctional Facility

Reason for request: Grievance, Family, Offender, Warden, Gov. Office, Other

[ ] DENTAL    [ ] MEDICAL    [X] BEHAVIORAL HEALTH

**This information is requested at the direction of Jeff Cowger, Chief Legal Counsel for KDOC**

Please provide requested information regarding the following complaints: **Issue with being enrolled in a certain group/program; staff complaint; issue with receiving supplies for group.**

X   Did the offender have any consults pertaining to complaint(s)? If yes, provide documentation
X   Are there any referral(s) approval/denials pertaining to complaints?
X   If there is approval for an outside consult/service, provide name of provider and date of appointment.
X   Was the offender seen by the site dental/physician/psychiatrist regarding his/her complaint(s)?
X   Has the offender complied with all recommendations? Provide signed/witnessed copies of refusals.
X   Provide lab information pertaining to complaint(s)
X   Provide any X-Rays, scans/mammogram if any pertaining to complaint(s)

MARS – Last 30 Days

**PLEASE PROVIDE ADDITIONAL INFORMATION TO THE FOLLOWING QUESTIONS:**

- What are any Diagnoses relating to the concerns? What are any associated treatment plans?
- Has the offender been evaluated by a physician? If so, what were the findings / recommendations?
- Is a specialty consult indicated for this offender? Why or why not?
- Please provide any other pertinent details relating to the concerns.

[ ] Provide completed **Release of Medical Information** consent (05-107-001) authorizing information be released to: _____ *please fill out releasing entity as KDOC/KUMC – please fill out for verbal and written communication – Thank you.*

Please respond by: __9/8/2020___ attention material to Whitney Barancik.

Total number of pages _6_   *WHERES THE OTHER 4 pages?*

**SITES-----**
- **DO NOT PROVIDE ANY "EHR" DOCUMENTS WITH GRIEVANCE SITE RESPONSE, EXCEPT THOSE REQUESTED ABOVE**
- **DO NOT RETURN COPIES OF THE GRIEVANCE DOCUMENTS PROVIDED BY THE OFFENDER WITH THE SITE RESPONSE.**

*MR. JEFF COWGER IMPEDED MY EXHAUSTION OF ADMINISTRATIVE REMEDIES AND ACCESS TO COURT IN CASE NUMBER 5:20-CV-03229-SAC §1983 CIVIL-CRIMINAL LAWSUIT PLEASE HAVE HIM DISBARRED AND ARRESTED IMMEDIATELY. THEY ARE ___ ME MURDERED. PLEASE HELP! @Ron Bellam #53454*

EXHIBIT-1

CONFIDENTIAL

SEP 11 2020

MEDICAL RECORDS

Formal/Grievance
Response

Bellamy
53454
C1-254

RECEIVED BY M.M. AT
[55] ISSUED AT APPROX 3:45 p.m.
AND APPROPRIATE MEDICATIONS THAT OCCURED AS
BY DEFICIT EARLIEST -NAME ARE BEEN ADMINISTERED
BY STAFF F.N.

*EXHIBIT - 1*
*DOUBLE SIDED*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

RONNIE ALLEN BELLAMY JR.,　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Plaintiffs,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)　　Case. No. 20-CV-3229-DDC-ADM
　　　　　　　　　　　　　　　　　　)
WARDEN SAM CLINE, et al　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　)
　　　　　　　　　　　　　　　　　　)

### DECLARATION OF JOHN CANNON

Comes now, John Cannon, and declares under penalty of perjury as follows:

1. My name is John Cannon. I am of lawful age to make this declaration and have personal knowledge of the matters stated below.

2. I am employed by the Kansas Department of Corrections (KDOC) as a Special Agent Supervisor with the Enforcement, Apprehension, & Investigations (EAI) Unit.

3. I have reviewed my files related to the incident which is the subject matter of this litigation, and the electronic records of the KDOC. The statements contained herein are either based on personal knowledge, and or drawn from records kept in the ordinary course and scope of business of the KDOC, and are true and correct to the best of my knowledge and belief.

4. I have been advised that inmate Ronnie Bellamy Jr., # 53454, alleges that I received a "kite" containing information regarding possible harm to him by inmate AJ Kidd. That is not true. If I would have received a "kite" I would have initiated protective custody status for Bellamy until the issue could be sorted out. That did not happen in this instance because no "kite" exists.

1

*EXHIBIT-1*
*DOUBLE SIDED* (handwritten)

**From:** John Cannon2 [KDOC] <John.Cannon2@ks.gov>
**Sent:** Tuesday, September 3, 2019 6:45 PM
**To:** Nat Parisi [KDOC]
**Cc:** Marcelle Chmidling [KDOC]
**Subject:** Re: Reportable Incident - Bellamy, R. 53454

Offender returned to the facility around 1600 hours. Medical assessment revealed no fracture to right orbital socket. Offender received several stitches to right arm, shoulder, calf and temple. *(handwritten: NO MENTION OF BEEING STABBED IN THROAT 1" PIECE OF METAL LEFT IN HEAD. NO STITCHES IN TEMPLE AREA - MUSCLE NEVER RE-ATTACHED)*

At approximately 1730 hours I attempted to conduct an interview with offender Bellamy who was not cooperative and reluctant to answer questions pertaining to the event. I assured him If he could provide a statement i could pursue criminal charges. He indicated he was not interested in being a witness or pursuing charges. *(handwritten: THE ONLY THING I SAID WAS IM NOT TAKING THE STAND I DONT HAVE TO DO YOUR JOB TO WHICH HE WALKED AWAY)*

Get Outlook for iOS

---

**From:** John Cannon2 [KDOC]
**Sent:** Tuesday, September 3, 2019 11:52:05 AM
**To:** Nat Parisi [KDOC] <Nat.Parisi@ks.gov>
**Cc:** Marcelle Chmidling [KDOC] <Marcelle.Chmidling@ks.gov>
**Subject:** Reportable Incident - Bellamy, R. 53454

I received a phone call this morning (1:25 AM) which I was provided information that offender Kidd, AJ 0054023 battered his cellmate Bellamy, R. 0053454 using an improvised weapon. This caused injuries to Bellamy described as "he was going to require stiches". This morning I was informed Bellamy went out by EMS to Wesley Medical Center (550 N. Hillside St, Main Entrance, Wichita, KS 67214) with non-life threatening injuries. As of 1000 am, he remains at Wesley with injuries consisting of lacerations to the face, arm, leg and back. Doctors are now looking at the orbital socket having a possible fracture. Security staff report he will be released sometime this afternoon.

NOTE: Both offenders were housed together in B1-210, Restrictive housing. Unit Team Supervisor Randolph spoke with offender Kidd this morning, he states Bellamy continued to threaten Kidd and telling him he better not go to sleep at night. Kidd did not take his threats lightly.

*(handwritten: AS AN UNFORTUNATE OVER 30 YEAR VETERAN IN THE KDOC I WOULD NEVER THREATEN SOMEONE AND GO TO SLEEP OR UNINDED)*

*(handwritten: I WOULD CALL HAVING A KNIFE THRUST THROUGH THE TEMPLE INTO BRAIN LIFE THREATENING - BEEING STABBED IN THROAT LIFE THREATENING FORE-ARM CUT IN HALF LIFE THREATENING)*

John G. Cannon, Special Agent Supervisor
Enforcement, Apprehension, & Investigations
Kansas Department of Corrections
Office: 316.322.2017; Direct 316.322.2013; Cell:
316.244.2587
1737 SE Highway 54, P.O. Box 311, El Dorado, KS
67042

John.Cannon2@ks.gov

*In God We Trust, All others we run through NCIC*

NOTICE-CONFIDENTIAL: This message and any attached files, in their entirety, are intended for the use of the individual and/or entity referenced above and may contain information that is privileged, confidential, and/or exempt from