IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF KANSAS 10TH CIRCUIT

TO: CLERK OF THE COURT - JUDGE J.W. LUNGSTRUM
444 S.E. QUINCY
TOPEKA, KANSAS 66683

CASE NO: 5-23-CV-03051-JWL
555 HABEAS CORPUS
42 USC§ 1983

FROM: RONNIE ALLEN BELLAMY Jr (53454)
LCF P.O. BOX 2
LANSING, KANSAS 66043

RE: ACTIVITY - ENTRY OF EVIDENCE - WITNESS AND MULTIPLE DEFENDANTS LISTED ON AFFIDAVIT, AND AN ADMITTANCE BY NO LESS THAN 4 - STATE OF KS - KDOC - SOC - DEPT OF JUSTICE ET. ALS., ON AND BY ACTUAL WITNESSING AND RECORDED - RETRIEVABLE - VIDEO - VISUAL - AUDIO RECORDED FOOTAGE, TO CONSPIRACY TO COMMIT MURDER BY INMATE DEFENDANT(S) - AND KDOC - SECURITY OFFICERS - PERSONNEL - STATE OF KANSAS ET. ALS., - SECRETARY OF CORRECTIONS ET. ALS.,

B/ Ron Bellamy RB

# AFFIDAVIT

ON SUNDAY 4-9-2023, AFTER 9:45 A.M. COUNT DUE TO A DISTURBANCE IN POPULATION COI ALLEN TOLD ME I RONNIE ALLEN BELLAMY JR #53454, WAS ON THE RUN OUT LIST AND MOVING TO A-7-201. AND I WAS ESCORTED TO A-7- BY COI ALLEN, AND THE FOLLOWING TOOK PLACE, DEFENDANTS-WITNESSES CSI-KDOC-SOC-STATE OF KS- SST-SORT MERIDETH, CSI-KDOC-SOC-STATE OF KS- CONSPIRATOR TO COMMITT MURDER, BOTH ON DUTY ACTING UNDER COLOR OF LAW STATE AND FEDERAL- CONSTITUTIONAL LAW, AND CONTRACT- **WAGNER LARRY E.** NOTICED INMATE DEFENDANT, BRIAN LIZARD FELLERS # 6003270, LIVED IN A-1-209, 4-DOORS, FROM ME WITH HIS NEW CO-CONSPIRATOR ROOP #_____ CELL MATE. AS I HAD ALREADY TURNED IN A GRIEVANCE ON THIS ISSUE- WHILE IN A-1-205, TO LTS MEREDITH, HAVEING NO IDEA THAT LIZARD FELLERS, WAS IN POPULATION, IN TRU-UNIT, AFTER HAVING TRIED TO MURDER ME ON 9-29-2022, WITH THE HELP OF CSI-LARRY E. WAGNER, WHO OPENED MY DOOR FOR WOULD BE ASSASIN WITH KNIFE IN HAND- KNOWING THAT WAS HIS INTENT AS I- RONNIE ALLEN BELLAMY JR #53454- LIVED ALONE. UPON BRINGING PROPERTY TO MY ASSIGNED ROOM A-7-201, MENTAL HEALTH UNIT, I WAS TALKING

PG 1 OF 3

to CSI Wagner and asking COI Allen, to make sure they know I am minimum custody. And CSI Wagner spoke and I stated "you - Wagner are the one who opened my door on 9-29-2022, so Brian Lizard Fellers #6003270, could stab me knowing I live alone single cell status", to which CSI Merideth, stated before I could say anything else "Its called Reckless Endangerment", making it clear that this facility and employees are and have been aware of the lawsuit and these conspiratorial violations, as Plaintiff asked to prosecute all involved, and take the stand at jury trial - to which both officers as COI Allen had left, this was not our idea. And CSI Larry E. Wagner, stated "I thought I heard your voice saying to open my door", Plaintiff lived in A-7-239, single cell last cell in the cellhouse - completely impossible for CSI Wagner to hear that in a locked - solid doored cell, to which Plaintiff stated I put Christopher Hunt in as a witness as he watched the video and found me not guilty of the fake D.R. You wrote and CSI Merideth, stopped speaking, and contacted

# AFFIDAVIT - LEGAL DOCUMENT

Unit Team Withers, at home, an administrative member and showed me on his phone the back and forth e-mails, and stated would you be okay with staying in your room and eating in until I get there tomorrow and that door will NOT open for anything - I stated yes. And then CSI Larry E. Wagner, gathered his belongings and left and his replacement showed up. As shift change took place CSI Merideth asked me prior to that as quietly as he could if I was okay, and I said yes. I was asked by their relief CSI Anderson are you still veg diet, I said no regular. And a couple of hours later I said if you have some extra trays in the morning keep me in mind, CSI Anderson, said about that LT. Barnett, said you are going to breakfast no matter what. Plaintiff said call Lt Withers, at home and check the pass ons. You have to know whats going on you asked me what my diet was, so CSI Merideth, passed on the information and documented it. And Anderson, said we aint calling anyone at home and I don't want to be in your lawsuit, theres nothing I can do for you, its Lt. Barnett      PG 3 of 3    s/ Ron Beely RB

Sworn to under the penalty of perjury & notary

                                    s/ _____
                                    NOTARY SIGNATURE

MH/MR Act Lake County Estates Inc. v. Tahoe Regional Planning Agency. 440 U.S. 391 (1979), Mat. 400-402 – Id. at 400-402

§ 2.10 Sovereign Immunity as a Limit on the Federal Judicial Power

If federal jurisdiction is based on the existence of a federal question or some other clause of Article 3, however the 11th Amendment has no relevance.

The distinction between "Official Capacity" and "Individual" capacity – discussed in § 2.10.2 at notes 44-51, supra.

§ 2.10.3 The application of the 11th Amendment: Whats barred and whats allowed.

See e.g., Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977); Lincoln v. Luning, 133 U.S. 529 (1890). Some criticize these decisions on the ground that states should be able to transfer their immunity to local governments, which are created by the state and through which the states govern. See e.g., Margreth Barrett, Comment The Denial of 11th Amendment Immunity to Political Subdivisons of the States: An Unjustified Strain on Federalism, 1979 Duke L.J. 1042.

§ 2.10.4 John V. Orth, The Judicial Power of the US: The 11th Amendment in American History 41 (1987).

§ 2.10.4.2 The 11th Amendment is concerned with protecting state treasury, **not individual officers**, but does not stop individual and joining of official capacity for **money** damages.

See attached affidavits **and** body of complaint, and request for jury trial. Constitutional law bars 11th Amendment immunity for all public officials and officers

Ronnie Allen Bellamy Jr. #53454

714 S.W. Jackson St., Suite 300
Topeka, KS 66603

**Kansas**
Department of Corrections

Phone: (785) 296-3317
Fax: (785) 296-0014
kdocpub@ks.gov
www.doc.ks.gov

Jeff Zmuda, Acting Secretary

Laura Kelly, Governor

==CIVIL RIGHTS ASSURANCES & NO RETALIATION==
==The following replaces similar notices found in IMPP 01-128==
==Effective - December 2, 2019==

**Notice of Prohibited Discrimination:** The founding principle of Title VI of the Civil Rights Act of 1964 was that "no person in the United States shall, on the basis of race, color, or national origin, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Later civil rights laws, regulations and executive orders provided similar protections to additional groups when Federal funds are involved.

It is the policy of the Kansas Department of Corrections (KDOC) that all individuals have the right to participate in employment, programs, and activities operated by the KDOC regardless of race, color, national origin, sex, religion, disability, and age. As a condition of state and/or federal grant funding, the KDOC agrees to operate in compliance with the following statutes and regulations and all other regulations implementing the same, regarding all aspects of Agency programs and services:

- Title VI of the Civil Rights Act of 1964, prohibits discrimination on the basis of race, color or national origin in the delivery of services and also entails taking reasonable steps to ensure that persons with Limited English Proficiency (LEP) have meaningful access to Agency programs or activities. An LEP person is one whose first language is not English and who has a limited ability to read, write, speak, or understand English. (42 U.S.C. § 2000d), and the Department of Justice (DOJ) implementing regulations at 28 C.F.R. Part 42, Subpart C;

- The Omnibus Crime Control and Safe Streets Act (SSA) of 1968, prohibits discrimination on the basis of race, color, national origin, religion, or sex in the delivery of services and employment practices (42 U.S.C. § 3789d(c)(1)), and the DOJ implementing regulations at 28 C.F.R. Part 42, Subpart D;

- Section 504 of the Rehabilitation Act of 1973, prohibits discrimination on the basis of disability in the delivery of services and employment (29 U.S.C. § 794), and DOJ implementing regulations at 28 C.F.R. Part 42, Subpart G; and Title II of the Americans with Disabilities Act (ADA) of 1990, each as amended by the ADA Amendments Act (ADAAA) of 2008, prohibit discrimination on the basis of disability in the delivery of services and employment practices (42 U.S.C. § 12132), and the DOJ implementing regulations at 28 C.F.R. Part 35 (section 504 applies when an organization of 50 or more persons receives $25,000.00 or more in federal financial assistance).

- Title IX of the Education Amendments of 1972, prohibits discrimination on the basis of sex, in educational programs (20 U.S.C. § 1681), and the DOJ implementing regulations at 28 C.F.R. Part 54;

- The Age Discrimination Act of 1975, applies to people of any age and prohibits discrimination on the basis of age, in the delivery of services (42 U.S.C. § 6102), and the DOJ implementing regulations at 28 C.F.R. Part 42, Subpart I;

- Executive Order 13559, amending Executive Order 13279, and the DOJ implementing regulation calls for Partnerships with Faith-Based and Other Neighborhood Organizations. 28 C.F.R. pt. 38 (they prohibit discrimination in federally assisted social service programs based on religion in the delivery of services or benefits);

- Section 1407 of the Victims of Crime Act (VOCA) of 1984, prohibits discrimination on the basis of race, color, national origin, religion, sex, or disability (42 U.S.C. § 10604 *et seq.*);

- The Juvenile Justice and Delinquency Prevention Act (JJDPA) of 2002 (42 U.S.C. § 5672b); and Violence Against Women Act (VAWA) of 1994, as amended, 42 U.S.C. § 13925(b)(13), prohibit discrimination in programs either funded under the statute or administered by the Office on Violence Against Women, both in employment and in the delivery of services or benefits, based on actual or perceived race, color, national origin, sex, religion, disability (they refer to the SSA for enforcement).
  - KDOC receives funds under the Violence Against Women Act of 1994, as amended, and covered protections include those individuals regardless of their sexual orientation or gender identity.

Each of the laws listed above prohibit a recipient or subrecipient from retaliating against any individual for making a claim or participating in action to secure rights protected by the laws.

DESIGNATION OF CIVIL RIGHTS PROGRAM'S COORDINATOR: In compliance with the Americans with Disabilities Act of 1990 (ADA); Section 504 of the Rehabilitation Act of 1973; Title IX of the Education Amendments Act of 1972; and, the Juvenile Justice and Delinquency Prevention Act (JJDPA); any complaints and questions regarding discrimination in any of the Kansas Department of Correction's civil rights programs, activities and employment, or similar complaints related to those of the KDOC's vendors, contractors, volunteers and subrecipients, may be directed to the Agency Coordinator/Liaison designated below:

> Mike Smith, Civil Rights Programs Manager
> Kansas Department of Corrections
> 714 SW Jackson St, 3rd Floor
> Topeka, KS 66612
> Toll Free Telephone: 1-844-522-1956
> Fax: 785-368-6565
> Hearing Impaired: 711
> e-mail: mike.smith@ks.gov

People wishing to file a complaint may also at any time report concerns to:

| Office of Justice Programs | and/or | Kansas Governor's Grants Program |
|---|---|---|
| Office of Civil Rights | | 900 SW Jackson St. |
| 810 7th Street NW | | Landon State Office Building, Room 304 North |
| Washington, DC 20531 | | Topeka, KS 66612 |
| Telephone: 202-307-0690 | | Telephone: 785-291-3205 |
| Fax: 202-616-9865 | | Fax: 785-291-3204 |
| TTY: 202-307-2027 | | e-mail: erica.haas@ks.gov |

Sincerely,

*[signature]*

Jeff Zmuda, Acting Secretary
Kansas Department of Corrections



Legal Services
555 S. Kansas Ave., 6th Floor
Topeka, KS 66603

**Kansas**
Department for Children
and Families

Phone: (785) 296-3967
Fax: (785) 296-4960
www.dcf.ks.gov

Laura Howard, Acting Secretary

Laura Kelly, Governor

## Americans with Disabilities Act

## NOTICE TO THE PUBLIC

It is the policy of the State of Kansas to comply with provisions of the Americans with Disabilities Act, 42 U.S.C.A. Section 12101, et seq. ("ADA"). The ADA prohibits discrimination against qualified individuals with disabilities on the basis of their disability. The ADA provides, in part, that qualified individuals with disabilities shall not be excluded from participating in or be denied the benefits of any program, service or activity offered by the State.

The ADA requires that all programs services and activities, when viewed in their entirety, are readily accessible to and usable by qualified individuals with disabilities. State agencies must communicate effectively with individuals with speech, visual and hearing impairments and provide auxiliary communication aids to qualified individuals with disabilities participating in or benefiting from the State's programs, services or activities to afford equal opportunity.

Should you wish to review the ADA or its interpretive regulations, ask questions about your rights and remedies under the ADA, request a reasonable modification to the State's policies, practices or procedures, or file a written grievance alleging noncompliance with the ADA, please contact the State ADA Coordinator as listed below.

|   |   |
|---|---|
| **NAME:** | Anthony A. Fadale |
| **ADDRESS:** | Kansas Department for Children and Families<br>DCF Administration Bldg.<br>555 S. Kansas Avenue, 1st Fl<br>Topeka, KS 66603 |
| **TELEPHONE:** | Voice (785) 296-1389<br>Fax: (785) 296-4960<br>TTY: 711 |
| **E-MAIL ADDRESS:** | Anthony.Fadale@ks.gov |

# KANSAS DEPARTMENT OF CORRECTIONS

| | INTERNAL MANAGEMENT POLICY AND PROCEDURE | SECTION NUMBER<br>12-116D | PAGE NUMBER<br>1 of 2 |
|---|---|---|---|
| | | SUBJECT:<br>SECURITY AND CONTROL: Polygraph Examinations of Offenders | |
| **Approved By:**<br><br>Secretary of Corrections | | Original Date Issued: | 11-03-15 |
| | | Replaces Version Issued: | N/A |
| | | CURRENT VERSION EFFECTIVE: | 11-03-15 |

| APPLICABILITY: | _ ADULT Operations Only | _ JUVENILE Operations Only | X DEPARTMENT-WIDE |
|---|---|---|---|

## POLICY STATEMENT

Procedures shall be developed for the administration of polygraph examinations to offenders as may be required to complete an investigation. Polygraph examinations shall be administered only with the offender's written consent. Absolutely no polygraph examinations shall be administered to alleged victims of sexual assault/abuse in connection with the alleged offenses involved.

Polygraph examination results shall not be considered conclusive evidence or utilized as substitutes for facility disciplinary hearings or post incarceration supervision revocation actions. Except when the polygraph is required as a condition of participation in a treatment program, the refusal of an offender to submit to a polygraph examination shall not be the basis for disciplinary or post incarceration supervision revocation actions, or, reported to the offender's file.

Polygraph examinations requested by outside agencies or individuals may be allowed. The agency or individual requesting such an examination shall be responsible for any cost associated with the administration of the examination.

## DEFINITIONS

None.

## PROCEDURES

I. **Offender Consent**

    A. The offender's consent shall be obtained using the Offender's Consent to Polygraph Examination form (Attachment A), prior to the administration of any polygraph examination.

II. **Authorization for and Purpose of Polygraph Examinations**

    A. No offender shall be requested to submit to a polygraph examination as a part of an internal investigation or on the request of outside agencies or individuals without the prior approval of the warden/superintendent. In making this decision, the following shall be taken into consideration:

        1. The matter under investigation;

        2. The need to determine if the offender has been truthful during other phases of an investigation; and,

   3. The investigative efforts which have been expended or remain to be utilized.

III. **Scheduling of Polygraph Examinations**

  A. Schedules for approved polygraph examinations to be administered on departmental premises shall be limited to times and locations within the facility or office which provide for a minimum of disruption to the daily administration of the facility or parole office.

**NOTE:** The policy and procedures set forth herein are intended to establish directives and guidelines for staff and offenders and those entities that are contractually bound to adhere to them. They are not intended to establish State created liberty interests for employees or offenders, or an independent duty owed by the Department of Corrections to employees, offenders, or third parties. Similarly, those references to the standards of various accrediting entities as may be contained within this document are included solely to manifest the commonality of purpose and direction as shared by the content of the document and the content of the referenced standards. Any such references within this document neither imply accredited status by a Departmental facility or organizational unit, nor indicate compliance with the standards so cited. The policy and procedures contained within this document are intended to be compliant with all applicable statutes and/or regulatory requirements of the Federal Government and the state of Kansas. This policy and procedure is not intended to establish or create new constitutional rights or to enlarge or expand upon existing constitutional rights or duties.

**REPORTS REQUIRED**

None.

**REFERENCES**

None.

**ATTACHMENTS**

| Attachment | Title of Attachment | Page Total |
|---|---|---|
| A | Offender's Consent to Polygraph Examination | 1 page |

Attachment A, IMPP 12-116D
Effective 11-03-15

# KANSAS DEPARTMENT OF CORRECTIONS
## OFFENDER'S CONSENT TO POLYGRAPH EXAMINATION

A. Name of Correctional Facility or Parole Office  _LANSING CORRECTIONAL FACILITY_

B. Name of Examiner  _____

C. Employer of Examiner  _____

D. Name of Offender  _RONNIE ALLEN BELLAMY JUNIOR_

DOC Number  _0053454_

I hereby consent to a polygraph examination by the above-named examiner. I understand that this is a voluntary examination. I further understand that the results of this polygraph examination shall not be considered as conclusive and that disciplinary action or post incarceration supervision revocation action shall not be taken based on the results of this examination.

_Ronnie Allen Bellamy Junior_   _1-9-2023_
Signature of Offender                Date

_[signature]_                         _2-15-23_
Witness                               Date

_____   _____
Witness                               Date

PLEA AGREEMENT AND SENTENCE VACATED SNT VAC
JOURNAL ENTRIES 91CR00032 - 1991 WY CO KS NEVER RELEASED
91CR 0493B - 1991 WY CO KS NEVER RELEASED
AND ALL AFFIDAVITS 96 08 CR 606 - LV CO KS ALSO ILLEGAL
96 07 CR 481 - LV CO KS DUE TO SERVING
GOD BE MY WITNESS ALREADY ILLEGAL
ALWAYS BE AND BE SO IMPRISONMENT
NEVER RELEASED

REVISED December 2022

ADMINISTRATIVE PROCEDURES FOR FILING, SIGNING, AND VERIFYING PLEADINGS AND PAPERS BY ELECTRONIC MEANS IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

case.

L. **PRISONER E-FILING**

Documents submitted by prisoners incarcerated by the Kansas Department of Corrections must be electronically submitted to the court as follows:

1. Prisoner litigants will scan pleadings in civil actions on a digital sender or similar equipment.

2. Once the document has been scanned, the prisoner will email the pleading to the court at: ksd_clerks_topeka@ksd.uscourts.gov.

3. The court will e-file these pleadings upon receipt by email.

4. Upon filing, the court will create a Notice of Electronic Filing (NEF), which will confirm the date the pleading was e-filed by the court and contain an electronic link to the document.

5. A party may not electronically serve a complaint, but instead must effect service according to Federal Rules of Civil Procedure.

6. Once defendants or respondents have accepted such service, however, the NEF for a subsequent prisoner pleading shall constitute service of the document by first class mail, postage prepaid. The NEF will be transmitted to an email address established by the court upon the designation of the facility and will be distributed through institutional channels to the inmate.

7. Documents filed by defendants or respondents will continue to be mailed by those parties, and orders entered by the court will be transmitted by mail.

8. The electronic transmission of correspondence and court filings is free to prisoners; however, statutory filing fees apply to these actions and are not affected by e-filing.

9. Prisoner participants in the e-filing pilot project remain subject to the provisions of Local Rule 9.1. Initial court filings, such as petitions and complaints, submitted by these participants must be transmitted on official forms, and all court filings must contain the prisoner's conviction name and KDOC identification number, the name of the opposing party, the case number, if one has been assigned, and signature. The failure to provide this information may result in delay in processing of the

incomplete submission. Complete copies of the rules of the court are available for review in the law library.

10. Questions regarding filing by prisoners who are in segregated housing should be directed to the facility librarian.

11. A prisoner who is transferred to any facility not designated for inclusion by the Department will resume the submission of pleadings by mail.

M. **CJA FEE MATTERS**

All fee matter documents should be forwarded directly to the CJA Coordinator in the Federal Public Defender's Office. These documents are not filed in the System.

III. **FILING OF DOCUMENTS OTHER THAN THROUGH THE SYSTEM**

The following procedures govern documents filed conventionally or other than through the System. The court, on motion, may also authorize conventional filing of other documents otherwise subject to these procedures.

A. **PRO SE FILERS IN CRIMINAL CASES AND UNREGISTERED PRO SE FILERS IN CIVIL CASES**

Pro se filers shall file paper originals of all pleadings, motions, affidavits, briefs, and other documents that must be signed or that require either verification or an unsworn declaration under any rule or statute. The clerk's office will scan these original documents into an electronic file in the System. The court will not maintain the paper copy of the document.

A pro se party in a civil case who elects to not become a registered user of the System must file according to one of the options set forth below:

1. **Filing Options.**

    a. **Conventionally.** Original documents may be submitted by mail or in person to the clerk's office. The clerk's office will file stamp the documents on the date they were received, scan the original documents into an electronic format and file them in the System.

    b. **Email.** Documents bearing an original signature may be scanned and submitted as an attachment to an email sent to the clerk's office (see email addresses below). Documents submitted by email must be in PDF format and must comply with administrative