IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RONNIE ALLEN BELLAMY, JR.,

    **Plaintiff,**

    v.                                         CASE NO. 23-3051-JWL

STATE OF KANSAS, et al.,

    **Defendants.**

**MEMORANDUM AND ORDER**

    Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is incarcerated at the Lansing Correctional Facility in Lansing, Kansas ("LCF"). On March 14, 2023, the Court entered a Memorandum and Order to Show Cause (Doc. 11) ("MOSC") ordering Plaintiff to show good cause why his Complaint should not be dismissed for the reasons set forth in the MOSC, and granting Plaintiff an opportunity to file an amended complaint to cure the deficiencies. Plaintiff filed an Amended Complaint (Doc. 12), and the Court entered a Memorandum and Order to Show Cause (Doc. 23) ("MOSC II") directing Plaintiff to show good cause why his Amended Complaint should not be dismissed for the reasons set forth in the MOSC II, and granting Plaintiff an opportunity to file a second amended complaint to cure the deficiencies. This matter is before the Court for screening Plaintiff's Second Amended Complaint at Doc. 24.

**I. Nature of the Matter before the Court**

    The facts underlying Plaintiff's claims and the Court's screening standards are set forth in detail in the MOSC and MOSC II. In summary, Plaintiff's Second Amended Complaint claims that he has been assaulted on multiple occasions at LCF due to a failure to protect him. Plaintiff also claims that he did not receive proper medical care after the attacks.

Plaintiff alleges that he was attacked in his sleep, causing him to be placed in the mental health unit.[1]  Plaintiff alleges that after this initial attack, he has been attacked four additional times at LCF as follows:

1.  Plaintiff alleges that he was attacked in the hallway at LCF when he was returning from chow on October 12, 2021.  Plaintiff alleges that the injuries he suffered were caused by the SST officer tackling Plaintiff from the side while Plaintiff was attempting to defend himself.  Plaintiff alleges that he suffered from whiplash and was placed in segregation.

2. Plaintiff alleges that he was attacked from behind by a gang member in the hallway at LCF when he was returning from breakfast on May 18, 2022.  Plaintiff attached a statement from an eyewitness that claims Plaintiff was hit about ten times by another inmate who had a sock with a weight in it.  He claims Plaintiff "passed out," and when he regained consciousness he started going to his cell. Plaintiff alleges that he was beaten severely, received a severe concussion, was unable to walk or stand without assistance for 17 days.  Plaintiff claims he was thrown in a crisis strip cell without proper medical care for his head injury.  Plaintiff alleges that although he was unconscious several times and disoriented, he was forced to walk to the medical clinic.  Plaintiff alleges that he was prescribed Meclizine for dizziness at some point, but was never taken to the hospital.

3.  Plaintiff claims that on September 29, 2022, CS1-OIC Larry E. Wagner opened Plaintiff's cell door, knowing Plaintiff lives alone, to allow another inmate holding a knife to enter Plaintiff's cell to attempt to stab Plaintiff.  Plaintiff alleges that this was done to coverup criminal activity by another inmate.

---

[1] This initial incident occurred at the El Dorado Correctional Facility and was the subject of a prior case.  *See Bellamy v. Cline*, Case No. 20-cv-3229-DDC-ADM (D. Kan.).

4.  Plaintiff alleges that he was attacked from behind at the entry to the chow hall at LCF on October 7, 2022.  Plaintiff alleges that SST-SORT Officer Hristofidus held the door for the attacker.  Plaintiff alleges that when he went to grab his attacker, SST-Sort Busby was already tackling Plaintiff from the side, despite seeing that Plaintiff was bleeding from his head and the attacker was standing there with the weapon.  Plaintiff alleges that this attack was related to the September 29, 2022 attack.  Plaintiff alleges that his injuries required staples, sutures, and reattachment of Plaintiff's ear.  Plaintiff alleges that following the attack he was required to spend 6 months in restricted housing without privileges. Plaintiff alleges that after the disciplinary hearing officer watched the video of the incident Plaintiff was released from segregation.

Plaintiff alleges that despite suffering serious injuries, he was not taken to the hospital and was made to get up off the floor on his own and walk to medical.  Plaintiff claims that after the attacks he was placed in a strip cell used for drug overdoses and suicide watches, or in segregation.  Plaintiff alleges that the attacks, except for the one occurring in Plaintiff's cell, were done by general population inmates and should not have been possible due to the separation of the mental health unit and general population and the fact that they are not supposed to have yard or chow together.  Plaintiff also alleges that staff were aware of the attacks and failed to protect Plaintiff.

## II.  DISCUSSION

### 1.  Heck Bar and Habeas Nature of Claim

The Court has previously found that to the extent Plaintiff challenges the validity of his sentence in his state criminal case, his federal claim must be presented in habeas corpus; and before Plaintiff may proceed in a federal civil action for monetary damages based upon an

invalid conviction or sentence, he must show that his conviction or sentence has been overturned, reversed, or otherwise called into question. *Heck v. Humphrey*, 512 U.S. 477 (1994).

Therefore, to the extent Plaintiff continues to challenge his state conviction and sentence in his Second Amended Complaint, those claims must be brought pursuant to a petition for writ of habeas corpus. Because those claims are not properly brought in a § 1983 action, they are dismissed. *See* Doc. 24, at 2 (claiming his sentence was vacated and that he has been illegally imprisoned for 32 years); *id*. at 5 (claiming he is in prison unconstitutionally due to an illegal plea agreement); *id*. at 7 (seeking immediate release from prison and from illegal convictions in request for relief); *id*. at 15 (seeking compensatory damages for illegal confinement, a court order vacating his sentence, and his immediate release).

### 2. Improper Defendants

The Court has also found that the State of Kansas and its agencies are absolutely immune from suits for money damages under the Eleventh Amendment. The Eleventh Amendment presents a jurisdictional bar to suits against a state and "arms of the state" unless the state waives its immunity. *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (quoting *Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009)). Therefore, in the absence of some consent, a suit in which an agent or department of the state is named as a defendant is "proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). It is well established that Congress did not abrogate the states' sovereign immunity when it enacted § 1983. *Quern v. Jordan*, 440 U.S. 332, 338–45 (1979); *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002). Defendants State of Kansas and the KDOC are dismissed from this action.

Plaintiff also names Jeff Zmuda, the Secretary of Corrections, as a defendant. The Court advised Plaintiff that he must show how each named defendant personally participated in the

deprivation of his constitutional rights. Plaintiff cannot rely on the supervisory status of a defendant. An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) ("But § 1983 imposes liability for a defendant's own actions—personal participation in the specific constitutional violation complained of is essential.") (citing *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.") (citation omitted)); *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) ("In order for liability to arise under § 1983, a defendant's *direct personal responsibility* for the claimed deprivation . . . must be established.") (emphasis added) (citation omitted)). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

Mere supervisory status is insufficient to create personal liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (supervisor status is not sufficient to create § 1983 liability). An official's liability may not be predicated solely upon a theory of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Gagan v. Norton*, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995). A plaintiff alleging supervisory liability must show "(1) the defendant promulgated, created, implemented or possessed responsibility for

the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, 563 U.S. 960 (2011). "[T]he factors necessary to establish a [supervisor's] § 1983 violation depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision." *Id.* at 1204 (citing *Iqbal*, 129 S. Ct. at 1949). Plaintiff has failed to allege how the Secretary of Corrections personally participated in the deprivation of his constitutional rights, that this defendant is responsible for a policy that caused the alleged constitutional harm, or that he acted with the state of mind required to establish the alleged constitutional violation. Plaintiff's claims against this defendant are dismissed.

### 3. Failure to Protect and Medical Care

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "Under the Eighth Amendment, prison officials have a duty to 'provide humane conditions of confinement,' including 'tak[ing] reasonable measures to guarantee the safety of . . . inmates.'" *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 800 (2019) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks omitted)). This duty includes "a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (ellipsis and quotation marks omitted). To prevail on a failure to protect claim, a plaintiff must show: "(1) 'that the conditions of his incarceration present an objective substantial risk of serious harm' and (2) 'prison officials had subjective knowledge of the risk of harm,' '[i]n other words, an official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Requena*, 893 F.3d at 1214 (citation omitted).

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).  The "deliberate indifference" standard includes both an objective and a subjective component.  *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted).

In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer*, 511 U.S. at 834, *Martinez*, 430 F.3d at 1304 (citation omitted).  A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id*. (quoting *Sealock*, 218 F.3d at 1209).  In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

The Court finds that the proper processing of Plaintiff's Eighth Amendment claims cannot be achieved without additional information from appropriate officials of LCF.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).  Accordingly, the Court orders the appropriate officials of LCF to prepare and file a *Martinez* Report.  Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A.

**III. Motions**

Plaintiff has filed a response (Doc. 25) and a Motion for Discovery (Doc. 26). Plaintiff's motion does not specify what discovery he is seeking, and the Court finds that a request for discovery is premature. The Court is ordering a *Martinez* Report and Plaintiff will be given an opportunity to respond to that report.

Plaintiff's motion also states that it is an affidavit in support of his motions for appointment of counsel. However, the Court has already denied the motions for appointment of counsel. In the MOSC II, the Court addressed Plaintiff's two additional motions to appoint counsel (Docs. 14, 22), and denied the two new motions for the same reasons set forth in the MOSC in denying Plaintiff's previous motion (Doc. 3). *See* Doc. 11, at 15–16.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Discovery (Doc. 26) is **denied.**

**IT IS FURTHER ORDERED THAT** Plaintiff's claims regarding his state court sentence and conviction are dismissed.

**IT IS FURTHER ORDERED THAT** Plaintiff's claims against the State of Kansas, the KDOC, and Jeff Zmuda are **dismissed**.

**IT IS FURTHER ORDERED THAT:**

(1) The Court will enter a separate e-service order directing the Clerk of Court to serve the remaining defendants.

(2) The Kansas Department of Corrections ("KDOC") shall submit the *Martinez* Report within **sixty (60) days** following the electronic filing of the Waiver of Service Executed. Upon the filing of that Report, the Court will screen Plaintiff's Second Amended Complaint. If the Second Amended Complaint

survives screening, the Court will enter a separate order setting an answer deadline. Therefore, any answer deadline provided in the docket entry for the waiver of service is not controlling.

(3) Officials responsible for the operation of LCF are directed to undertake a review of the subject matter of the Second Amended Complaint:

a. To ascertain the facts and circumstances;

b. To consider whether any action can and should be taken by the institution to resolve the subject matter of the Second Amended Complaint; and

c. To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Second Amended Complaint and should be considered together.

(4) Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff. If the KDOC officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s). The KDOC officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(5) Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report. Any recordings related to Plaintiff's claims shall also be included.

(6) Authorization is granted to the officials of LCF to interview all witnesses having knowledge of the facts, including Plaintiff.

(7) No motion addressed to the Second Amended Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(8) Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the Second Amended Complaint. This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter KDOC as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein. Upon the filing of that report, KDOC may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, to Defendants, and to the Attorney General for the State of Kansas.

**IT IS SO ORDERED.**

**Dated May 3, 2023, in Kansas City, Kansas.**

> **S/ John W. Lungstrum**
> **JOHN W. LUNGSTRUM**
> **UNITED STATES DISTRICT JUDGE**