## IN THE UNITED STTAES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **RONNIE ALLEN BELLAMY JR.,** | ) |
| **Plaintiffs,** | ) |
| v. | ) Case No. 23-3051-JWL |
| **JAMES ENGLIS, et al** | ) |
| **Defendants.** | ) |

## DECLARATION OF LARRY WAGNER

Comes now, Larry Wagner, and declares under penalty of perjury as follows:

1. My name is Larry Wagner. I am of lawful age to make this declaration and have personal knowledge of the matters stated below.

2. On September 29, 2022, I was employed by the Kansas Department of Corrections ("KDOC") as an Officer in Charge, and I remain employed by the KDOC to date.

3. I have reviewed my files related to the incident which is the subject matter of this litigation, and electronic records of the KDOC. The statements provided herein are either based on personal knowledge, and or drawn from records kept in the ordinary course and scope of business of the KDOC and are true and correct to the best of my knowledge.

4. On September 29, 2022, the date of the incident described in Plaintiff's complaint, I was working the 6:00 a.m. – 6:00 p.m. shift in A7 cellhouse at LCF.

5. The incident occurred around 4:30 p.m., when there was a mass movement of inmates coming back from chow.

6. I heard Bellamy yell out his cell number (A7-239), which is common when there is an altercation.

7. I electronically opened his cell door before arriving, which is standard operating procedure when responding to a physical altercation in order to save time.

8. I immediately called an alarm for officer assistance.

9. I was the first officer to arrive to the scene of the incident.
10. When I arrived, Bellamy had Fellers in a headlock outside the cell door. Bellamy had Fellers' armed pinned against the floor, which was holding a stabbing device.
11. While breaking up the physical altercation, I ordered the inmates to stop. When they did not initially stop, I pulled my Oleoresin Capsicum (OC) spray and ordered the inmates to stop once again. This is standard operating procedure.
12. I did not use the OC spray on Bellamy or any other inmate.
13. Once Bellamy and Fellers were separated and in handcuffs, the weapon was secured, and both inmates were taken to the clinic, then segregation.
14. Initially, I thought Bellamy and Fellers had been in a fight. After submitting disciplinary reports against both Bellamy and Fellers, I later learned Fellers had attempted to attack Bellamy with a stabbing device.
15. Bellamy never expressed any fear or concern for his safety to me prior to the September 29, 2022 incident.
16. I did not have knowledge of any threat to Bellamy from Fellers, or any other inmate, prior to the September 29, 2022 incident.
17. If any fear or concern had been expressed, or if I had any prior notification of a threat of attack, I would have had Bellamy sign a protective custody waiver, or I would have gone through the necessary steps to place Bellamy in protective custody.
18. When placing an inmate in protective custody, the officer is to notify the shift supervisor, have the inmate write a written statement that includes the perceived threat, and then remove the inmate from his/her current cell and be placed into protective custody.
19. True and correct copies of the Disciplinary Reports I prepared after the incident are attached hereto as Exhibit H.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August __10___, 2023.

_ *Larry Wagner* _____

Larry Wagner