IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| RONNIE ALLEN BELLAMY, JR., ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 23-3051-HLT-BGS |
| ) | |
| STATE OF KANSAS, *et al.*, ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## **DEFENDANTS' MOTION TO DISMISS,**

Defendants James Englis and Larry E. Wagner ("Defendants"), respectfully request, through Assistant Attorney General Matthew L. Shoger, that this Court dismiss the claims against them under Fed. R. Civ. P. 12(b). They attach one new exhibit – Exhibit A (Declaration of Darcie Holthaus) – and state the following in support.

## **NATURE OF THE CASE**

Plaintiff Ronnie Allen Bellamy, Jr., alleges (among other events) that on September 29, 2022 – while incarcerated under the Kansas Department of Corrections (KDOC) at Lansing Correctional Facility (LCF) – another LCF inmate named Brian Fellers (#6003270) attempted to stab him and that Defendants failed to protect him. (Doc. 24 at 10-11, 2-4, 6.)

Bellamy filed his initial complaint in this case on February 17, 2023. (Doc. 1.) Bellamy filed his Second Amended Complaint ("Complaint") on April 27, 2023. (Doc. 24.) A *Martinez* Report was filed September 11, 2023. (Docs. 35-36.) All claims were dismissed on screening by November 30, 2023. (Doc. 27 at 1, 8; Doc. 51 at 1, 12.) Bellamy appealed. (Doc. 54.) The Tenth Circuit, on August 8, 2024, affirmed in part, but reversed and remanded solely with regard to Bellamy's Eighth-Amendment failure-to-protect claims against Defendants regarding one incident: the alleged attempted stabbing of Bellamy by Fellers on September 29, 2022. (Doc. 66

at 9.) For these remaining claims, Bellamy seeks compensatory and possibly punitive damages. (Doc. 24 at 7, 14 ("punitively").)[1] Defendants now file their Motion to Dismiss.

The Court should dismiss official-capacity claims for lack of subject-matter jurisdiction due to Eleventh-Amendment immunity. The Court should dismiss the remaining claims against Defendants under Rule 12(b) as a matter in abatement for failure to exhaust administrative remedies under the Prison Litigation Reform Act (PLRA). Alternatively, the Court should dismiss compensatory-damages claims for failure to state a claim due to lack of a physical injury.

## ARGUMENTS AND AUTHORITIES

**I.     The Eleventh Amendment bars Bellamy's § 1983 claims against Defendants in their official capacities.**

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss claims for lack of subject-matter jurisdiction. "Once effectively asserted, Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction." *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019). "The Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens." *Id.* (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)). State officials such as KDOC employees share the state's immunity from suits against them in their official capacities. *See id.; White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996). A narrow exception allows a plaintiff to seek prospective relief against a state official for ongoing violations of federal law. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citing *Verizon Md. Inc. v. Pub.*

---

[1] The Tenth Circuit affirmed the dismissal of Bellamy's claims regarding his sentence (Doc. 27 at 8; Doc. 66 at 9), so the corresponding requested remedy of "immediate release from prison and illegal convictions" (Doc. 24 at 7) is no longer before the Court. Alternatively, Bellamy fails to plausibly allege the "very narrow grounds" required by 18 U.S.C. § 3626(a)(3) to be released on a § 1983 claim. *See Bateast v. Orunsolu*, No. 22-3093-JWL, 2023 WL 183838, at *1 (D. Kan. Jan. 13, 2023).

*Serv. Comm'n*, 535 U.S. 635, 645 (2002)). But claims for "retrospective declaratory relief" are barred. *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004).

Here, Bellamy requests only monetary damages in the form of compensatory and possibly punitive damages (Doc. 24 at 7, 14), which are barred by the Eleventh Amendment as asserted against Defendants in their official capacities. No requests for prospective relief remain. (*See* footnote 1.) Therefore, his claims against Defendants in their official capacities should be dismissed for lack of subject-matter jurisdiction due to Eleventh-Amendment immunity.

## II. As a matter in abatement, Bellamy's claims should be dismissed because he failed to exhaust his administrative remedies under the PLRA.

### A. Exhaustion of administrative remedies is a matter in abatement, so factual disputes regarding it can be resolved on a motion to dismiss.

Federal Rule of Civil Procedure 12(d) states: "If, on a motion under *Rule 12(b)(6)* or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" (emphasis added). But a defense of failure to exhaust does not fall under Rule 12(b)(6) because it is not related to the merits of the action. *Bryant v. Rich*, 530 F.3d 1368, 1374-76 & n.12 (11th Cir. 2008) (approvingly cited by *Valenzuela v. Silversmith*, 699 F.3d 1199, 1205 (10th Cir. 2012)); *see also Valenzuela*, 699 F.3d at 1205 (saying failure to exhaust is a "threshold, nonmerits issue"), 1208 ("A dismissal based on lack of exhaustion should ordinarily be without prejudice"); *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) ("an 'adjudication upon the merits' is the opposite of a 'dismissal without prejudice'"). "Federal courts . . . traditionally have entertained certain pre-answer motions that are not expressly provided for by the rules or by statute," including

> pretrial motions . . . closely related to the management of the lawsuit [that] might be characterized in general terms as involving matters of judicial administration; the authority to hear these motions lies in the inherent power of a court to regulate actions pending before it. In this category fall motions to stay and motions to

dismiss because another action is pending.

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1360 (3d ed. June 2024 Update). The court in *Bryant* held that exhaustion of administrative remedies under the PLRA is such a matter of judicial administration. *Bryant*, 530 F.3d at 1375 (11th Cir. 2008).

"When the court treats the motion as having been brought under Rule 12(b), then it is subject to the rules and practices applicable to the most analogous Rule 12(b) motion." Wright & Miller § 1360. The *Bryant* case recognized exhaustion as a matter in abatement and compared it to how other matters in abatement are handled under Rule 12(b). *Bryant*, 530 F.3d at 1376. Black's Law Dictionary defines abatement as "[t]he suspension or defeat of a pending action for a reason unrelated to the merits of the claim." Abatement(2), Black's Law Dictionary (12th ed. 2024). So a matter in abatement is a matter that can suspend or defeat an action but is unrelated to the merits of that action. Matters in abatement include not only exhaustion but also jurisdiction, venue, and service of process, and such matters are not traditionally matters for a jury. *Bryant*, 530 F.3d at 1376-77 ("Requiring jury trials to resolve factual disputes over the preliminary issue of exhaustion would be a novel innovation for a matter in abatement" such as "the PLRA's exhaustion requirement"). Accordingly, the summary judgment standard, which considers whether "a reasonable jury could find in favor of the nonmovant," *see Sinclair Wyo. Refin. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 765 (10th Cir. 2021), does not apply, as no jury should be involved for the exhaustion issue.

> Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.

*Bryant*, 530 F.3d at 1374-75 (emphasis added); *see also* 5C Charles Alan Wright & Arthur R.

4

Miller, Federal Practice and Procedure § 1366 (3d ed. June 2024 Update) (saying "the defenses enumerated in Rule 12(b)(1) through Rule 12(b)(5) and Rule 12(b)(7) generally are not proper subjects for motions for summary judgment" because they "are in the nature of pleas in abatement"). As the Eleventh Circuit explained:

> Because the failure to exhaust is "treated as a matter in abatement and not an adjudication on the merits," the district court may consider facts outside the pleadings "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."

*Shivers v. United States*, 1 F.4th 924, 935 (11th Cir. 2021) (quoting *Bryant*, 530 F.3d at 1376).

This does not contradict any holdings from the Tenth Circuit. Because failure to exhaust is an affirmative defense, the burden of asserting failure to exhaust lies with the defendants. *Freeman v. Watkins*, 479 F.3d 1257, 1260 (10th Cir. 2007). So the Tenth Circuit limited *sua sponte* dismissals based on failure to exhaust to when the failure is evident from the face of the complaint. *Freeman*, 479 F.3d at 1260 (citing *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)). Three unpublished Tenth Circuit decisions have, in dicta, extended this limitation to motions to dismiss, but all three *affirmed* a dismissal based on failure to exhaust raised in a motion to dismiss. *Cirocco v. McMahon*, 768 F. App'x 854, 855, 858 (10th Cir. 2019) (affirming and remanding for employment-discrimination claims to be dismissed "without prejudice" based on failure to exhaust); *Burnett v. Okla. Dep't of Corr.*, 737 F. App'x 368, 371-73 (10th Cir. 2018); *Russell v. Lincoln*, 267 F. App'x 785, 787 (10th Cir. 2008). So to treat exhaustion under the PLRA as a matter in abatement would not require ignoring any holdings from the Tenth Circuit. Alternatively, Defendants make a good faith, "nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" in light of the Eleventh Circuit's sound reasoning. *See* Fed. R. Civ. P. 11(b)(2); *see also Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015) ("A defense of failure to properly exhaust available

administrative remedies under the PLRA should be treated as a matter in abatement.").

### B. Exhaustion of administrative remedies is mandatory under the PLRA.

The PLRA requires an inmate to exhaust all available administrative remedies before bringing a § 1983 claim about prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "An inmate properly exhausts a claim by utilizing each step the prison holds out for resolving the claim internally and by abiding 'with an agency's deadlines and other critical procedural rules.'" *Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020) (quoting *Woodford*, 548 U.S. at 90). "In other words, a prisoner must comply with procedural 'rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Williams v. Hill*, 422 F. App'x 682, 684 (10th Cir. 2011) (quoting *Bock*, 549 U.S. at 218).

In a suit governed by the PLRA, failure to exhaust is an affirmative defense, and the defendant has the burden of proof regarding exhaustion of administrative remedies. *Roberts v. Barreras*, 484 F.3d 1236, 1240-41 (10th Cir. 2007). The issue of Bellamy's failure to exhaust his available remedies prior to filing his lawsuit must be determined before addressing the merits of his suit. *See Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010).

The KDOC Grievance Procedure for Inmates is set forth in K.A.R. § 44-15-101 *et seq.*, and applies "to a broad range of matters that directly affect the inmate, including . . . [c]omplaints by inmates regarding policies and conditions within the jurisdiction of the facility or the department of corrections; and . . . actions by employees and inmates, and incidents occurring within the facility." K.A.R. § 44-15-101a(d)(1). Here, this regulation applies to Bellamy's § 1983 claim because his Complaint involves the alleged actions of LCF employees.

*See Lindsey v. Cook*, No. 19-3094-HLT, 2021 WL 483855, at *2 (D. Kan. Feb. 4, 2021).

An inmate must take four steps to complete the grievance process: (1) attempt an informal resolution with unit team members; (2) submit a grievance to an appropriate unit team member; (3) submit a grievance to the warden; and (4) appeal to the secretary of corrections. *Lindsey*, 2021 WL 483855, at *2; K.A.R. §§ 44-15-101(b), (d), 44-15-102(a)-(c). Step two must occur within 15 days of discovery of the issue, not counting weekends or holidays. *See* K.A.R. § 44-15-101b. If the inmate does not receive a response at steps two or three within ten days, the inmate can move to the next step in the process but must do so within three days of that deadline. *Lindsey*, 2021 WL 483855, at *3; K.A.R. § 44-15-102(a)(2), (b), (b)(3)(A)(ii), (G), (c)(1).

### C. Bellamy filed various personal injury claims and grievances that mention the September 29, 2022, incident as background information.

Bellamy is currently incarcerated (Doc. 58), and he brings conditions-of-confinement claims under § 1983, so the PLRA's exhaustion requirement applies. *See* 42 U.S.C. § 1997e(a).

*1. Personal-injury claim*

Bellamy submitted what he marked as a combined personal-injury claim and property claim on November 8, 2022. (Exhibit A at 34-36.) In that claim, Bellamy described an incident that occurred on October 7, 2022, when, according to the claim, "SST members attacked [him] and tackled [him] while another inmate Frey #124713 was beating [him] in the head from behind with a weapon," which resulted in him "bleeding profusely" and his ear having to be reattached. (Exhibit A at 34.) The claim also mentioned several other attacks on him, including the September 29, 2022, incident. (Exhibit A at 34-36.) It did not describe any injuries suffered as a result of the September 29, 2022, incident. (*See* Exhibit A at 34-36.)

The claim was returned to Bellamy unanswered on November 9, 2022, as untimely because it was based on events from September 29, 2022, and October 7, 2022, it alleged

personal injuries, and it was submitted "well past the 10 days to claim an injury." (Exhibit A at 33; *see also id.* at ¶ 16; K.A.R. § 44-16-104a(a) ("Each inmate claim for personal injury shall be submitted . . . within 10 calendar days of the claimed personal injury.").) Because it had been submitted as both a personal-injury claim and a property claim, the officer who returned it unanswered suggested resubmitting just the property claim because he could only process a claim as one type of claim at a time. (Exhibit A at 33.) So Bellamy submitted a new property claim on November 15, 2022. (Exhibit A at 31.) He attached his earlier claim and related documents from November 8th to this new property claim. (*See* Exhibit A at ¶¶ 12-14, pgs. 33-48.) He appealed the November 15th property claim to the Secretary of Corrections between November 30, 2022, and December 2, 2022. (*See* Exhibit A at ¶¶ 9-14, pg. 32.) The Secretary denied the appeal of the November 15th property claim on December 5, 2022. (Exhibit A at ¶ 11, pg. 32.) Bellamy did not appeal any other personal-injury or property claims to the Secretary regarding the September 29, 2022, incident. (Exhibit A at ¶ 15.)

    2. *Grievance appeal of grievance dated November 16, 2022*

Bellamy submitted an unnumbered grievance to his unit team on November 16, 2022. (Exhibit A at 7.) The grievance attacked his prison sentence, including his parole eligibility date, as illegal. (Exhibit A at 7-11.) It did not mention the September 29, 2022, incident. (*See* Exhibit A at 7-11.) The unit team denied the grievance on November 18, 2022, because the unit team believed Bellamy had not first attempted informal resolution. (Exhibit A at 7.) Bellamy appealed to the warden on November 23, 2022. (Exhibit A at 7.) The warden denied the appeal on November 27, 2022, because the warden interpreted the grievance as attempting to grieve custody classification. (Exhibit A at 6); *see also* K.A.R. § 44-15-101a(d)(2).

Bellamy appealed that denial to the Secretary of Corrections on December 7, 2022. (Exhibit A at ¶¶ 4-7, pg. 5.) Bellamy attached to this appeal various other assorted grievance

8

documents. (*See* Exhibit A at ¶ 7, pgs. 12-30.) As discussed herein, some of those assorted attachments mentioned the September 29, 2022, incident. The Secretary denied the grievance appeal on December 9, 2022, saying the warden's response was correct. (Exhibit A at ¶ 6, pg. 4.)

3. *Grievance dated October 20, 2022*

Bellamy submitted a grievance numbered AA2023067 to his unit team on October 20, 2022. (Exhibit A at 13.) The grievance complained that he was "housed wrongly" and should be classified as "single cell status." (Exhibit A at 13; *see also id.* at 13-19.) He claimed he was housed wrongly due to mental health issues. (Exhibit A at 13, 15, 19.) He claimed those mental health issues stemmed from various attacks on him, including the attempt by Fellers to stab him. (Exhibit A at 15-18.) The unit team denied the grievance on October 31, 2022, as it was "in regards to housing which is part of the classification decision making process." (Exhibit A at 13.)

Bellamy appealed to the warden on November 4, 2022. (Exhibit A at 13.) The warden received the appeal on November 7, 2022, and denied it on November 27, 2022, because the warden interpreted the grievance as attempting to grieve custody classification. (Exhibit A at 13, 29.) Bellamy included documents related to this grievance (including a form purporting to appeal to the Secretary on December 2, 2022) as attachments to his appeal of the November 16th grievance. (Exhibit A at 12-19, 29.) But Bellamy did not appeal it to the Secretary. (*See* Exhibit A at ¶ 8.) Accordingly, the Secretary never responded to any such appeal. (*See* Exhibit A at 12.)

4. *Grievance dated November 15, 2022*

Bellamy submitted a grievance that was apparently also numbered AA2023067 to his unit team on November 15, 2022. (Exhibit A at 22.) Bellamy noted on the form that the grievance number "was wrongly assigned to separate multiple grievances because of stacking." (Exhibit A at 22 (underlining in original); *see also id.* at 21 (also commenting on the numbering).) The grievance complained about his Administrative Segregation Review, calling it an "absolute lie."

9

(Exhibit A at 23; *see also id.* at 22-27.) The grievance also insisted that he should be single-celled and complained about his parole eligibility date. (Exhibit A at 23-25.)

In the grievance, he contests the Administrative Segregation Review's findings on which a classification decision was made – specifically, that he "has issues and concerns with drugs around him in the pod" and that "[o]thers are after him for drug payment." (Exhibit A at 26, 23.) As background for contesting this classification decision, he mentions his theory that others, including Defendants, framed him and tried to get him stabbed by Fellers on September 29, 2022. (Exhibit A at 23-24.) The unit team denied the grievance on November 18, 2022, because the unit team believed Bellamy had not first attempted informal resolution. (Exhibit A at 22.)

Bellamy appealed to the warden on November 17, 2022. (Exhibit A at 22.) The warden received the appeal on November 17, 2022, and denied it on November 27, 2022, because the warden interpreted the grievance as attempting to grieve custody classification. (Exhibit A at 22, 29.) The warden responded to both grievances numbered AA2023067 in one response. (*See* Exhibit A at 13, 22, 29.) Bellamy received it on December 1, 2022. (Exhibit A at 22.) He included documents related to this grievance (including a form purporting to appeal to the Secretary on December 7, 2022) as attachments to his appeal of the November 16th grievance. (Exhibit A at 21-27, 29.) But Bellamy did not appeal it to the Secretary. (*See* Exhibit A at ¶ 8.) Accordingly, the Secretary never responded to any such appeal. (*See* Exhibit A at 21.)

5. *Other Grievance Materials*

In his attachments to his appeal of the unnumbered November 16th grievance, Bellamy included other materials as well. He included a notice dated November 28, 2022, saying that his classification status had been "changed to OSR pending transfer" due to his "continued history of being attacked when in general population." (Exhibit A at 30.) He also included two other responses from the warden dated November 7, 2022, and November 18, 2022, to other

10

unnumbered grievances. (Exhibit A at 20, 28.) These responses denied those grievance appeals because the grievances (which were not included in the materials Bellamy sent to the Secretary) attempted to grieve the classification decision-making process. (Exhibit A at 20, 28.)

The attachments to the appeal to the Secretary are somewhat unorganized and confusing. The number of warden responses included (4) even exceeds the number of grievance forms (3). (Exhibit A at 6-7, 13, 20, 22, 28-29.) Bellamy put together the appeal himself (Exhibit A at ¶ 7), so any confusion with regard to that appeal is his own fault, not Defendants' or KDOC's. In fairness, any resulting confusion or missing information should be construed against Bellamy.

### D. None of Bellamy's personal-injury claims or grievances satisfy the exhaustion requirement under the PLRA for his § 1983 claims.

*1. Personal-injury claim*

As the Tenth Circuit has recognized, grievances under K.A.R. § 44-15-101 *et seq.* (Article 15) and personal-injury claims under K.A.R. § 44-16-104a (Article 16) are "separate" and "distinct." *Brown v. Schnurr*, No. 22-3183, 2023 WL 5163987, at *1 to *5 (10th Cir. Aug. 11, 2023). Exhaustion for § 1983 constitutional claims is accomplished through Article 15 grievances, and exhaustion for personal-injury claims is separately accomplished through Article 16 claims for personal injury. *Id.* Therefore, Bellamy's personal-injury claim on November 8, 2022, does not satisfy the exhaustion requirement for Bellamy's § 1983 constitutional claims here. Regardless, it was also untimely under the 10-day time limit in K.A.R. § 44-16-104a(a).

*2. Grievances*

Bellamy filed various grievances, but each grieved only classification decisions. Those that mentioned the September 29, 2022, incident did so to provide background information, *not* to grieve the incident. The October 20th grievance claimed Bellamy was housed wrongly due to his mental health issues. It only mentioned Fellers attempting to stab Bellamy (the September 29,

11

2022, incident) because Bellamy explained that his mental health issues (on which he said his housing decisions should be based) stemmed from various attacks on him, including that attack. The November 15th grievance complained that Bellamy was in administrative segregation. It only mentioned the September 29, 2022, incident as background for why Bellamy believed the factual findings underlying his classification decision were wrong. Therefore, none of Bellamy's grievances directly grieved the September 29, 2022, incident. On this basis alone, Bellamy failed to satisfy the exhaustion requirement for his current § 1983 claims.

Regardless, the only grievance appealed to the Secretary – the unnumbered November 16th grievance – did not mention the September 29, 2022, incident at all. Documents related to the other grievances were included only as attachments. The other grievances were not themselves appealed to the Secretary. Therefore, Bellamy failed to appeal all grievances to the highest level other than the November 16th grievance, which did not satisfy the exhaustion requirement because it did not even mention the September 29, 2022, incident.

Further, most of the grievances were not timely. Bellamy would have known of the attempted stabbing on the same day it occurred, September 29, 2022. Calculating the grievance deadline as 15 days from discovery of the issue, not counting weekends or holidays, in accordance with K.A.R. § 44-15-101b, the deadline would have been October 20, 2022. Only one grievance was filed within that timeframe, the one filed October 20, 2022, and it was not appealed to the Secretary. The November 15th and November 16th grievances were untimely. Therefore, all grievances were either untimely or not appealed to the highest level.

Although KDOC can waive timeliness objections by responding to the merits of an untimely grievance, any "portion" of a grievance that may have grieved the September 29, 2022, incident "was never considered on the merits," so no waiver occurred for that "portion." *See*

*Patel v. Fleming*, 415 F.3d 1105, 1111 (10th Cir. 2005). All of KDOC's responses either said Bellamy was grieving a classification decision or that he failed to first attempt informal resolution. KDOC did not respond to the merits of any portion of Bellamy's grievances that may have directly complained about the September 29, 2022, incident, and so KDOC should not be considered to have waived any timeliness considerations regarding any such buried complaints about that incident. *See* K.A.R. § 44-15-102(d)(2) ("Responding to parts of grievances that are procedurally or substantively appropriate shall not constitute a waiver of defects with the remaining parts of the grievance that are not procedurally or substantively appropriate.").

What is more, the Secretary did not respond at all to the purported appeals of the October 20th and November 15th grievances, so the untimeliness of those purported appeals could not have been waived. K.A.R. § 44-15-102(c)(1) establishes that an inmate's appeal to the Secretary "shall be made within three calendar days of receipt of the warden's decision, or within three calendar days of the deadline for that decision, whichever is earlier." And the deadline for the warden's decision would have been "10 working days from the date of receipt." K.A.R. § 44-15-102(b)(3)(A)(ii); *see also Jamerson v. Heimgartner*, 326 P.3d 1091 (table opinion), 2014 WL 2871439, at *2 (Kan. Ct. App. June 20, 2014) ("'working days' in K.A.R. 44-15-102 refers to Mondays through Fridays, exclusive of legal holidays"). For the October 20th grievance, the warden received the appeal on November 7, 2022, so the deadline for the warden's decision was November 22, 2022 (excluding weekends and Veterans Day). (Exhibit A at 13.) For the November 15th grievance, Bellamy received the warden's decision on December 1, 2022. (*See* Exhibit A at 22.) But the purported appeals to the Secretary were not received by the Secretary until Bellamy attached them to his December 7, 2022, appeal of the November 16th grievance, more than 3 days after the warden's deadline to decide for the October 20th grievance and more

13

than 3 days after the alleged date of receipt of the warden's decision for the November 15th grievance. So the purported appeals were untimely. The Secretary responded only to the November 16th grievance, and so could not have waived any timeliness objections to any purported appeals or grievance contents buried in attachments. *See* K.A.R. § 44-15-102(d)(2); *see also* K.A.R. § 44-15-102(d)(1) (limiting the Secretary's review to the first ten pages of the appeal). Therefore, all grievances other than the November 16th grievance were not timely appealed to the highest level. And the November 16th grievance did not mention the September 29, 2022, incident.

For all these reasons, Bellamy failed to exhaust administrative remedies and his § 1983 claims should be dismissed under Rule 12(b) as a matter in abatement.

### E. Alternatively, Defendants request an evidentiary hearing on the exhaustion issue.

In the alternative, if the Court believes an evidentiary hearing is necessary to resolve the exhaustion issue at the dismissal stage, then Defendants request an evidentiary hearing regarding the exhaustion issue prior to any proceedings on the merits of the case, including prior to any answer to the Complaint being required and prior to any discovery on the merits. *See Bryant*, 530 F.3d at 1377 n.16 (citing Fed. R. Civ. P. 43(c)) (discussing such hearings).

Further in the alternative, if the Court rules that exhaustion is not a matter in abatement that can be resolved on dismissal, then Defendants request that the Court convert this motion to a motion for summary judgment. If the Court so orders, the Court should give the Plaintiff a chance to respond to Defendants' asserted facts in Section II.C of this motion in accordance with the summary judgment standard. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

### III. Alternatively, Bellamy's compensatory damages claims should be dismissed under Rule 12(b)(6) because he has not alleged a physical injury as required by the PLRA.

On a Rule 12(b)(6) motion to dismiss, a complaint must contain enough facts to state a

14

claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although courts have traditionally construed *pro se* pleadings in a liberal fashion, this "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).

Under the PLRA, Bellamy cannot receive damages "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). Here, Bellamy alleged that another inmate attempted to stab him, but he does not allege that he was physically injured, so he cannot plausibly receive damages for mental or emotional injury in this case. Therefore, Bellamy has failed to allege a compensable injury and his claims for compensatory damages should be dismissed.

## CONCLUSION

For these reasons, Defendants request that the Court dismiss the claims against them for lack of subject-matter jurisdiction and as a matter in abatement for failure to exhaust administrative remedies. Alternatively, Defendants request that the Court dismiss Bellamy's claims for compensatory damages for failure to state a claim.

Respectfully submitted,

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS

*/s/ Matthew L. Shoger*
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
Office of the Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
785-296-2215
Fax: (785) 291-3767
*Attorney for Defendants*

## **CERTIFICATE OF SERVICE**

       I hereby certify that on this 15th day of October, 2024, the foregoing document was filed with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to the following:

    Natasha Carter
    Kansas Department of Corrections
    714 SW Jackson, Suite 300
    Topeka, KS 66603
    Natasha.Carter@ks.gov
    *Attorney for Kansas Department of Corrections, Interested Party*

I also certify that a copy of the above will be served on October 16, 2024, by means of first-class mail, postage prepaid, addressed to:

    Ronnie Allen Bellamy, Jr. #53454
    El Dorado Correctional Facility-Central
    P.O. Box 311
    El Dorado, KS 67042
    *Plaintiff, pro se*

                                       */s/ Matthew L. Shoger*
                                       Matthew L. Shoger
                                       Assistant Attorney General